# EXHIBIT 1

**STATE OF MICHIGAN**
**MICHIGAN OFFICE OF ADMINISTRATIVE HEARINGS AND RULES**

| | |
|---|---|
| IN THE MATTER OF: | Docket No.: 24-001329 |
| L.G. o/b/o G.G., | |
|     Petitioner | Case No.: DP-24-0005 |
| | Agency: Education |
| v | |
| | Case Type: ED Sp Ed Regular |
| KENT INTERMEDIATE SCHOOL DISTRICT, | |
|     Respondent | Filing Type: Appeal |
| _____/ | |

**Issued and entered**
**this 7th day of February 2024**
**by: Lindsay Wilson**
**Administrative Law Judge**

### DECISION AND ORDER GRANTING KENT INTERMEDIATE SCHOOL DISTRICT'S MOTION TO DISMISS

On January 11, 2024[1], L.G. (Petitioner), by and through counsel, filed a First Amended Complaint and Request for Due Process Hearing (Amended Complaint)[2] under the Individuals with Disabilities Education Act (IDEA), 20 United States Code (USC) 1400 *et seq.* with the Michigan Department of Education (MDE) on behalf the minor child, G.G. (Student).[3] This Complaint was forwarded to the Michigan Office of Administrative Hearings and Rules (MOAHR) for hearing and was assigned to undersigned Administrative Law Judge (ALJ) Lindsay Wilson.

On January 22, 2024, Kent Intermediate School District (Respondent ISD) filed a Motion to Dismiss (Respondent's Motion).

On January 24, 2024, a telephone prehearing conference was held as scheduled.

On January 25, 2024, the undersigned issued an Order Following Prehearing and Order Setting Deadlines, which required Petitioner to file a response to Respondent's Motion to Dismiss by February 5, 2024, no later than 10:00 a.m.

---

[1] Respondent did not receive notice of the Amended Complaint until January 18, 2024.
[2] Petitioner's Amended Complaint was also filed against Kelloggsville Public Schools and was assigned a separate docket number, Docket No. 23-034010.
[3] Student will be used in place of child's name to protect the minor child's identity.

24-001329
Page 2

On February 5, 2024, Petitioner timely filed Petitioner's Opposition to Respondent ISD's Motion to Dismiss (Petitioner's Response).

**Issue**

Should Respondent ISD's Motion to Dismiss be granted?

**Applicable Law**

MCL 24.272(3) states that:

> The parties shall be given an opportunity to present oral and written arguments on issues of law and policy and an opportunity to present evidence and argument on issues of fact.

Neither IDEA, the Code of Federal Regulations, nor the Michigan Administrative Rules for Special Education (MARSE) provide any guidance regarding a Motion for Summary Disposition. However, the Michigan Administrative Hearing System Rules provide the framework for a motion for summary disposition.

Mich Admin Code R 792.10129, Rule 129, provides, in pertinent part:

> (1) A party may make a motion for summary disposition of all or part of a proceeding. When an administrative law judge does not have final decision authority, he or she may issue a proposal for decision granting summary disposition on all or part of a proceeding if he or she determines that that any of the following exists:
>
>    (a)   There is no genuine issue of material fact.
>    (b)   *There is a failure to state a claim for which relief may be granted.*
>    (c)   *There is a lack of jurisdiction or standing.*
>
> (2) If the administrative law judge has final decision authority, he or she may determine the motion for summary decision without first issuing a proposal for decision.
>
> (3) If the motion for summary disposition is denied, or if the decision on the motion does not dispose of the entire action, then the action shall proceed to hearing.
>
>   Mich Admin Code R 792.10129 (emphasis added).

24-001329
Page 3

The Michigan Court Rule 2.116 provides in relevant part:

> (B) Motion.
>
> > (1) A party may move for dismissal of or judgment on all or part of a claim in accordance with this rule. A party against whom a defense is asserted may move under this rule for summary disposition of the defense.
>
> > \* \* \*
>
> (C) Grounds. The motion may be based on one or more of these grounds, and must specify the grounds on which it is based.
>
> > \* \* \*
> >
> > (4) The court lacks jurisdiction of the subject matter.
> >
> > \* \* \*
> >
> > (8) The opposing party has failed to state a claim on which relief can be granted.
> >
> > \* \* \*

**Conclusions of Law**

A motion for summary disposition may grant relief to the moving party as a matter of law if the tribunal lacks subject matter jurisdiction and/or where there has been a failure to state a claim on which relief can be granted. Motions for summary disposition are analyzed with the same standards as motions filed under Michigan Court Rule 2.116. *Cross v Grosse Pointe Pub Schools* (STC 12-14). The proper standard for a motion under the equivalent court rule, MCR 2.116(C)(8) is not dependent on the particular facts of a case, but rather tests the legal sufficiency of the pleadings. *Lane v Kindercare Learning Ctrs*, 231 Mich App 689 (1998) and *People v Lown*, 448 Mich 242 (2011).

Petitioner's Amended Complaint dated January 11, 2024, alleges, in part, that both Kelloggsville Public Schools (hereafter 'KPS') and Respondent ISD: i.) failed to allow Petitioner to meaningfully participate in the IEP development process and educational decision making for Student for the 2023-2024 school year; ii.) failed to take steps to ensure Student had a free and appropriate public education (FAPE) for the 2023-2024 school year; and iii.) failed to provide a FAPE when it denied Student a placement at Pine Grove Learning Center. [Pet. Amended Complaint, pp. 23-24].

24-001329
Page 4

As it relates to Respondent ISD's involvement in this matter, Petitioner's Amended Complaint alleges as follows:

> 83. Also, in its response to the initial DPC in this matter, KPS denied "as blatantly untrue that it runs the Pine Grove Learning Center." KPS explained that it is a "constituent member of Kent ISD[.]" KPS additionally explained that because it was a constituent member of Kent ISD that "means its students" – like [Student] "can access the ISD's programs if both the District and the ISD determine the placement is appropriate." (emphasis added). KPS also explained that it "does not supervise or employ staff, nor establish or control programs such as Pine Grove Learning Center." [Pet. Amended Complaint, ¶ 83].
>
> 84. It is thus now clear that the decision in connection with [Student's] placement for the 2023-2024 was made collectively by KPS and the Kent ISD. [Pet. Amended Complaint, ¶ 84].
>
> 85. There was, however, no participation in the May 2023 IEP meeting or IEP process by Kent ISD and no determination by Kent ISD in the IEP process with respect to [Student's] 2023 –2024 in the course of the IEP process. No one from Kent ISD was present at the May 2023 IEP meeting. No documents reflecting and/or memorializing Kent ISD's determination of a decision regarding the appropriateness of the placement, if they exist, were ever provided to Petitioner. [Pet. Amended Complaint, ¶ 85].

A due process hearing may address any issues "relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child." 34 CFR 300.507(a).  The MARSE similarly lists issues that may be the subject matter of a special education due process hearing including educational placement and provision of a FAPE. (See MARSE R 340.1724f(2)).

Under Michigan law, it is generally the responsibility of a local school district or the Local Educational Agency (LEA) to provide a FAPE to individual students within the local school district. See MCL 380.1751; see also *Bay City Educational Ass'n v Bay City Public Schools*, 430 Mich 370, 377-78 (1988). An intermediate school district ("ISD") may become responsible for providing a FAPE only if the local school district contracts with the ISD for the delivery of special education programs and services. See *Bay City Educational Ass'n, supra* at 378, citing MCL 380.17151(1)(b).

In its Motion to Dismiss, Respondent ISD moved for the dismissal of Petitioner's Complaint against Respondent ISD for lack of subject matter jurisdiction. [Resp. Motion, p. 1]. Respondent ISD states that it has never "been responsible for the identification,

**24-001329**
**Page 5**

evaluation, educational placement, or provision of a FAPE to the Student. That responsibility belongs solely to a student's district of residence or, as appropriate, the operating district." [Resp. Motion, p. 4]. Respondent ISD indicates that it has never operated any educational program that this Student has attended. *Id.*

Respondent ISD cites to sections of the Revised School Code in support of their argument, which are addressed below.

As it relates to the student's local district of residence's responsibilities, MCL 380.1751 states in pertinent part:

(1) The board of a local school district shall provide special education programs and services designed to meet the individual needs of each student with a disability in its district on record under section 1711 for whom an appropriate educational or training program can be provided in accordance with the intermediate school district special education plan, in either of the following ways or a combination thereof:

   (a)   Operate the special education program or service.

   (b)   Contract with its intermediate school board, another intermediate school board, another local school district board, an adjacent school district board in a bordering state, the Michigan schools for the deaf and blind, the department of health and human services, or any combination thereof, for delivery of the special education programs or services, or with an agency approved by the superintendent of public instruction for delivery of an ancillary professional special education service. The intermediate school district of which the local school district is constituent shall be a party to each contract even if the intermediate school district does not participate in the delivery of the program or services.

In relation to the intermediate school district's special education responsibilities, MCL 380.1711 states in pertinent part:

(1) The intermediate school board shall do all of the following:

   * * *

   (i)   Operate the special education programs or services or contract for the delivery of special education programs or services by local school district boards, in accordance with section 1702, as if a local school district under section 1751. The contract shall provide for

24-001329
Page 6

>items stated in section 1751 and shall be approved by the superintendent of public instruction. The intermediate school board shall contract for the transportation, or room and board, or both, or persons participating in the program or service as if a local school district board under sections 1756 and 1757.

MCL 380.1702(3) provides, in pertinent part:

>Unless the local school district board submits proof of compliance or of an unforeseen emergency within 30 days after receipt of the notice, the state board shall direct the intermediate school board of which the local school district is constituent to provide complying programs or services. The state board shall direct the intermediate school board to provide only those programs or services which the state board determines the local school district is not providing in compliance with section 1751.

The Michigan Attorney General Opinion No. 6672 (January 11, 1991) summarized the relationship between local school districts and ISD's with respect to the provision of special education services, as follows:

>Michigan's special education requirements are found in Article 3 of the School Code of 1976, MCL 388.1701-1766; MSA 15.41701-15.41766, and the rules promulgated thereunder, which require that educational services be provided for handicapped persons from birth through age 25 years. Within the statutory framework, the State Board of Education is responsible for establishing rules and providing overall planning for the delivery of special education programs and services for handicapped persons. MCL 380.1701; MSA 15.41701. The intermediate school districts are responsible for planning and coordinating services within their districts and have authority to provide programs and services either by operating the program or service, or by contracting with an intermediate school district, another school district, certain state schools and departments, or an agency approved by the State Board of Education.

In the present matter, Respondent ISD argues that KPS is the district of residence for Student and is thus responsible for the identification, evaluation, or educational placement of Student. [Resp. Motion, p. 7]. As such, Respondent ISD maintains that it is not a proper party and should be dismissed from this action. [Resp. Motion, p. 8].

Alternatively, Petitioner argues that Respondent ISD is a proper party in this matter as Petitioner alleges that Respondent ISD violated the IDEA's procedural safeguards by excluding Petitioner from the "decision-making process" regarding Student's placement,

24-001329
Page 7

which "resulted in the denial of FAPE." [Pet. Response, pp. 20-21]. In support, Petitioner cites to Paragraph 81 of Petitioner's Amended Complaint, which states:

> KPS admitted to having a communications, without involving L.G. or giving her any notice of such communications or the opportunity to participate in those communications, with Kent ISD regarding Pine Grove as a potential placement for [Student] Those communications, and likely others, which occurred outside of the IEP meeting and process, and to which [Petitioner] was not a party, were part of the joint decision by KPS and Kent ISD to not offer [Student] a placement at Pine Grove and to designate this new classroom as [Student's] placement over [Petitioner's] explicit request for [Student] to be placed at Pine Grove. Such communications and decision-making are in complete violation of the explicit details and spirit of IDEA and all of its procedural safeguards.
>
> [Amended Complaint ¶ 81, p. 19; Pet. Response, p. 7].

In contrast to the Factual Allegations contained in Paragraph 81 of the Amended Complaint, Petitioner now asserts that "*KPS indicated during the May 2023 IEP Meeting* that it had communications, without involving [Petitioner] or giving her any notice of such communications or the opportunity to participate in such communications, with Kent ISD regarding Pine Grove as a potential placement for [Student]." (Emphasis added). [Pet. Response, p. 7]. The undersigned notes that nowhere in Petitioner's Amended Complaint does it state, as Petitioner now appears to allege, that KPS had admitted at the May 2023 IEP meeting that it had communications with Respondent ISD about potential placement for Student at Pine Grove. Petitioner also offers no explanation for this change in the factual allegations nor does Petitioner explain the failure to allege this specific allegation in the Amended Complaint.

Petitioner's belief that a communication between KPS and Kent ISD regarding Student's placement occurred outside of the May 2023 IEP is essentially based upon "KPS's response to the original DPC in this matter". [Pet. Response, p. 7]. The portion of KPS's response to the initial Due Process Complaint states as follows:

> The District denies as blatantly untrue that it runs the Pine Grove Learning Center. The District is a constituent member of Kent ISD, which means its students can access the ISD's programs if both the District and the ISD determine the placement is appropriate. The District does not supervise or employ staff, nor establish or control programs such as Pine Grove Learning Center. [See KPS Response to Petitioner's Original Due Process Complaint under Docket No. 23-034010, pp. 6-7].

**24-001329**
**Page 8**

Petitioner argues that "these portions of the KPS Answer to the Initial DPC in this matter, viewed in light of the communications referenced at the May 2023 IEP meaning [sic] between KPS and Kent ISD regarding [Student's] placement at Pine Grove, now make clear that the decision in connection with [Student's] placement for the 2023 - 2024 SY was made collectively by KPS and the Kent ISD." [Pet. Response, p. 9].

This ALJ has carefully considered the instant motion. Having reviewed Respondent ISD's Motion and Petitioner's Response in Opposition to the Motion, this ALJ finds that Petitioner's reliance on a statement made by KPS in their Response to Petitioner's initial Due Process Complaint is, by itself, insufficient to establish that Respondent ISD is a proper party to this matter. As noted above, although Petitioner now seems to assert that there was a discussion about this alleged communication between KPS and Respondent ISD at the May 2023 IEP meeting, no such allegation exists in Petitioner's Amended Complaint.

Next, Petitioner argues that "a formal written contractual relationship between KPS and Kent ISD pursuant to which both parties share in the obligation to provide students like [Student] a FAPE." [Pet. Response, p. 9]. In support of this argument, Petitioner cites to a *Cooperative Agreement to Provide Special Education Countywide Programs and Services Within the Kent Intermediate School District for 2023-24* (hereafter 'Cooperative Agreement'), an agreement entered into between Respondent ISD and various local school districts, which included KPS. [Pet. Response, Exhibit 3, p. 1]. Petitioner asserts that the Cooperative Agreement "contemplates that in a due process hearing like the instant one, both Kent ISD and KPS would be parties." [Pet. Response, p. 11]. The undersigned does not find Petitioner's argument to be persuasive.

The Cooperative Agreement in question states, in pertinent part, "The Programs above shall be available, *if determined appropriate by an IEP or IFSP Team meeting*, to eligible students with disabilities, as determined by an IEP or IFSP Team meeting, residing in any Resident District." (Emphasis added). [Pet. Response, Exh. 3, p. 2]. Thus, the IEP team of the Resident District must first determine if the Programs provided by Respondent ISD are appropriate for the individual student. The Cooperative Agreement makes clear that it is the Resident District making such a determination, which in this case would be KPS, not Respondent ISD.

The Cooperative Agreement goes on to state as follows:

> *Following a regional or Kent ISD LRE Needs Review Process, the Resident District shall invite the potential Operating District to the placement meeting of the IEP or IFSP Team* by providing reasonable written notice of the meeting and the Operating District shall send such representative(s) as it deems appropriate to participate in that placement IEP or IFSP Team meeting. . . . The Resident District will authorize the participation of any

24-001329
Page 9

> student attending a program in the Operating District by signing each Notice.
>
> [Pet. Response, Exh. 3, p. 3].

Again, this language makes it clear that it is the Resident District and not the ISD who will make the initial determination of whether a particular student will be placed at a program operated by Respondent ISD. According to the Cooperative Agreement, it is the Resident District's (KPS) responsibility to invite the Operating District (Respondent ISD) to any placement meeting of the IEP Team following a "regional or Kent ISD LRE Need Review Process". *Id.* Petitioner does not allege that any "regional or Kent ISD LRE Need Review Process" occurred. On the other hand, Respondent's Motion states that, "[a]s acknowledged by Petitioner, Kent ISD has never attended an IEP for the Student nor has Kent ISD made any determination regarding the appropriate placement of the Student." [Resp. Motion, p. 4; citing to Pet. Amended Complaint, ¶ 85].

Next, while there is a provision in the Cooperative Agreement that speaks to both the Resident District and the ISD being named as parties in a due process hearing, the provision goes on to state that, "The Operating District shall maintain a student's current placement pending completion of any appeal process . . .". *Id.* Upon review, it is apparent that this provision only contemplates a situation where a student has already been placed at a program operated by an ISD. In contrast, the Student in this matter was never placed at any program operated by Respondent ISD.

Finally, both parties cite to *Bay City Educational Ass'n v Bay City Public Schools*, 430 Mich 370 (1988). [Motion, pp. 6-7; Response, p. 12]. Although the ruling in *Bay City Educational Ass'n* involved the Public Employment Relations Act (PERA), the Michigan Supreme Court found that, "[o]nce a local board transfers this responsibility to its ISD, however, the ISD controls the programming, and the students of the constituent district become students of the ISD for all purposes including the calculation of state aid." *Bay City Educ. Ass'n, supra* at 378.

The facts in *Bay City Educational Ass'n* are distinguishable from the facts at issue in this matter. In *Bay City Educational Ass'n*, the Board of Education "unanimously adopted a motion to "transfer" its special education center programs to the ISD and to ask the ISD to assume the responsibility as to Bay City students." *Bay City Educ. Ass'n, supra* at 373. In contrast, the local district in this matter, KPS, had the ability to determine if the programs being operated by the ISD were appropriate for eligible students. Additionally, the Cooperative Agreement was only for a single school year of 2023-2024 and did not state that Respondent ISD would assume responsibility as to KPS students, unlike the agreement entered into in *Bay City Educational Ass'n*. If KPS had determined that Pine Grove was an appropriate placement for Student and Student was subsequently placed there, then the undersigned would agree that both KPS and Respondent ISD would be

**24-001329**
**Page 10**

proper parties in a due process hearing. However, that is not the case here as KPS made this decision unilaterally, without input from Respondent ISD. [Resp. Motion, p. 4]. There is no indication that Respondent ISD had ever taken on any responsibilities to provide FAPE to this particular student.

Moreover, even if the alleged meeting between KPS and Respondent ISD took place regarding Student's placement, there is not a remedy for a parent or student in a due process hearing against Respondent ISD. It was still the local district that was and is responsible for upholding FAPE. If the placement at Pine Grove was the appropriate one and KPS did not attempt to place Student there and instead placed Student in an inappropriate placement, then only KPS is liable. That being said, KPS cannot attempt to defend its placement by stating that they did attempt to place Student at a program operated by Respondent ISD, but that Respondent ISD declined to accept the Student. Ultimately, KPS is still responsible for finding an appropriate placement for Student.

Because the provision of a FAPE is a responsibility of the local school district, and there is nothing to establish that Respondent ISD contracted with the local school district to assume any responsibility for the provision of any necessary special education services to this particular Student, Petitioner's Complaint fails to state a claim against Respondent ISD upon which relief can be granted. Therefore, Respondent ISD is not a proper party and their motion to dismiss is properly granted.

*Respondent ISD's Objection to Improper Service and Lack of Standing*

In its Motion to Dismiss, Respondent ISD notes that the Amended Complaint was signed by Petitioner's attorney, making the Amended Complaint facially defective as Petitioner's attorney lacks standing to bring the matter. See MARSE R 3401724f(1)(a). [Resp. Motion, p. 3]. Respondent further maintains that a copy of the Amended Complaint was never provided to Respondent ISD by Petitioner. See MARSE R 3401724f(1)(b).

Respondent ISD's objections were addressed at the prehearing conference held on January 24, 2024. Following the prehearing conference, Petitioner filed and served an Amended Complaint dated January 24, 2024. The Amended Complaint dated January 24, 2024, included Petitioner's signature, and was served on counsel for Respondent ISD. Thus, the defects in the Amended Complaint have been cured and Respondent ISD's objections on these issues are now moot.

## **ORDER**

**NOW THEREFORE IT IS ORDERED that** Respondent's Motion to Dismiss is **GRANTED**.

24-001329
Page 11

**IT IS FURTHER ORDERED THAT** Petitioner's Complaint against Respondent ISD is dismissed with prejudice.

_____
**Lindsay Wilson**
**Administrative Law Judge**

24-001329
Page 12

## PROOF OF SERVICE

I certify that I served a copy of the foregoing document upon all parties and/or attorneys, to their last-known addresses in the manner specified below, this 7th day of February 2024.



**Verna Curtis**
**Michigan Office of Administrative Hearings and Rules**

**Via Electronic Mail**

MATTHEW C. McCANN
MOSS & COLELLA, P.C.
28411 NORTHWESTERN HWY, STE 1150
SOUTHFIELD, MI 48034
**MMCCANN@MOSSCOLELLA.COM**

KEVIN PHILIPPS, ASSISTANT SUPERINTENDENT
KENT INTERMEDIATE SCHOOL DISTRICT
2930 KNAPP ST NE
GRAND RAPIDS, MI 49525
**KEVINPHILIPPS@KENTISD.ORG**

CATHLEEN M. DOOLEY
THRUN LAW FIRM, P.C.
PO Box 2575
EAST LANSING, MI 48826-2575
**CDOOLEY@THRUNLAW.COM**

MICHELE R. EADDY
THRUN LAW FIRM, P.C.
PO BOX 2575
EAST LANSING, MI 48826-2575
**MEADDY@THRUNLAW.COM**

24-001329
 Page 13

BAILEY KADIAN
CLARK HILL PLC
200 OTTAWA AVE NW, STE 500
GRAND RAPIDS, MI 49503
**BKADIAN@CLARKHILL.COM**

JORDAN M. BULLINGER
CLARK HILL PLC
200 OTTAWA AVE NW, STE 500
GRAND RAPIDS, MI 49503
**JBULLINGER@CLARKHILL.COM**

BETHANIE EGGLESTON, DUE PROCESS COORDINATOR
MDE-OFFICE OF SPECIAL EDUCATION
PO BOX 30008
LANSING, MI 48933
**EGGLESTONB1@MICHIGAN.GOV**

NANCY ROTARIUS
MICHIGAN DEPARTMENT OF EDUCATION
PO BOX 30008
LANSING, MI 48933
**ROTARIUSN@MICHIGAN.GOV**

PRECIOUS BOONE
MDE-OFFICE OF ADMINISTRATIVE LAW
PO BOX 30008
LANSING, MI 48909
**MDE-ADMINLAW@MICHIGAN.GOV**