## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

L.G.,

Plaintiff,

v.

KELLOGGSVILLE PUBLIC SCHOOLS, et al.,

Defendants.

Case No. 1:24-cv-833

Hon. Robert J. Jonker

---

## PLAINTIFF'S OPPOSITION TO DEFENDANT KENT INTERMEDIATE SCHOOL DISTRICT'S MOTION TO DISMISS

Plaintiff L.G., suing on behalf of her son, G.G., through undersigned counsel, respectfully submits this Opposition to Defendant Kent Intermediate School District ("Kent ISD" or "Defendant")'s Motion to Dismiss Plaintiff's Complaint.  ECF No. 13.  This Court has subject matter jurisdiction over Plaintiff's IDEA claims and Plaintiff has adequately pled claims for relief against Kent ISD.  Thus, Defendant's Motion to Dismiss must be denied.

## STATEMENT OF FACTS

G.G. is a seven-year-old child who was enrolled in Kelloggsville Public Schools ("KPS") in the Fall of the 2022-2023 school year.  ECF No. 1 at ¶¶ 1-2.  G.G. has been diagnosed with multiple disabilities, including Autism Spectrum Disorder ("ASD"), severe cognitive impairment, oral phase dysphagia, idiopathic dysphagia, central nervous complication, and pediatric feeding disorder.  *Id.* at ¶¶ 1, 46.  G.G. is non-verbal and has several behaviors, including self-stimulation, a lack of safety awareness, and a tendency to wander or elope that interfere with his ability to learn.

*Id.* at ¶¶ 47, 48.  G.G. also has difficulties with self-feeding, needs assistance with toileting, and requires medicine administration during the school day.  *Id.* at ¶¶ 49-51.

The Individuals with Disabilities in Education Act ("IDEA") requires that qualifying students with disabilities receive a free and appropriate education ("FAPE").  20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.101(a).  To achieve this goal, the IDEA requires that Local Education Agencies ("LEAs") design and develop an individualized education program ("IEP") for each qualifying child.  20 U.S.C. §§ 1412(a)(4), 1414(d); 34 C.F.R. §§ 300.112, 300.320-24.  Both Kelloggsville Public Schools ("KPS") and the instant Defendant, Kent Intermediate School District ("Kent ISD"), are LEAs responsible for ensuring the provision of a FAPE to G.G.  ECF No. 1 at ¶¶ 12, 13, 54.  KPS is the primary school district in which L.G. and G.G. reside.  *Id.* at ¶ 52.

Kent ISD is an intermediate school district which serves the KPS school district and provides special education services directly to students through its Special Education Center Programs.  *Id.* at ¶¶ 53-57.  Kent ISD was responsible for providing a FAPE to G.G. under the IDEA.  *Id.* at ¶ 13.  Under M.C.L. 380.1711, ISDs are responsible for developing, establishing, and continually evaluating and modifying a plan for the delivery of special education services for all students under the age of 26 who are residents of constituent districts and who have not graduated from high school.  *Id.* at ¶ 183; M.C.L. 380.1711(1)(a), (f).  M.C.L. 380.1711 does not limit an ISD's obligation only to those students that are currently enrolled in one of the ISD programs or classrooms.  *Id.* at ¶ 183.

During the 2022-2023 and 2023-2024 school years, KPS and Kent ISD failed to meet G.G.'s educational needs.  *Id.* at ¶¶ 2, 3, 63-163.  As outlined in detail in the Complaint, KPS, among other things, failed to address L.G.'s concerns about the inadequacy of G.G.'s IEP, *Id.* at

¶¶ 65-69, 132-150, provided G.G. with a different speech generating device than the one to which he was accustomed, which negatively impacted his ability to communicate and participate in school, *Id.* at ¶¶ 70, 132-134, conducted an IEP meeting without a KPS or Kent ISD representative in violation of the IDEA, *Id.* at ¶¶ 82-97, and failed to reevaluate G.G. and update his IEP after receiving the report of a pediatric neuropsychologist diagnosing G.G. with ASD, *Id.* at ¶¶ 72-81, 103-105, 126-127.

During the May 22, 2023 IEP meeting held to determine G.G.'s placement for the 2023-2024 school year, Plaintiff discussed with KPS personnel, KPS's recommended placement of G.G. in "the elementary autism classroom housed at Southeast Kelloggsville." *Id.* at ¶¶ 130, 151. This classroom did not yet exist and was described as experimental or "testing the waters." *Id.* at ¶¶ 152-154. Plaintiff asked that G.G. be placed at one of the Special Education Center Programs overseen by Kent ISD, Pine Grove Leaning Center ("Pine Grove"). *Id.* at ¶¶ 130, 157. Pine Grove "serves students with special needs who have moderate to severe cognitive impairments, are severely multiply impaired, or have autism from Kindergarten through age 26." *Id.* at ¶ 157. Despite Plaintiff's grave concerns about the adequacy of the Southeast Kelloggsville classroom to properly accommodate G.G.'s educational, social/emotional, medical, and communication needs, her request for G.G.'s placement at Pine Grove was rejected. *Id.* at ¶¶ 161-162. Thus, Plaintiff made alternative plans, placing G.G. in a non-public learning center for the 2023-2024 school year. *Id.* at ¶ 163.

On November 30, 2023, Plaintiff filed a due process complaint against KPS. *Id.* at ¶ 166. In response to the due process complaint, KPS acknowledged that Plaintiff expressed a preference that G.G. be placed at Pine Grove and also stated that "[KPS] is a constituent member of Kent ISD, which means its students can access the ISD's programs if both [KPS] and the ISD determine

the placement is appropriate." *Id.* at ¶ 168.  Based on this information, Plaintiff filed an amended

due process complaint adding Kent ISD as a respondent.  *Id.* at ¶ 169.  Plaintiff alleged in the

amended due process complaint that Kent ISD (1) failed to allow her to meaningfully participate

in the IEP development process and educational decision making for G.G. for the 2023-2024

school year, and (2) failed to take steps to ensure G.G. had a FAPE for the 2023-2024 school year.

*Id.* at ¶ 225.  Later, during the March 2024 due process hearing between Plaintiff and KPS, Plaintiff

learned that KPS and Kent ISD had engaged in unlawful predetermination regarding G.G.'s

placement, meaning they had made a placement decision without her participation and input in

violation of the IDEA.  *Id.* at ¶¶ 5, 190-201.

On February 7, 2024, the Hearing Officer assigned to Plaintiff's administrative complaint,

an administrative law judge ("ALJ"), issued an order erroneously dismissing Kent ISD.  *Id.*

at ¶ 176.  The order incorrectly held that ISDs are not primarily responsible for the provision of a

FAPE and incorrectly concluded that "there is not a remedy for a parent or student in a due process

hearing against a Respondent ISD."  *Id.* at ¶ 177.  In so holding, the ALJ relied on incorrect legal

arguments and wrongly decided prior caselaw propounded by Kent ISD in its motion to dismiss.

*Id.* at ¶ 176.

With respect to Plaintiff's administrative claims against KPS, on May 15, 2024, following

a due process hearing, the ALJ issued a final decision and order finding only one substantive

violation of the IDEA, namely KPS's failure to provide G.G. with the correct assistive technology

for communication from September 2022 through February 2023.  *Id.* at ¶ 203.  After

acknowledging that G.G. had been left with inadequate communication technology for seven

months, the order granted G.G. a mere fifteen hours of compensatory education speech therapy

services in the use of a speech generating device.  *Id.* at ¶¶ 204-205.  Although the order found that

KPS had committed procedural violations throughout the 2022-2023 school year, it found that those violations did not result in substantive violations or a denial of FAPE.  *Id.* at ¶ 206.

Plaintiff brings claims against Kent ISD under the IDEA, Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, *et seq.*, Title II of the American with Disabilities Act ("Title II"), 42 U.S.C. § 12132, *et seq.*, and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L. 37.1101, *et seq.*, based on Kent ISD's denial of FAPE to G.G. and failure to reasonably accommodate his disabilities.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain a "short plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The United States Supreme Court has held that a complaint is only properly dismissed under Rule 12(b)(6) when it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard is more than a sheer possibility, but it is not a probability requirement.  *See Twombly*, 550 U.S. at 556.  A complaint states a plausible claim for relief, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Vest v. Resolute FP US Inc.*, 905 F.3d 985, 987 (6th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In reading the alleged facts, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  Therefore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that the actual proof of the facts alleged is improbable and that a recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal citations omitted).

## ARGUMENT

I. **Plaintiff's IDEA claim against Kent ISD was timely filed and should be permitted to proceed**

Defendant asserts that Plaintiff's civil action challenging the administrative decision on plaintiff's IDEA claim against Kent ISD should be dismissed as untimely under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. ECF No. 13 at 11-12. Plaintiff filed a due process complaint against Defendant KPS on November 30, 2023, ECF No. 1 at ¶ 166, and filed an amended due process complaint adding Kent ISD on January 11, 2024, *id.* at ¶ 169. On January 22, 2023, Kent ISD filed a motion to dismiss Plaintiff's amended due process complaint alleging lack of subject matter jurisdiction. *Id.* at ¶ 170; Def. Ex. 1, ECF No. 15-3 at 3. The ALJ assigned to the case issued a decision granting Kent ISD's motion to dismiss on February 7, 2024. *Id.* at ¶ 176. The ALJ issued a second opinion as to Plaintiff's remaining claims against KPS on May 15, 2024. *Id.* at ¶ 202. Prior to the ALJ's second opinion, Plaintiff had not yet satisfied the IDEA's exhaustion requirement, and thus the statutory deadline to appeal had not yet begun to run. 20 U.S.C. § 1415(i)(2)(A), (B). Pursuant to 34 C.F.R. § 300.516:

> (a) **General.** Any party aggrieved by the findings and decision made under §§ 300.507 through 300.513 or §§ 300.530 through 300.534 who does not have the right to an appeal under § 300.514(b), and any party aggrieved by the findings and decision under § 300.514(b), has the right to bring a civil action with respect to the due process complaint notice requesting a due process hearing under § 300.507 or §§ 300.530 through 300.532. The action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

> (b) **Time limitation.** The party bringing the action shall have 90 days from the date of the decision of the hearing officer or, if applicable, the decision of the State review official, to file a civil action, or, if the State has an explicit time limitation for bringing civil actions under Part B of the Act, in the time allowed by that State law.

The hearing officer's decision was issued on May 15, 2024.  ECF No. 1 at ¶ 202.  The Complaint was filed on August 12, 2024.  *See* ECF No. 1. Thus, the instant civil action was timely filed as to Plaintiff's IDEA claims against Kent ISD.

Plaintiff's administrative due process complaint against Kent ISD and KPS (filed as a single, amended complaint) involved overlapping and joint action taken by both entities with respect to their failure to provide a FAPE to G.G., including Kent ISD and KPS's joint failure to place G.G. in Pine Grove.  ECF No. 1 at ¶¶ 168, 225.  Accordingly, Plaintiff waited until the completion of the administrative process as to both entities before filing suit to avoid dismissal based on failure to exhaust and ripeness challenges.  20 U.S.C. § 1415(i)(2)(A).

This Court recently dismissed a similar claim Attorney Abdnour brought on behalf of a client against MDE due to a determination that the matter was not yet ripe because the appeal process was still proceeding against the local school district.  *See T.M. v. Michigan Dep't. of Educ*., No. 1:23-cv-762 (W.D. Mich. Aug. 20, 2024).  As another example, in *Mcqueen v. Colorado Springs Sch. Dist. No. 11*, the Tenth Circuit found the plaintiffs' IDEA claim not yet exhausted where the plaintiffs had attempted to appeal a decision by the ALJ on a bifurcated issue.  488 F.3d 868, 874 (10th Cir. 2007).  As the court explained, "[t]he role of the § 1415 process is to resolve a complaint about the education of a specific child."  *Id.*  In that case, an ALJ had issued an opinion as to some but not all of the issues raised in the plaintiffs' due process complaint, and thus, the question of whether the student had been provided a FAPE was not yet fully resolved.  *Id.*

Likewise, in the instant case, the ALJ's preliminary order granting Kent ISD's motion to dismiss for lack of subject matter jurisdiction did not resolve the overriding issue of whether G.G. had been provided a FAPE.  In *Fry v. Napoleon Community Schools*, the Supreme Court addressed this question in detail.  197 L.Ed.2d 46, 137 S.Ct. 74 (2015).  In *Fry*, parents filed litigation in

federal court alleging that two school districts had violated Title II of the ADA and § 504 of the Rehabilitation Act alleging that denying their son equal access to programs, refusing to reasonably accommodate their son's use of a service animal, and otherwise discriminating against their son as a person with disabilities.  *Id*. at 752.  The Supreme Court held that, when seeking relief in federal court, plaintiffs must first exhaust the administrative procedure when the "gravamen" of their complaint alleges a violation of FAPE.  *Id*. at 755.  Here, Plaintiff filed a due process complaint under the IDEA alleging that Kent ISD and KPS had denied G.G. FAPE.  The ALJ's February 7, 2024 decision granting Kent ISD's motion to dismiss did not address the question of whether G.G. had been denied FAPE.  Thus, at the time of the opinion, Plaintiff did not yet meet the IDEA's exhaustion requirement and was therefore not yet entitled to file a direct appeal to federal court. 20 U.S.C. § 1415(i)(2)(A), (B).

Defendant makes much of the ALJ's apparent bifurcation of Plaintiff's claims against Kent ISD and assignment of a separate docket number.  ECF No. 13 at 5, 11.  This case-management decision by the ALJ is of little significance.  The fact remains that Plaintiff filed a single amended due process complaint against both Kent ISD and KPS surrounding the singular issue of whether G.G. had been provided a FAPE.  Accordingly, Defendant's argument that Plaintiff's Complaint as to Kent ISD is untimely is misguided, and Plaintiff's IDEA claims against Kent ISD should proceed.

Even if this Court finds that Plaintiff should have filed her appeal against Kent ISD within 90 days of the date of the ALJ's order granting Kent ISD's motion to dismiss in the due process proceeding, the IDEA's 90-day deadline to appeal an administrative ruling to federal court is not jurisdictional, and thus, Defendant's attempt to dismiss Plaintiff's IDEA claims against Kent ISD for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) should be

denied.  The text of § 1415(i)(2)(B) provides that a "party bringing [a civil action] shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation for bringing such action under this subchapter, in such time as the State law allows."  Michigan law establishes its own time limitation providing that, a "party aggrieved by a final decision and order issued by an administrative law  judge under this rule may appeal to a court of competent jurisdiction within 90 days after the mailing date of the final decision and order."  Mich. Admin. Code R. 340.1724f(4).  There is no provision in the Michigan Administrative Code for any appeal of a special education due process decision to be filed prior to the issuance of a final order.

As the Supreme Court recently explained in *Bowles v. Russell*, when a deadline to file an appeal in federal court is contained in a federal statute, courts have traditionally considered such time limitations to be jurisdictional in nature.  551 U.S. 205, 209-211 (2007).  By contrast, when a time limitation is derived from another source—such as a court-promulgated procedural rule, for example—the limitation is considered "not jurisdictional."  *Id.* at 211.  This is because "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction."  *Id.* at 211 (citing U.S. Const., Art. III, § 1).

Here, although the first clause of § 1415(i)(2)(B) of the IDEA prescribes a 90-day time limit for filing a civil action in federal court, the second clause gives states the overriding authority to set their own time limitations.  The statute's deference to state law, permitting states to set their own deadlines, strongly suggests that IDEA's 90-day limit is not jurisdictional.  *See Wall Twp. Bd. of Educ. v. C.M.*, 534 F. Supp. 2d 487, 493 (D.N.J. 2008) (finding that the "jurisdictional significance" of the 90-day time limit set forth in the IDEA "is undermined by the later part of the provision, which permits each state to disregard the 90-day time limit and create its own time

9

prescriptions"); *Lejeune G. v. Khepera Charter Sch.*, 327 F. Supp. 3d 785 (E.D. Pa. 2018) (applying same reasoning to find state-established deadline non-jurisdictional); *see also Farzana K. v. Indiana Dep't of Educ.*, 473 F.3d 703, 705 (7th Cir. 2007) (similarly concluding that the time limit in § 1415(i)(2)(B) is a non-jurisdictional "procedural hurdle").  Here, because Michigan law—not Congress—establishes the applicable deadline for parties to file an action in federal court under the IDEA, the deadline cannot be considered jurisdictional.  *Wall Twp. Bd. of Educ. v. C.M.*, 534 F. Supp. 2d at 494.

Defendant's reliance on *Cleveland Heights-Univ. Heights City Sch. Dist. v. Boss By & Through Boss*, 144 F.3d 391, 396 (6th Cir. 1998), and its progeny treating the deadline to file an appeal of an IDEA administrative decision in federal court as jurisdictional is not persuasive in light of the recent guidance from the Supreme Court in *Bowles v. Russell*, 551 U.S. at 209-211, clarifying that filing deadlines established by sources other than Congress should be interpreted as non-jurisdictional procedural rules.  Given that Defendant's argument for dismissal of Plaintiff's IDEA claims as untimely is argued only under Rule 12(b)(1) for lack of subject matter jurisdiction, it should be rejected.

Non-jurisdictional time limitations function as statutes of limitations, and as such, may be raised as an affirmative defense under Rule 12(b)(6).  *See Wall Twp. Bd. of Educ. v. C.M.*, 534 F. Supp. 2d at 494 (denying defendant's 12(b)(1) motion but leaving open the possibility of the defendant later raising an affirmative defense under Rule 12(b)(6)).  In the event that Kent ISD were to later argue that Plaintiff has not complied with Michigan's 90-day filing deadline as an affirmative defense under Rule 12(b)(6), Plaintiff would be entitled to equitable tolling.  *See id.* (noting that because non-jurisdictional time limitations function as statutes of limitations, they are subject to equitable tolling).

Courts may equitably toll a statute of limitations when a party can show (1) that she has diligently pursued her rights and (2) some extraordinary circumstances prevented timely filing. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)). "The district court must exercise its equitable powers on a case-by-case basis, with an emphasis on the need for flexibility and for avoiding mechanical rules."  *Holland*, 560 U.S. at 649-50.  Here, Plaintiff diligently pursued her IDEA claims against Kent ISD and waited to file the instant civil complaint until her claims against both Kent ISD and KPS were fully exhausted in order to comply with the IDEA's exhaustion requirement.  As discussed at length above, Plaintiff filed a single due process complaint alleging denial of FAPE by the joint action of Kent ISD and KPS, thus, as a result of the ALJ's apparent bifurcation of the claims against Kent ISD and KPS, Plaintiff was prevented from filing a civil action until the ALJ's second ruling on her remaining claims against KPS.  In this case, mechanical application of the 90-day limit to the ALJ's first ruling on Kent ISD's motion to dismiss would contravene the IDEA's exhaustion requirement and would improperly penalize Plaintiff for diligently seeking to comply with this statutory requirement.  Thus, were the court to interpret the 90-day deadline as non-jurisdictional and were Defendant to later raise an affirmative defense asserting that Plaintiff's civil action was untimely filed as to her IDEA claims, Plaintiff would be entitled to equitable estoppel.

## II.    Plaintiff has adequately alleged a claim for relief against Kent ISD under Title II of the ADA and Section 504 of the Rehabilitation Act

Plaintiff has sufficiently pled that Kent ISD violated Title II of the ADA and Section 504 of the Rehabilitation Act.  Given the overlapping elements of these claims, courts often assess claims brought under both statutes simultaneously.  *Thompson v. Williamson Cnty.*, 219 F.3d 555, 557 n.3 (6th Cir. 2000).

11

Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).  Similarly, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

To state a claim under either statute, a plaintiff must allege facts to support a reasonable inference that:

> (1) The plaintiff is a "handicapped person" under the Act;
>
> (2) The plaintiff is "otherwise qualified" for participation in the program;
>
> (3) The plaintiff is being excluded from participation in, or being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and
>
> (4) The relevant program or activity is receiving Federal financial assistance.

*Campbell v. Bd. of Educ. of Centerline Sch. Dist.*, 58 F. App'x 162, 165 (6th Cir. 2003).[1]

The IDEA expressly provides that plaintiffs may bring a private right of action for denial of a FAPE under Title II and Section 504, as well as under the IDEA itself.  20 U.S.C. § 1415(l); *see also Campbell*, 58 F. App'x at 166.  For a claim alleging denial of FAPE under Title II and Section 504, courts have previously held that "more harm is required than a denial of [FAPE]."  *N.L ex rel. Mrs. C. v. KCS Cnty. Schools*, 313 F.3d 688, 685 (6th Cir. 2003).  As the

---

[1] In reference to the third element, Title II of the ADA does not require that discrimination be "solely" because of the plaintiff's disability, but rather, that plaintiff's disability was a "significant factor" behind the defendant's action or inaction.  *Anderson v. City of Blue Ash*, 798 F.3d 338, 357, 357 n.1 (6th Cir. 2015).

Sixth Circuit explained in *Campbell*, to succeed on such a claim, a plaintiff must ultimately "prove that the defendant's failure to provide [the plaintiff] with a [FAPE] was discriminatory." 58 F. App'x at 167.  To do so, a plaintiff must show that the defendant acted with either "bad faith or gross misjudgment." *Campbell*, 58 F. App'x at 167.

In the education context, discrimination can be demonstrated under two theories: intentional discrimination and failure to reasonably accommodate.  *Knox Cnty. v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023).  Under the failure-to-accommodate theory, a plaintiff must "establish both that his preferred accommodation was reasonable, *and* that the accommodation provided to him was unreasonable." *Id.*[2]

Defendant takes issue only with the sufficiency of Plaintiff's allegations with respect to the third element requiring a showing of "bad faith or gross misjudgment."  ECF No. 13 at 12-16. Importantly, the Sixth Circuit has recently called into question the applicability of this additional discriminatory intent element in the context of claims brought under Section 504 and ADA; a requirement that originated in the Eighth Circuit's pre-ADA opinion in *Monahan v. State of Nebraska*, 687 F.2d 1164 (8th Cir. 1982) (relied upon by the Sixth Circuit panel in *Campbell*, 58 F. App'x at 167).  *Knox Cnty. v. M.Q.*, 62 F.4th at 1001-1002.  In *Knox County v. M.Q.*, the court noted that "outside of the education context, the ADA unequivocally *does not* limit its protection to instances of intentional discrimination," and it is thus, "hard to square" the bad faith or gross misjudgment requirement "with statutory protection that reaches even the unintentional denial of services." *Id.* at 1002.  The Sixth Circuit further recognized that "requiring students with disabilities to prove bad faith or gross misjudgment—including for mere injunctive relief in the

---

[2] Defendant's repeated assertion that Plaintiff cannot "establish a *prima facie* case," ECF No. 13 at 11, 16, misstates the standard of review at the motion to dismiss stage, where a plaintiff need only allege facts to support a plausible claim for relief.  *Cf. Carrethers v. Speer*, 698 F. App'x 266, 271 (6th Cir. 2017) (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 609-10 (6th Cir. 2012).

form of reasonable accommodations, for example—would impose an impossibly high bar for many plaintiffs." *Id.* Finally, the court pointed out that *Monahan* only discussed this additional element in the context of the plaintiff's claim for damages. *Id.* Thus, the court concluded that "to the extent that students must plead bad faith or gross misjudgment to state a Section 504 or ADA claim, *Monahan* appears to suggest that this heightened requirement applies only where money damages are sought—and not necessarily to claims seeking only injunctive relief . . . ." *Id.*

Here, Plaintiff is seeking both monetary and injunctive relief.  ECF No. 1 at 59-61.  Based on the Sixth Circuit's discussion in *Knox Cnty. v. M.Q.*, the bad faith or gross misjudgment requirement is relevant, at most, to the determination of Plaintiff's entitlement to monetary damages.  62 F.4th at 1002.  Regardless, Plaintiff has adequately alleged that Kent ISD acted with bad faith or gross misjudgment when it coordinated with KPS outside of the IEP process to predetermine that G.G. was not qualified for placement at Pine Grove, which denied G.G. FAPE and did not reasonably accommodate his disabilities.  ECF No. 1 at ¶¶ 151-163, 188-201, 268, 279.

During the May 22, 2023 IEP meeting regarding the 2023-2024 school year, Plaintiff discussed with KPS personnel KPS's recommended placement of G.G. in "the elementary autism classroom housed at Southeast Kelloggsville." *Id.* at ¶¶ 130, 151.  Plaintiff has adequately alleged that this placement would not reasonably accommodate G.G.'s disabilities.  At the time of the IEP meeting, the Southeast Kelloggsville classroom did not yet exist. *Id.* at ¶ 152.  KPS described the classroom as "testing the waters" and the only description provided was as follows: "It's going to be an ASD classroom.  There will be an instructional support person within that classroom. And the students in that classroom will be identified as having ASD." *Id.* at ¶¶ 153-154.  No further information about this future program was available such as a website or print material. *Id.* at

¶ 155.  Plaintiff expressed her concerns about the adequacy and appropriateness of the Southeast Kelloggsville to accommodate G.G.'s disabilities, including his educational, social/emotional, medical, and communication needs, his tendency to elope, and his lack of safety awareness.  *Id.* at ¶¶ 156, 162.

Plaintiff alternatively suggested placement of G.G. at the Pine Grove Learning Center, a program overseen by Kent ISD.  *Id.* at ¶ 157.  Plaintiff has adequately alleged that unlike the Southeast Kelloggsville classroom, Pine Grove would reasonably accommodate G.G.'s disabilities.  *Id.* at ¶ 159.  Pine Grove, "serves students with special needs who have moderate to severe cognitive impairments, are severely multiply impaired, or have autism from Kindergarten through age 26."  *Id.* at ¶ 157.  Further, Pine Grove, "educate[s] students with complex needs by providing specialized instruction specific to the communication, academic, adaptive behavior, mobility, and adult living skills required to develop independence."  *Id.* at ¶ 158.  At the meeting, KPS did not seriously consider Plaintiff's request to place G.G. in Pine Grove, interrupting her and talking over her.  *Id.* at ¶ 160.  Later, Plaintiff learned that without her knowledge, KPS and Kent ISD personnel (Pine Grove's principal) had already discussed the appropriateness of placing G.G. in Pine Grove, together determining that it was not appropriate.  *Id.* at ¶¶ 190-191, 194-197, 201.  Kent ISD's failure to recommend placement of G.G. at Pine Grove amounted to discrimination by failing to reasonably accommodate his disabilities.  *Id.* at ¶¶ 268, 279.

The stark disparity between the two programs (one which did not even exist at the time of May 22, 2023 IEP meeting) and the other clearly able to reasonably accommodate G.G.'s intensive needs) demonstrates that this decision went beyond professional misjudgment and amounted to gross misjudgment.  Moreover, Rebecca McIntyre, Assistant Director of the MDE Office of Special Education testified in a deposition taken in the matter of *Lewis, et al. v. Michigan*

*Department of Education*, No. 1:22-cv-383 (W.D. Mich. 2022), that ISDs have a history of shirking their independent responsibility to ensure the provision of FAPE to students within their districts despite receiving training about this responsibility "ad nauseum" since 2019.  *Id.* at ¶¶ 217, 223. McIntyre also testified that she was not surprised that ISDs were improperly seeking dismissal from due process complaints (as was the case here) to avoid accountability.  *Id.* at ¶ 222.  McIntyre also testified that, for the last seven years, MDE has been training ISDs that they are Local Educational Agencies ("LEAs") under the IDEA, and therefore are primarily responsible, as LEAS and the subrecipients of the IDEA grant funds, for ensuring the delivery of FAPE to special education students.  *Id.* at ¶ 214.  This testimony that ISDs are LEAs and aware of their responsibility to provide FAPE to students, but knowingly fail to do so, also supports a plausible inference of bad faith or gross misjudgment.

Defendant asserts that the Cooperative Agreement between KPS and Kent ISD required KPS to invite Kent ISD to an IEP meeting to discuss placement in one of its programs.  ECF No. 13 at 14.  Defendant further asserts that "as Plaintiff admits" KPS did not extend such an invitation to Kent ISD.  *Id.* (no citation to the Complaint).  Plaintiff has made no such admission.  In the Complaint, Plaintiff asserts that "[n]either the Pine Grove principal nor any other Kent ISD representative attended any of G.G.'s IEP meetings."  ECF No. 1 at ¶ 195.  The Complaint does not assert that Kent ISD was not invited.  Regardless, this is a factual dispute not appropriately considered at the motion to dismiss stage where Plaintiff's allegations must be accepted as true and all reasonable inferenced made in her favor.  *Bickerstaff*, 830 F.3d at 396.

Continuing with this unsupported factual assumption, Defendant asserts that Kent ISD "lack[ed] the ability to even consider placement at [Pine Grove]" and that there was "no decision by the ISD" regarding G.G.'s placement.  ECF No. 13 at 14.  However—and regardless of whether

KPS extended an invitation to Kent ISD to attend an IEP meeting about G.G.'s placement—Kent ISD *did* have an opportunity to weigh in on G.G.'s placement at Pine Grove during the conversation between Kent ISD and KPS personnel, during which Kent ISD and KPS determined that G.G. should not be placed in Pine Grove.   ECF No. 1 at ¶¶ 190, 197.   It is worth noting that this very conversation during which it was decided that G.G. should not be placed in Pine Grove was a violation of C.F.R. § 300.227 as it constituted a "group that makes decisions on the educational placement" of G.G., without Plaintiff's presence.

Kent ISD had an independent obligation to ensure that G.G. received a FAPE and was made aware that KPS was considering his placement at one of its programs.   Rather than advocate for G.G.'s placement at Pine Grove, which would reasonably accommodate his disabilities, Kent ISD, along with KPS, decided not to place him there.   Kent ISD then purposefully avoided accountability for its obligation to provide a FAPE to G.G. by improperly arguing for its dismissal from G.G.'s due process complaint.   As such, Plaintiff has adequately alleged that Kent ISD discriminated against G.G. under Section 504 and Title II.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant Kent ISD's Motion to Dismiss.

Dated: December 9, 2024

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour (P78203)
Coriann Gastol (P74904)
ABDNOUR WEIKER LLP
500 E. Michigan Ave., Ste. 130
Lansing, MI 48912
(517) 994-1776
liz@education-rights.com
coriann@education-rights.com

Matthew C. McCann (P85286)
MOSS & COLELLA, PC
28411 Northwestern Hwy., Ste. 1150
Southfield, MI 48034
(248) 945-0100
mmccann@mosscolella.com

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief complies with the limits set forth in LCivR 7.2(b)(i). Further, based on the Word Count function of Microsoft Word for Mac word processing software, applied to include all include headings, footnotes, citations and quotations, but not to include the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits, I certify that this Brief contains 5585 words.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour

## CERTIFICATE OF SERVICE

I, Elizabeth K. Abdnour, counsel for Plaintiff, certify that on December 9, 2024, I filed this Notice by use of this Court's ECF system, which will serve copies to all counsel of record.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour