**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

L.G.,

Plaintiff,

v.

KELLOGGSVILLE PUBLIC SCHOOLS, et al.,

Defendants.

Case No. 1:24-cv-833

Hon. Robert J. Jonker

---

## PLAINTIFF'S OPPOSITION TO DEFENDANT MICHIGAN DEPARTMENT OF EDUCATION'S MOTION TO DISMISS

Plaintiff L.G., suing on behalf of her son, G.G., through undersigned counsel, respectfully submits this Opposition to Defendant Michigan Department of Education ("MDE" or "Defendant")'s Motion to Dismiss Plaintiff's Complaint. ECF No. 14. Plaintiff has adequately pled claims for relief against MDE, and the Motion to Dismiss must be denied.

## STATEMENT OF FACTS

G.G. is a seven-year-old child who was enrolled in Kelloggsville Public Schools ("KPS") in the Fall of the 2022-2023 school year. ECF No. 1 at ¶¶ 1-2. G.G. has been diagnosed with multiple disabilities, including Autism Spectrum Disorder ("ASD"), severe cognitive impairment, oral phase dysphagia, idiopathic dysphagia, central nervous complication, and pediatric feeding disorder. *Id.* at ¶¶ 1, 46. G.G. is non-verbal and has several behaviors, including self-stimulation, a lack of safety awareness, and a tendency to wander or elope that interfere with his ability to learn.

1

*Id.* at ¶¶ 47, 48.  G.G. also has difficulties with self-feeding, needs assistance with toileting, and requires medicine administration during the school day.  *Id.* at ¶¶ 49-51.

The Individuals with Disabilities in Education Act ("IDEA") requires that qualifying students with disabilities receive a free and appropriate education ("FAPE").  20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.101(a).  To achieve this goal, the IDEA requires that Local Education Agencies ("LEAs") design and develop an individualized education program ("IEP") for each qualifying child.  20 U.S.C. §§ 1412(a)(4), 1414(d); 34 C.F.R. §§ 300.112, 300.320-24.  Both Kelloggsville Public Schools ("KPS") and Kent Intermediate School District ("Kent ISD") are LEAs responsible for ensuring the provision of a FAPE to G.G.  ECF No. 1 at ¶¶ 12, 13, 54.  KPS is the primary school district in which L.G. and G.G. reside.  *Id.* at ¶ 52.  Kent ISD is an intermediate school district which serves the KPS school district and provides special education services directly to students through its Special Education Center Programs.  *Id.* at ¶¶ 53-57.

The instant Defendant, MDE, is a State Education Agency ("SEA"), and is responsible for ensuring that the requirements of the IDEA are carried out.  34 C.F.R. § 300.149(a)(1); ECF No. 1 at ¶ 14.  MDE is responsible for the supervision of the provision of special education in Michigan's local educational agencies ("LEAs").  20 U.S.C. § 1401(19), (32); ECF No. 1 at ¶ 14.  MDE receives IDEA funding by submitting to the Secretary of the U.S. Department of Education "assurances . . . that the State has in effect policies and procedures to ensure that . . . [a] free and appropriate public education is available to all children with disabilities residing in the State."  20 U.S.C. § 1412; ECF No. 1 at ¶ 15.  MDE also receives federal assistance and qualifies as a program under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and as an SEA, is a public entity subject to Title II of the ADA.  42 U.S.C. § 12131; ECF No. 1 at ¶ 16.

As Michigan's SEA, MDE is the agency responsible for conducting due process hearings required by the IDEA.  34 C.F.R. § 300.511; ECF No. 1 at ¶ 248.  The IDEA specifies that special education due process hearing officers:

> (ii) Must possess knowledge of, and the ability to understand, the provisions of the Act, Federal and State regulations pertaining to the Act, and legal interpretations of the Act by Federal and State courts;
>
> (iii) Must possess the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice; and
>
> (iv) Must possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice.

34 C.F.R. § 300.511(c)(1).  Further, the Michigan Administrative Rules for Special Education ("MARSE"), which sets forth the requirements for special education and related services for the State of Michigan, charges MDE with maintaining an effective complaint resolution process for claims of denied education or failure of the district to provide evaluations, programs, and services.  Mich. Admin. Code R. 340.1851-1855.  *See Doe v. Bd. of Educ. of Tullahoma City Sch.*, 9 F.3d 455, 457 (6th Cir. 1993) (noting that in the 6th Circuit, it is "settled" that violations of any state law that enlarges the scope of an educational agency's obligations are enforceable under the IDEA); ECF No. 1 at ¶¶ 242-247.

Plaintiff brings claims against MDE under the IDEA, Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, *et seq.*, Title II of the American with Disabilities Act ("Title II"), 42 U.S.C. § 12132, *et seq.*, and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L. 37.1101, *et seq.*, based on MDE's failure to (1) provide training and oversight to special education due process hearing officers (2) ensure that the special education due process hearing officers possess knowledge of and the ability to understand the requirements of the IDEA and related federal and state regulations.  ECF No. 1 at ¶¶ 250-256, 268, 279, 290.

During the 2022-2023 and 2023-2024 school years, KPS and Kent ISD failed to meet G.G.'s educational needs. *Id.* at ¶¶ 2, 3, 63-163. As outlined in detail in the Complaint, KPS among other things, failed to address Plaintiff's concerns about the inadequacy of G.G.'s IEP, *Id.* at ¶¶ 65-69, 132-150, provided G.G. with a different speech generating device than the one he was accustomed to, which negatively impacted his ability to communicate and participate in school, *Id.* at ¶¶ 70, 132-134, conducted an IEP meeting without a KPS or Kent ISD representative in violation of the IDEA, *Id.* at ¶¶ 82-97, and failed to reevaluate G.G. and update his IEP after receiving the report of a pediatric neuropsychologist diagnosing G.G. with ASD, *Id.* at ¶¶ 72-81, 103-105, 126-127.

During the May 22, 2023 IEP meeting held to determine G.G.'s placement for the 2023-2024 school year, Plaintiff discussed with KPS personnel, KPS's recommended placement of G.G. in "the elementary autism classroom housed at Southeast Kelloggsville." *Id.* at ¶¶ 130, 151. This classroom did not yet exist and was described as experimental or "testing the waters." *Id.* at ¶¶ 152-154. Plaintiff asked that G.G. be placed at one of the Special Education Center Programs overseen by Kent ISD, Pine Grove Leaning Center ("Pine Grove"). *Id.* at ¶¶ 130, 157. Pine Grove "serves students with special needs who have moderate to severe cognitive impairments, are severely multiply impaired, or have autism from Kindergarten through age 26." *Id.* at ¶ 157. Despite Plaintiff's grave concerns about the adequacy of the Southeast Kelloggsville classroom to properly accommodate G.G.'s educational, social/emotional, medical, and communication needs, her request for G.G.'s placement at Pine Grove was rejected. *Id.* at ¶¶ 161-162. Thus, Plaintiff made alternative plans, placing G.G. in a non-public learning center for the 2023-2024 school year. *Id.* at ¶ 163.

In November 2023, Plaintiff filed a due process complaint against KPS, later amended to include Kent ISD, alleging that KPS and Kent ISD failed to provide G.G. with a FAPE as required under the IDEA.  *Id.*  at ¶¶ 3, 166, 169.  In addition, during the state due process proceeding, Plaintiff learned that KPS and Kent ISD had engaged in unlawful predetermination regarding G.G.'s placement, meaning they had made a placement decision without her participation and input in violation of the IDEA. *Id.* at ¶¶ 5, 190-201.

On February 7, 2024, the Hearing Officer, an administrative law judge ("ALJ"), issued an order erroneously dismissing Kent ISD.  *Id.* at ¶ 176.  The order incorrectly held that ISDs are not primarily responsible for the provision of a FAPE and incorrectly concluded that "there is not a remedy for a parent or student in a due process hearing against a Respondent ISD."  *Id.* at ¶ 177. In support of its motion to dismiss, Kent ISD attached five opinions issued by Michigan Office Administrative Hearing and Rules ("MOAHR") ALJs, all of which wrongly concluded that ISDs are not LEAs and are therefore not responsible for the provision of FAPE to students with IEPs. *Id.* at ¶ 174.  The February 7, 2024 order relied solely on the incorrect legal arguments and wrongly decided prior caselaw that Kent ISD cited in its motion to dismiss.  *Id.* at ¶ 176.  The order also misstated the holding of *Bay City Education Association v. Bay City Public Schools*, 430 Mich. 370, 378-79; 422 N.W.2d 504 (1988), which does not support the ALJ's dismissal of Kent ISD. *Id.* at ¶¶ 178-179.

Moreover, the ALJ's order relied on M.C.L. 380.1751 and 380.1711 to support dismissal of Kent ISD.  *Id.* at ¶¶ 182-183.  These provisions, which define the responsibilities of school districts and ISDs, do not support the ALJ's holding.  *Id.* at ¶ 181.  In fact, M.C.L. 380.1711 establishes that ISDs must develop, establish, and continually evaluate and modify a plan for the delivery of special education services for all students under the age of 26 who reside in the

constituent districts.  *Id.* at ¶¶ 182-183.  Finally, the order relied on an irrelevant Michigan Attorney General Opinion regarding the provision of educational services to homebound and hospitalized students.  *Id.* at ¶ 185.

The ALJ's order was also fundamentally flawed in that it advocated for and made arguments on behalf of Kent ISD that it never raised in its bare-bones and legally incorrect motion. Rather than, properly, deciding the motion based on the arguments which the parties raised, the ALJ searched for new arguments in response to Plaintiff's opposition that would benefit Kent ISD. The ALJ then raised these arguments *sua sponte* and endorsed them.  With respect to Plaintiff's administrative claims against KPS, on May 15, 2024, the ALJ had issued a final decision and order finding only one substantive violation of the IDEA, namely KPS's failure to provide G.G. with the correct assistive technology for communication from September 2022 through February 2023.  *Id.* at ¶ 203.  After acknowledging that G.G. had been left with inadequate communication technology for seven months, the order granted G.G. a mere fifteen hours of compensatory education speech therapy services in the use of a speech generating device.  *Id.* at ¶¶ 204-205.  Although the order found that KPS had committed procedural violations throughout the 2022-2023 school year, it found that those violations did not result in substantive violations or a denial of FAPE.  *Id.* at ¶ 206.

The blatant errors contained in the ALJ's February 7, 2024 order dismissing Kent ISD, namely, the ALJ's incorrect conclusion that Kent ISD is not responsible for the provision of a FAPE to G.G., evinces MDE's failure to adequately train and oversee its hearing officers.  *Id.* at ¶¶ 187, 250.  In addition, the Complaint presents facts pertaining to MDE's systemic failure to ensure ALJs handling education cases understand the legal requirements of the IDEA.

More specifically, the Complaint cites to deposition testimony of Rebecca McIntyre, Assistant Director of the MDE Office of Special Education taken in the matter of *Lewis, et al. v. Michigan Department of Education*, No. 1:22-cv-383 (W.D. Mich. 2022). *Id.* at ¶¶ 213, 218-222. In her deposition, McIntyre testified that MDE has no standard process in place to review the content of due process hearing decisions for accuracy or to assess whether ALJs are demonstrating an understanding of special education law. *Id.* at ¶ 218. Further, although McIntyre testified that a state-level Special Education Advisory Committee ("SEAC") reviews due process decisions, a review of the SEAC membership list reveals that it does not include any attorneys or professionals with the training or knowledge necessary to assess the accuracy of the opinions. *Id.* at ¶¶ 219-220.

Moreover, McIntyre testified that MDE does not currently have adequate staffing of hearing officers handling special education due process complaints, and that MDE had not been providing sufficient oversight of its hearing officers to realize that staffing had been inadequate for years—up until June of 2024. *Id.* at ¶ 221. Finally, McIntyre testified that MDE has been training ISD special education directors "ad nauseum" since 2019 about their direct responsibility to ensure students in their districts are receiving a FAPE, *Id.* at ¶ 223, and also that she was not aware that ISDs were seeking dismissal of due process complaints against them based on the false premise that they are *not* LEAs responsible for the provision of FAPE to students with IEPs in their districts, *Id.* at ¶ 222, demonstrating MDE's knowledge and understanding of its responsibilities over LEAs as an SEA under the IDEA.

## **STANDARD OF REVIEW**

To survive a motion to dismiss, a complaint must contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The United States Supreme Court has held that a complaint is only properly dismissed under Rule 12(b)(6) when it

does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard is more than a sheer possibility, but it is not a probability requirement. *See Twombly*, 550 U.S. at 556. A complaint states a plausible claim for relief, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vest v. Resolute FP US Inc.*, 905 F.3d 985, 987 (6th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In reading the alleged facts, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Therefore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that the actual proof of the facts alleged is improbable and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal citations omitted).

## ARGUMENT

### I.    Plaintiff has adequately pled a claim for relief against MDE under the IDEA

Plaintiff has adequately alleged a claim for relief against MDE based on its systemic failure to train and oversee ALJs adjudicating education cases within the state of Michigan, particularly with respect to ensuring that ALJs are aware that ISDs are considered LEAs and have an independent obligation to provide FAPE to students with IEPs in their districts. Defendant acknowledges the well-recognized ability of plaintiffs to sue state education agencies based on such systemic failures to carry out their supervisory obligations under the IDEA. *See* ECF No. 15 at 16; *Pachl v. Seagren*, 453 F.3d 1064, 1070 (8th Cir. 2006) (finding that an SEC "may be responsible for violations of the IDEA when the state agency in some way fail[s] to comply with its duty to assure that the IDEA's substantive requirements are implemented," including "systemic

violations" of the state's IDEA responsibilities); *see also D.R. v. Mich. Dep't of Educ.*, No. 16-1369, 2017 WL 4348818, at *3-6, 8 (E.D. Mich. Sept. 29, 2017); *J.M. v. Tenn. Dept. of Educ.*, 358 F. Supp. 3d 736,743-44, 747-48 (M.D. Tenn. 2018).

For example, in *J.M. v. Tennessee Department of Education*, the court found IDEA claims properly asserted where the plaintiff alleged that the defendant state education agency failed to ensure compliance with a state law governing proper use of isolation and restraints, relying in part on evidence of the state agency's failure to adequately train personnel within the school district on the law's requirements. 358 F. Supp. 3d at 743-44, 747-48. Likewise, in *D.R. v. Michigan Department of Education*, the court permitted the plaintiffs' claims to proceed against a state education agency where plaintiffs alleged, among other things, the state defendant's failure to protect students' procedural due process protections in the disciplinary process, failure to monitor and ensure that adequate remedial services are provided, and failure to provide school districts with adequate funding and support to meet the IDEA's requirements. 2017 WL 4348818, at *5-8.

A claim is systemic in nature when it involves "state-level failures that only the State Defendants can rectify." *J.M. v. Tenn. Dept. of Educ.*, 358 F. Supp. 3d at 743-44. In other words, an issue is systemic when it could not have been remedied through the administrative hearing process (a forum where a plaintiff may seek an individual determination regarding his particular educational needs), and rather, interferes with the provision of FAPE for students beyond the individual plaintiff. *D.R. v. Mich. Dep't of Educ.*, 2017 WL 4348818, at *3-5; *see also Doe v. Arizona Dep't of Education*, 111 F.3d 678, 682 (9th Cir. 1997) (noting that a claim is "systemic" if it "implicates the integrity or reliability of the IDEA dispute resolution procedures").

Here, Plaintiff alleges that MDE failed in its oversight and supervisory responsibilities under the IDEA by failing to ensure that the MOAHR ALJs are knowledgeable and capable of

understanding the requirements of the IDEA and related laws.  ECF No. 1 at ¶¶ 234-256; 34 C.F.R. § 300.511(c)(1).  Plaintiff more specifically alleges that as a result of MDE's failure to train and oversee ALJs, ALJs are routinely improperly dismissing intermediate school districts (as was the case here), failing to recognize the independent responsibility of intermedial school districts to provide FAPE to students with disabilities within their districts.  *Id.* at ¶¶ 170-187, 245-255.

In the instant case, Plaintiff learned in the course of the investigation that KPS and Kent ISD had engaged in unlawful predetermination regarding G.G.'s educational placement.  *Id.* at ¶¶ 5, 200-201.  Plaintiff sought to have G.G. placed in the Pine Grove Learning Center, an educational program operated by Kent ISD.  *Id.* at ¶ 157.  However, outside of the IEP meeting and without the participation of Plaintiff, KSP and Kent ISD employees discussed G.G.'s placement and unilaterally determined that Pine Grove was not an appropriate placement.  *Id.* at ¶¶ 190-198.  Instead of placing G.G. in Pine Grove, KPS staff informed Plaintiff that they would place G.G. in "the elementary autism classroom at Southeast Kelloggsville," an experimental program that did not yet exist with no website or print material by which to assess whether the placement would meet G.G.'s educational needs.  *Id.* at ¶¶ 151-156.  Given Plaintiff's grave concerns about the adequacy and appropriateness of the Southeast Kelloggsville classroom, Plaintiff arranged for G.G. to attend a non-public learning center for the 2023-2024 school year.  *Id.* at ¶¶ 162-165.  Aside from this unlawful predetermination which resulted in a denial of FAPE to G.G., Plaintiff alleged in her due process complaint that Kent ISD (1) failed to allow her to meaningfully participate in the IEP development process and educational decision making for G.G. for the 2023-2024 school year, and (2) failed to take steps to ensure G.G. had a FAPE for the 2023-2024 school year.  Def. Ex. 1, ECF No. 15-2 at 3.

Facing this denial of FAPE, Plaintiff sought redress through the administrative process. However, the ALJ assigned to her case improperly dismissed Kent ISD. ECF No. 1 at ¶ 176. In doing so, the ALJ ignored settled law in Michigan that intermediate school districts have an independent obligation to ensure FAPE and improperly held that "there is not a remedy for a parent or student in a due process hearing against a Respondent ISD." *Id.* at ¶¶ 176-177. This was not, as characterized by Defendant, a one-off error of law to be corrected by appeal to federal court. *See* ECF No. 15 at 17. Tellingly, Defendant entirely ignores the ample evidence presented in the Complaint of MDE's systemic failure to train and monitor hearing officers handling education due process complaints in the State.[1]

In the February 7, 2024 order improperly dismissing Kent ISD, the ALJ relied on five similarly wrongly decided opinions dismissing ISDs from due process complaints. ECF No. 1 at ¶ 186. As stated in the Complaint, "the fact that Michigan's due process hearing officers have been wrongly relieving ISDs of their responsibility to provide students within their districts of jurisdiction with FAPE since at least 2019 is evidence of MDE's years-long failure to properly train them." *Id.* at ¶ 187. In addition, the Complaint presents the deposition testimony of the Assistant Director of the MDE Office of Special Education, Rebecca McIntyre, in which McIntyre testified to MDE's lack of surprise that ISDs were improperly seeking dismissal from due process complaints, *Id.* at ¶ 222, as well as MDE's lack of a process for reviewing due process hearing decisions, *Id.* at ¶ 218. McIntyre more specifically testified that MDE does not review the substance of ALJ opinions, stating "[w]e're not looking in at all the details of a hearing and looking

---

[1]    The cases Defendant cites purportedly rejecting claims against state agencies related to the competency of hearing officers are readily distinguishable, as, unlike the case here, they do not involve systemic claims supported by specific evidence from which liability of the state actor could be inferred. *See* ECF No. 15 at 17-18.

to see if they got that information right" and that "there is no review and check . . . to demonstrate that [ALJs] understand IDEA and MARSE." *Id.* at ¶ 218.

In addition, although McIntyre testified that a state-level Special Education Advisory Committee ("SEAC") reviews due process decisions, a review of the SEAC membership list reveals that it does not include any attorneys or professionals with the training or knowledge necessary to assess the accuracy of the opinions. *Id.* at ¶¶ 219-220. Finally, McIntyre testified that MDE does not currently have adequate staffing of hearing officers handling special education due process complaints, and that MDE had not been providing sufficient oversight of its hearing officers to realize that staffing had been inadequate for years. *Id.* at ¶ 221.

As a result of MDE's failure to provide training and oversight of the State's special education ALJs, particularly with respect to the responsibilities of ISDs, MDE has effectively failed in its obligation to provide an administrative process through which parents and students, including Plaintiff, can seek redress for an ISD's failure to provide a FAPE. 34 C.F.R. § 300.511(c)(1); Mich. Admin. Code R. 340.1851-1855; *see, e.g.*, *Heldman v. Sobol*, 962 F.2d 148, 155 (2d Cir. 1992) (permitting claim against state agency to proceed where the plaintiff alleged that appointment procedures resulted in biased hearing officers effectively precluding IDEA-compliant due process hearings). Further, the ISDs' ability to systematically seek and receive immunity from due process complaints is reflected in their history of shirking their responsibility to ensure the provision of FAPE to students in their districts. ECF No. 1 at ¶ 217. McIntyre also testified that, for the last seven years, MDE has been training ISDs that they are LEAs under the IDEA, and therefore are primarily responsible, as LEAs and the subrecipients of the IDEA grant funds, for ensuring the delivery of FAPE to special education students. *Id.* at ¶ 214. This supports Plaintiff's argument that MDE's failure to review ALJ decisions to dismiss ISDs was inappropriate.

Moreover, Plaintiff has adequately alleged that MDE denied G.G. a FAPE as a result of MDE's failure to adequately train and oversee its ALJs with respect to the obligations of ISDs. *See J.M. v. Tenn. Dept. of Educ.*, 358 F. Supp. 3d at 748 (stating "a student may sue a state educational agency under the IDEA, if the state educational agency's failures actually led to the denial of a student's FAPE").  Facing no consequences in an administrative hearing process implemented by MDE, Kent ISD had little incentive to properly consider Plaintiff's request that G.G. be placed in the Pine Grove Learning Center or to otherwise ensure that G.G. was provided a FAPE.  As KPS explained in its response to Plaintiff's due process complaint, G.G. could access Kent ISD's programs if both the District and Kent ISD determined the placement was appropriate. ECF No. 1 at ¶ 189.  Following unlawful predetermination excluding G.G. from Pine Grove, Plaintiff was unable to seek a remedy through the administrative process against Kent ISD due to MDE's failure to ensure that its ALJs were knowledgeable of the fundamental fact of an ISD's responsibility to provide FAPE to students with IEPs in its districts.  Thus, G.G. was not only denied a FAPE, but also denied his due process rights to a review of the legitimacy of that FAPE denial.

Further, the possible reversal of the particular ALJ's opinion would not redress the system-wide failure to train ALJs on this issue, as identified in the Complaint.  The Complaint specifically seeks a declaratory judgment that MDE violated the IDEA by failing to train and supervise its special education hearing officers and a permanent injunction prohibiting Michigan's hearing officers from summarily dismissing ISDs from due process hearings and/or erroneously finding that ISDs only have an obligation to ensure the provision of a FAPE to a student enrolled in one of the ISD's programs.  ECF No. 1 at 59.  In the meantime, Plaintiff has gone through a futile administrative process against Kent ISD, wasting valuable time and effort, while G.G. remains

without a remedy. Michigan ISDs have received further feedback from administrative hearing officers that they need not uphold their obligations to ensure the provision of FAPE in their school districts, despite having received the opposite instruction from MDE in recent years.  In sum, based on Plaintiff's specific and well-supported allegations concerning MDE's systemic failure to train and oversee special education due process hearing officers, which effectively precluded G.G. from seeking administrative redress as required by the IDEA and resulted in a denial of FAPE, Plaintiff's IDEA claim against MDE should proceed to discovery.

## II.    Plaintiff has adequately alleged claims against MDE under the Title II of the ADA and Section 504 of the Rehabilitation Act

Plaintiff has adequately alleged claims against MDE under Title II of the ADA and Section 504 of the Rehabilitation Act.  Given the overlapping elements of these claims, courts often assess claims brought under both statutes simultaneously.  *D.R. v. Mich. Dep't of Educ.*, 2017 WL 4348818, at *9.  Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).  Similarly, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To state a claim under either statute, a plaintiff must allege facts to support a reasonable inference that:

> (1) The plaintiff is a 'handicapped person' under the Act;
>
> (2) The plaintiff is 'otherwise qualified' for participation in the program;
>
> (3) The plaintiff is being excluded from participation in, or being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and

(4) The relevant program or activity is receiving Federal financial assistance.

*Campbell v. Bd. of Educ. of Centerline Sch. Dist.*, 58 F. App'x 162, 165 (6th Cir. 2003).[2]

The IDEA expressly provides that plaintiffs may bring a private right of action for denial of a FAPE under Title II and Section 504, as well as under the IDEA itself.  20 U.S.C. § 1415(l); *see also Campbell*, 58 F. App'x at 166.  Plaintiff has alleged that MDE's failure to properly train and oversee ALJs, particularly with respect to the responsibility of ISDs to provide FAPE, led to the frequent improper dismissal of ISDs from due process complaints and contributed to the failure of ISDs to uphold their responsibility to provide FAPE to disabled students (as was the case with G.G.).  ECF No. 1 at ¶¶ 176-187, 213-223; 250-252, 256, 268, 268(f), 279(f), 280-284.  It can reasonably be inferred that this systemic failure had discriminatory effects on disabled students like G.G.  *See D.R. v. Mich. Dep't of Educ.*, 2017 WL 4348818 at *9 (finding similar allegations of systemic oversight failures adequate to support inference of a discriminatory effect); *W.H. v. Tenn. Dep't of Educ.*2016 U.S. Dist. LEXIS 7206, *24 (same).

For a claim alleging denial of FAPE under Title II and Section 504, courts have previously held that "more harm is required than a denial of [FAPE]."  *N.L ex rel. Mrs. C. v. KCS Cnty. Schools*, 313 F.3d 688, 685 (6th Cir. 2003).  As the Sixth Circuit explained in *Campbell*, to succeed on such a claim, a plaintiff must ultimately "prove that the defendant's failure to provide [the plaintiff] with a [FAPE] was discriminatory."  58 F. App'x at 167.  To do so, a plaintiff must show that the defendant acted with either "bad faith or gross misjudgment."  *D.R. v. Mich. Dep't of Educ.*,

---

[2]    In reference to the third element, Title II of the ADA does not require that discrimination be "solely" because of the plaintiff's disability, but rather, that the plaintiff's disability was a "significant factor" behind the defendant's action or inaction.  *Anderson v. City of Blue Ash*, 798 F.3d 338, 357, 357 n.1 (6th Cir. 2015).

2017 WL 4348818 at *9 (citing *Campbell*, 58 F. App'x at 167; *G.C. v. Owensboro Pub. Sch.*, 711 F.3d 623, 635 (6th Cir. 2013).

Defendant takes issue only with the sufficiency of Plaintiff's allegations with respect to the third element requiring a showing of "bad faith or gross misjudgment."  ECF No. 15 at 19-22. Importantly, the Sixth Circuit has recently called into question the applicability of this additional discriminatory intent element in the context of claims brought under Section 504 and ADA; a requirement that originated in the Eighth Circuit's pre-ADA opinion in *Monahan v. State of Nebraska*, 687 F.2d 1164 (8th Cir. 1982) (relied upon by the Sixth Circuit panel in *Campbell*, 58 F. App'x at 167).  *Knox Cnty. v. M.Q.*, 62 F.4th 978, 1001-1002 (6th Cir. 2023).

In *Knox County v. M.Q.*, the court noted that "outside of the education context, the ADA unequivocally *does not* limit its protection to instances of intentional discrimination," and it is thus, "hard to square" the bad faith or gross misjudgment requirement "with statutory protection that reaches even the unintentional denial of services."  *Id.* at 1002.  The Sixth Circuit further recognized that "requiring students with disabilities to prove bad faith or gross misjudgment— including for mere injunctive relief . . . would impose an impossibly high bar for many plaintiffs." *Id.*  Finally, the court pointed out that *Monahan* discussed this additional element only in the context of the plaintiff's claim for damages.  *Id.* Thus, the court concluded that "to the extent that students must plead bad faith or gross misjudgment to state a Section 504 or ADA claim, *Monahan* appears to suggest that this heightened requirement applies only where money damages are sought—and not necessarily to claims seeking only injunctive relief . . . ."  *Id.*

Here, Plaintiff is seeking both monetary and injunctive relief.  ECF No. 1 at 59-61.  Based on the Sixth Circuit's discussion in *Knox Cnty. v. M.Q.*, the bad faith or gross misjudgment requirement is relevant, at most, to the determination of Plaintiff's entitlement to monetary

damages.  62 F.4th at 1002.  Regardless, Plaintiff has adequately alleged that MDE acted with bad faith or gross misjudgment in its failure to ensure that administrative hearing officers are knowledgeable about the responsibilities of ISDs to provide FAPE under the IDEA and state law, which resulted in a denial of FAPE to G.G. and subjected him to discrimination.  ECF No. 1 at ¶¶ 176-187, 213-223; 250-252, 256, 268, 268(f), 279(f), 280-284.

As discussed above, Plaintiff alleges that MDE failed to take corrective action to ensure ALJs were not erroneously dismissing intermediate school districts on the false premise that they are not required to provide FAPE to students in their districts.  *Id.* at ¶ 186.  This was despite the presence of at least five similarly wrongly decided cases from as early as 2019.  *Id.*  MDE's total failure to establish a system to review the substance of ALJ opinions also evidences more than mere negligence.  *Id.* at ¶ 218.  Moreover, MDE was aware that ISDs were not fulfilling their obligations under the IDEA and state law to provide FAPE, and thus, as McIntyre testified, she was not surprised that ISDs were improperly seeking dismissal from due process complaints, avoiding accountability.  *Id.* at ¶ 222.  In light of the known failure of ISDs to ensure the provision of FAPE to students with disabilities—as was the case with G.G.—MDE took some steps to specifically train ISD personnel about their obligations to provide FAPE.  *Id.* at ¶ 223.  McIntyre also testified that, for the last seven years, MDE has been training ISDs that they are LEAs under the IDEA.  *Id.* at ¶ 214.  Yet, MDE did not also address the systemic failure of ALJs to recognize the responsibilities of ISDs in Michigan, undermining its efforts to hold ISDs accountable, supporting a plausible inference of bad faith or gross misjudgment.  Moreover, McIntyre testified that MDE exercised such limited oversight of its hearing officers that MDE did not realize until very recently that their allocated ALJs were being assigned more than just special education cases, resulting in what she considered to be an ongoing staffing shortage.  *Id.* at ¶ 221.

Several district courts in the Sixth Circuit have recently allowed similar claims to proceed against state defendants based on allegations of the defendant's failure to adequately oversee or implement the requirements of the IDEA or related laws.  For example, in *D.R. v. Michigan Department of Education*, the court permitted the plaintiff's Section 504 and Title II claims to proceed to discovery where the plaintiffs "challenged MDE's professional judgment in oversight . . . and the allocation of necessary resources, and asserted that this has caused discriminatory effects."  2017 WL 4348818 at *9.  There, the court further noted that whether the state defendant's judgment "rises to the level of gross misjudgment, to qualify as discriminatory, is a question of fact that needs to be developed and brought before a trier of fact to determine."  *Id.*

Similarly, in *Doe v. Ohio*, the court found that the plaintiffs had "alleged facts from which the requisite state of mind may be inferred" and permitted the plaintiffs' Section 504 to proceed where the plaintiffs' allegations included that the defendants deliberately ignored funding requirements, failed to take into account funding needs based on inflation, failed to fund the required student-teacher ratios, and submitted a budget that underfunded special education services.  2012 WL 12985973 at *10 (S.D. Ohio Feb. 16, 2012); *see also J.M. v. Tenn. Dept. of Educ.*, 358 F. Supp. 3d at 751-52 (denying state defendant's motion for summary judgment reasoning that "[t]he mere fact that the State Defendants provided some training and engaged in oversight does not negate [the plaintiff's] contention that what the State Defendants provided was [] woefully inadequate . . . amount[ing] to gross misjudgment"); *A.B. v. Mich. Dept' of Educ.*, 570 F. Supp. 3d 531, 539 (W.D. Mich. 2021) (finding that whether MDE failed to provide proper oversight and financial assistance "amount[ed] to gross misjudgment to qualify as discriminatory is a question of fact for the trier of fact to determine").

Here, Plaintiff has similarly adequately alleged facts to support a plausible finding of bad faith or gross misjudgment under Title II and Section 504 based on MDE's failure to train and oversee its hearing officers, and as such, these claims should be permitted to proceed to discovery.[3]

### III.   Plaintiff's claims against MDE are ripe for review and must not be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1)

Plaintiff's claims against MDE are ripe for review.  "Determining whether administrative action is ripe for judicial review requires [courts] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."  *Nat'l Park Hospitality Ass'n v. DOI*, 538 U.S. 803, 808 (2003).  Similarly, the Sixth Circuit requires the following elements to be satisfied for the determination of a claim's ripeness for review: "(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 615 (6th Cir. 2008) (quoting *Insomnia, Inc. v. City of Memphis*, 278 F. App'x 609, 612 (6th Cir. 2008) and *Warshak v. United States*, 490 F.3d 455, 467 (6th Cir. 2007)).

Defendant's argument largely falls under the first factor described by the Supreme Court: the fitness of the issues for judicial review.  Defendant is essentially arguing that Plaintiff's case against MDE is not ripe for review, because at this point, Plaintiff cannot *prove* that MDE's actions resulted in a denial of FAPE to G.G.  ECF No. 15 at 22-25.  Defendant's argument is based on the fact that this Court has not yet ruled whether the underlying conduct of KPS or Kent ISD resulted in a denial of FAPE to G.G.  However, such a showing is not required at the pleading stage for an

---

[3]     Plaintiff's claims under the PWDCRA which "substantially mirrors the ADA" should similarly be permitted to proceed.  *See Donald v. Sybra, Inc.* 667 F.3d 757, 763 (6th Cir. 2012)

action involving systemic claims against a state education agency.  Defendant relies on a case, *T.M. v. Michigan Department of Education*, in which the court found plaintiff's systemic claims were not yet ripe against a state education agency defendant.  No. 1:23-cv-762, 2024 LEXIS 148521, at *6-7 (W.D. Mich. Aug. 20, 2024).  Yet, in that case, a separate action seeking review of the ALJ's opinion was pending in another court.  *Id.*  Thus, the in *T.M.* court's "key concern" was that the Eastern District and Western District of Michigan could issue conflicting rulings: one court potentially finding no denial of FAPE and the other court finding a denial of FAPE.  *Id.*  No such concern exists in the instant case where both review of the ALJ's opinion with respect to KPS and Kent ISD's actions and Plaintiff's systemic failure-to-train claim against MDE are part of the same lawsuit.  Here, the Court will ultimately determine whether each of the Defendants can be tied to G.G.'s alleged lack of FAPE.  Because this analysis would occur simultaneously, there is no risk of conflicting findings.

The instant case is akin to a § 1983 action against a municipality which hinges on the plaintiff demonstrating some underlying constitutional violation.  In such a case, at the pleading stage, a plaintiff need only allege—not prove—that an underlying constitutional violation occurred.  *See Nichols v. Wayne Cnty. Mich.*, 822 F. App'x 445, 449 (stating that "to prevail in a § 1983 suit against municipal defendants, [the plaintiff] must [] *allege*, and *ultimately prove*, a constitutional violation") (emphasis added).  Courts routinely permit cases involving individual and municipal actors to proceed simultaneously.  Otherwise, a plaintiff would have to first obtain a favorable ruling against an individual defendant before even filing suit against a municipal defendant.  Such a requirement would make little sense both considering the lengthy delay a plaintiff would face to hold a municipal actor accountable and from an efficiency standpoint given the shared universe of facts the two cases would involve.  This would also present a statute of

limitations problem, given that there is no separate statute of limitations for SEAs under the IDEA. Plaintiffs would have to file a due process complaint, go through a due process hearing, obtain a hearing officer's decision, then file suit and win against an LEA before being permitted to file suit against an SEA, all within the applicable three-year statute of limitations.

Unsurprisingly, in the context of special education cases alleging denial of FAPE under the IDEA, plaintiffs commonly sue both local school districts for their more direct involvement in the provision of FAPE and against state education agencies related to their supervisory role in ensuring the provision of FAPE.  *See e.g.*, *J.M. v. Tenn. Dept. of Educ.*, 358 F. Supp. 3d at 743, 752 (addressing state education agency's motion for summary judgment following settlement of claims against the school district, sued as part of the same action); *D.R. v. Mich. Dep't of Educ.*, 2017 WL 4348818, at *1 (assessing claims against school district and state education agency simultaneously).  Accordingly, Defendant's argument that Plaintiff cannot "plead—let alone establish—a claim against MDE" prior to an adverse ruling against KPS or Kent ISD is meritless. ECF No. 15 at 23.  As discussed above, Plaintiff has adequately pled a claim for relief against MDE based on its systemic failures to ensure the provision of FAPE to G.G.

Plaintiff also meets the remaining elements to satisfy the ripeness inquiry.  First, regarding whether "the likelihood that the harm alleged by the plaintiffs will come to pass," Plaintiff has alleged that, because of MDE's failure to train and oversee ALJs, Plaintiff's claim against Kent ISD was improperly dismissed.   ECF No. 1 at ¶¶ 250-256; *Grace Cmty. Church*, 544 F.3d at 615. Thus, the alleged harm has already occurred.  In addition, looking to the second factor, the factual record is sufficiently developed, given the detailed factual record concerning the underlying conduct of KPS and Kent ISD (Plaintiff having exhausted the administrative process as to those

Defendants), as well as the deposition testimony of McIntyre concerning MDE's failure to train and monitor ALJs.  ECF No. 1 at ¶¶ 250-256; *Grace Cmty. Church*, 544 F.3d at 615.

Finally, considering the hardship of the parties, if the Court were to dismiss MDE at this stage, Plaintiff would have to wait until receiving a favorable ruling regarding KPS and/or Kent ISD's denial of FAPE before refiling an action against MDE concerning the systemic failures alleged in the Complaint.  Defendant seems to allege that no hardship would befall Plaintiff in that scenario as, "Plaintiff's remedy is her appeal of the due process decision—i.e., the claims against KPS and Kent ISD," ECF No. 15 at 23; however, Plaintiff seeks injunctive relief to address the systemic failures of MDE.  As G.G.'s educational career in Michigan schools has just begun, this injunctive relief would ensure that Kent ISD fulfills its duty to provide a FAPE to G.G. going forward (which it currently has little incentive to do given its repeated improper dismissal as a party from due process proceedings).  Such a delay would also impose a significant financial burden on Plaintiff who would have to restart a federal action against MDE to reassert claims that would more efficiently be adjudicated in tandem with the instant claims against KPS and Kent ISD.

IV.    **Plaintiff's ADA and PWDCRA claims against MDE are not barred by Eleventh Amendment Immunity**

a.    ***Plaintiff's ADA Title II claim against MDE is not barred by the Eleventh Amendment***

Defendant unconvincingly argues that MDE is entitled to Eleventh Amendment immunity under the ADA.  ECF No. 15 at 26-27.  Although the Supreme Court has not yet decided whether Congress validly abrogated state sovereign immunity in Title II of the ADA, Congress was "unequivocal" in its intent to abrogate sovereign immunity for all claims under the ADA, see *U.S. v. Georgia*, 546 U.S. 151, 154 (2006) (citing 42 U.S.C. § 12202), and every circuit court of appeals

to consider the question in the context of public education has held that such abrogation was constitutionally valid.  *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 556 (3d Cir. 2007) (holding that state sovereign immunity was validly abrogated with respect to a Title II claim involving a disabled student's access to a sports program at a public institution of higher education); *Toledo v. Sanchez*, 454 F.3d 24, 40 (1st Cir. 2006) (same holding with respect to a claim for failure to reasonably accommodate a disabled university student); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005) (same for a Title II claim involving denial of accommodations for college student with a medical condition); *Assn'n for Disabled Ams. v. Fla. Int'l Univ.*, 405 F.3d 954, 959 (11th Cir. 2005) (same for a Title II claim involving denial of sign language interpreters for a college student); see also *Dean v. Univ. at Buffalo Sch. of Medicine and Biomedical Sciences*, 804 F.3d 178, 195 n. 9 (2d Cir. 2015) (declining to rule on this issue but noting that the other circuits to do so have held that abrogation is valid).

The Sixth Circuit has not specifically addressed Title II abrogation in the context of public education claims, but district courts within the Sixth Circuit have embraced the consensus of other circuits.  *See e.g., Frank v. Univ. of Toledo*, 621 F. Supp. 2d 475, 481 (N.D. Ohio 2007) (holding that Congress validly abrogated state sovereign immunity with respect to ADA Title II claim against state university).  Although most public education Title II claims have arisen in the context of higher education, several courts in this circuit have approved the abrogation of sovereign immunity in other public education contexts as well.  *See D.R. v. Mich. Dep't of Educ.*, No. 16-1369, 2017 WL 4348818, at *7 (stating that the court "see[s] no reason why the reason why the reasoning in higher education cases should not equally apply to the primary education context"); *W.H. v. Tenn. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 7206, *29-30 (M.D. Tenn. Jan. 20, 2016)

(finding "no reason to differentiate the analysis [regarding higher education] with respect to the right to public primary education").  This Court should reach the same conclusion here.

MDE argues that Plaintiff fails to plead sufficient facts to state a claim under Title II, which MDE contends would bar the abrogation of sovereign immunity under the Eleventh Amendment.  *See* ECF No. 15 at 26-27.  But this is not a sovereign immunity argument so much as a question of whether Plaintiff has stated a claim, and since Plaintiff has sufficiently pleaded systemic Title II violations, *see* Section I, *supra* at 8-9, this argument fails.  For this reason, the case cited by Defendant, *Babcock v. Michigan*, 812 F.3d 531 (6th Cir. 2016), is inapposite.  *Babcock* held that a Title II suit was barred because it alleged exclusion from "access to a specific facility" instead of the "public service, program, or activity" covered by Title II.  *Id.* at 535. Because the plaintiff "failed to identify conduct that violates the ADA," her claim failed.  *Id.* at 539.  In other words, *Babcock* never reached the question of whether, had the plaintiff stated a Title II claim, state sovereign immunity would have barred it.  *See D.R. v. Mich. Dep't of Educ.*, No. 16-1369, 2017 WL 4348818, at *8 (rejecting similar argument including the state defendant's misguided reliance on *Babcock*, 812 F.3d 534-35).

In this case, Plaintiff's ADA claim against MDE is based on discrimination in and exclusion from educational services, programs or activities, which are undeniably covered by Title II, not the alleged physical denial of access to facilities at issue in *Babcock*.  Based on Plaintiff's well-pleaded allegations of MDE's Title II violations, this Court should hold that "with respect to the right to public primary education . . ., [42 U.S.C. §] 12202 validly applies to abrogate . . . Eleventh Amendment immunity."  *W.H. v. Tenn. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 7206, at *30.

Finally, if this Court nevertheless concludes that Title II of the ADA does not validly abrogate state sovereign immunity, Plaintiff should be granted leave to amend her Complaint to

add Michael F. Rice, the state superintendent of public instruction, as an official-capacity defendant under the *Ex Parte Young* doctrine.[4]  *See Carten v. Kent State Univ.*, 282 F.3d 391, 395-97 (6th Cir. 2002) (applying *Ex Parte Young* to allow plaintiffs' ADA Title II claim for prospective relief against state officials); *Nelson v. Miller*, 170 F.3d 641, 646-47 (6th Cir. 1999) (same). Sovereign immunity can be a formidable obstacle to the recovery of damages.  Accordingly, if the Court is persuaded that MDE itself has sovereign immunity, it should permit an amendment to the Complaint to name an MDE state official as defendant rather than dismiss Plaintiff's otherwise valid ADA claim on a pleading technicality.

> **b. Plaintiff's PWDCRA claim against MDE is not barred by the Eleventh Amendment.**

While there is support for Michigan State court jurisdiction over this State claim, the Federal Rule of Civil Procedure 42(a) allowance for consolidation of related claims to promote judicial efficiency should also be considered.  Addressing similar issues in separate courts leads to redundant proceedings, wasting time and money for both the parties involved and the court system. By consolidating these claims, one court can resolve all related matters in one comprehensive proceeding, saving valuable resources.  Furthermore, having multiple parallel cases across state and federal courts can cause confusion and potential delays.  Consolidating the claims in one court streamlines the process, reducing the likelihood of contradictory decisions and expediting the resolution of disputes.  Consolidating state claims with federal claims in this Court will not only streamline the judicial process, but also serve the interests of justice and efficiency.  As such, this Court should hear Plaintiff's claim under the PWDCRA pursuant to Rule 42(a).

---

[4]      Under Michigan law, the state superintendent is the principal executive officer of MDE. Mich. Comp. Laws § 16.405.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant MDE's Motion to Dismiss.

Dated: December 9, 2024

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour (P78203)
Coriann Gastol (P74904)
ABDNOUR WEIKER LLP
500 E. Michigan Ave., Ste. 130
Lansing, MI 48912
(517) 994-1776
liz@education-rights.com
coriann@education-rights.com

Matthew C. McCann (P85286)
MOSS & COLELLA, PC
28411 Northwestern Hwy., Ste. 1150
Southfield, MI 48034
(248) 945-0100
mmccann@mosscolella.com

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief complies with the limits set forth in LCivR 7.2(b)(i). Further, based on the Word Count function of Microsoft Word for Mac word processing software, applied to include all include headings, footnotes, citations and quotations, but not to include the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits, I certify that this Brief contains 8356 words.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour

## **CERTIFICATE OF SERVICE**

I, Elizabeth K. Abdnour, counsel for Plaintiff, certify that on December 9, 2024, I filed this

Notice by use of this Court's ECF system, which will serve copies to all counsel of record.


*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour