# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

L.G. o/b/o G.G.,

      Plaintiff/Appellant/Petitioner,           Judge Robert J. Jonker
                                        Magistrate Sally J. Berens

v.                                           Case No. 1:24-cv-833

KELLOGGSVILLE PUBLIC SCHOOLS and
KENT INTERMEDIATE SCHOOL
DISTRICT,                          MOAHR Case No. DP-23-0017
                                      MOAHR Case No. DP-24-0005

      Defendants/Appellees/ Respondents,

and

**MICHIGAN DEPARTMENT OF
EDUCATION**,

      Defendant.

---

| | |
|---|---|
| ELIZABETH K. ABDNOUR (P78203) | TIMOTHY J. MULLINS (P28021) |
| CORIANN GASTOL (P74904) | TRAVIS M. COMSTOCK (P72025) |
| ABDNOUR WEIKER LLP | GIARMARCO, MULLINS & HORTON, P.C. |
| *Attorneys for Plaintiff* | *Attorneys for Defendant, Kent ISD* |
| 325 E. Grand River Ave., Suite 250 | 101 W. Big Beaver Road, 10th Floor |
| East Lansing, MI 48823 | Troy, MI 48084-5280 |
| (517) 994-1776 | (248) 457-7020 |
| liz@education-rights.com | tmullins@gmhlaw.com |
| coriann@education-rights.com | tcomstock@gmhlaw.com |
| | |
| MATTHEW C. MCCANN (P85286) | MARK OSTROWSKI (P49761) |
| FOLEY, BARON, METZGER & JUIP, PLLC | KLUCZYNSKI GIRTZ VOGELZANG |
| *Attorney for Plaintiff* | *Attorney for Defendant, Kelloggsville Public Schools* |
| Cambridge Center | 3033 Orchard Vista Dr. SE, Ste. 308 |
| 38777 Six Mile Rd., Suite 300 | Grand Rapids, MI 49546-7077 |
| Livonia, MI  48152 | (616) 559-8649 |
| (734) 742-1800 | marko@kgvlaw.com |
| mmcmann@fbmjlaw.onmicrosoft.com | |

---

## ANSWER OF KENT INTERMEDIATE SCHOOL DISTRICT

1.  Six-year-old G.G. is diagnosed with multiple disabilities, including Autism Spectrum Disorder ("ASD"), severe cognitive impairment, oral phase dysphagia, idiopathic dysphagia, central nervous system complication, and pediatric feeding disorder.

**ANSWER: Plaintiff G.G. has never been enrolled in a program operated by Defendant Kent Intermediate School District ("the ISD") and therefore the ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

2.  Since G.G. enrolled in KPS in the Fall of the 2022-2023 school year, both KPS and Kent ISD fundamentally underestimated and failed to meet G.G.'s needs as a learner. Despite his mother L.G.'s persistent, vocal concerns about the inadequacy of G.G.'s accommodations and services and her repeated requests that Defendants KPS and Kent ISD update his IEP to include relevant information about his disabilities and related educational needs from his medical team, Defendants KPS and Kent ISD failed to provide him with appropriate special education services.  These failures resulted in numerous violations of G.G.'s civil rights, including violations of the IDEA, Section 504, Title II of the ADA, and PDCRA.

**ANSWER: The ISD denies the allegations that G.G. was never enrolled at an ISD program and KPS never sought the ISD's involvement in any evaluation or other assessment for G.G. during the 2022-23 school year. The ISD denies that L.G. made "repeated requests" to the ISD regarding G.G.'s IEP. The ISD denies that it "failed to provide" G.G. with appropriate services for the reason such allegations are untrue. The ISD denies that it violated any federal or state law.**

3.  In November 2023, having unsuccessfully tried to get KPS and Kent ISD to meet her son's educational needs for over a year, L.G. filed a special education due process complaint against KPS, which was later amended to include Kent ISD.  L.G.'s complaint alleged that KPS

and Kent ISD had failed to provide G.G. with a free and appropriate public education ("FAPE")
as required under the IDEA.

**ANSWER: The ISD admits that L.G. filed a due process complaint against it and that the
ALJ properly dismissed her complaint. The ISD denies any effort by L.G. to ask it to provide
any educational service to G.G.**

4.   Although both the IDEA and MDE clearly articulate that ISDs, like local school
districts, are required to provide students with disabilities with a FAPE under the IDEA and are
required to provide appropriate supervision to the local school districts to which they provide
funding, the special education due process hearing officer improperly dismissed Kent ISD from
the due process proceeding.

**ANSWER: The ISD denies the allegations contained therein for the reasons set forth
in the decision of the Administrative Law Judge resulting from the due process hearing
pursued by L.G., which resulted in a Decision and Order dated February 7, 2024, which
decisions and conclusions on which the ISD, in part, bases its denials and which decision L.G.
expressly seeks to set aside herein.**

5.   During the course of the due process proceeding, L.G. learned that KPS and Kent ISD
had engaged in unlawful predetermination regarding G.G.'s educational placement, meaning
that they had made a placement decision for him without her participation and input, which
violates the IDEA.

**ANSWER: The ISD denies the allegations as untrue.**

6.   A due process hearing was held in March 2024 against KPS, after which the hearing
officer issued a decision that failed to hold KPS accountable for the full range of its IDEA
violations and failed to award G.G. with sufficient compensatory education hours to allow him

to reclaim the education he had lost through KPS's failures.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

7.  Thus, on behalf of G.G., L.G. now seeks a reversal of the ALJ's orders; sufficient compensatory education services to allow G.G. to reclaim the FAPE he was denied by KPS, Kent ISD, and MDE due to its failure to properly train and supervise its due process hearing officers; and other remedies.

**ANSWER: The ISD denies the allegation to the extent it asserts that the ALJ's Feb. 7, 2024 decision was incorrect and denies that it denied G.G. a FAPE.**

8.  L.G. also seeks remedies for Defendants' discrimination against G.G. as a person with a disability.

**ANSWER: The ISD denies that it discriminated against G.G. under any state or federal law.**

## PARTIES

9.  Plaintiff L.G. is the parent and legal guardian of student G.G.

**ANSWER: Admitted.**

10. G.G. has qualifying disabilities under the IDEA and is therefore entitled to receive special education and related services under the IDEA. Student G.G. is also an individual with a disability within the meaning of Title II of the ADA, Section 504, and the PDCRA as he has physical and mental impairments that substantially limits one or more of his major life activities including processing information, concentrating, learning, and communicating with others. 28 C.F.R. § 35.108; 34 C.F.R. § 34.104.3; M.C.L. 37.1101(3)(h).

**ANSWER: Neither admit nor deny and leave Plaintiffs to their proofs.**

11. At all relevant times, Plaintiff and G.G. were residents of the City of Wyoming, County of Kent, State of Michigan.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

12. Defendant KPS was at all relevant times and continues to be a local educational agency in Kent County, Michigan, subject to the provisions of the IDEA. KPS was responsible for providing a FAPE to student G.G. under the IDEA. KPS is a recipient of federal financial assistance, subject to the requirements of Section 504, 34 C.F.R. § 104.31 *et seq*.; a public governmental entity subject to the provisions of the ADA, 42 U.S.C. §§ 12132, 12131(1)(A), (B); and an educational institution subject to the requirements of PDCRA, M.C.L. 37.1401.

**ANSWER: The ISD states that no answer is required because the allegations do not refer to the ISD.**

13. Defendant Kent ISD was at all relevant times and continues to be a local educational agency in Kent County, Michigan, subject to the provisions of the IDEA. Kent ISD was responsible for providing a FAPE to student G.G. under the IDEA. Kent ISD is a recipient of federal financial assistance, subject to the requirements of Section 504, 34 C.F.R. § 104.31 *et seq*.; a public governmental entity subject to the provisions of the ADA, 42 U.S.C. §§ 12132, 12131(1)(A), (B); and an educational institution subject to the requirements of PDCRA, M.C.L. 37.1401.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

14. Defendant MDE is the State Education Agency ("SEA") for the State of Michigan and is responsible for ensuring that the requirements of the IDEA are carried out. 34 C.F.R. §

300.149(a)(1). MDE is responsible for the supervision of the provision of special education in Michigan's local educational agencies ("LEAs"). 20 U.S.C. § 1401(19), (32).

**ANSWER**: **The ISD states that no answer is required because the allegations do not refer to the ISD.**

15. MDE receives IDEA funding by submitting to the Secretary of the U.S. Department of Education "assurances ... that the State has in effect policies and procedures to ensure that ... [a] free and appropriate public education is available to all children with disabilities residing in the State." 20 U.S.C. § 1412.

**ANSWER: The ISD states that no answer is required because the allegations do not refer to the ISD.**

16.    MDE also receives federal assistance and qualifies as a program under Section 504, 29 U.S.C. § 794, and as an SEA, is a public entity subject to Title II of the ADA. 42 U.S.C. § 12131.

**ANSWER: The ISD states that no answer is required because the allegations do not refer to the ISD.**

## JURISDICTION AND VENUE

17.    This Court has original jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1361.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

18.    This Court also has jurisdiction over Plaintiff's IDEA claims under 20 U.S.C.  § 1415(i)(2)(A) and (3)(A) and under 34 C.F.R. §300.516 without regard to the amount in

dispute.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

19.      Plaintiff has exhausted all administrative remedies required by 20 U.S.C. § 1415(l).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

20.      There remains no other forum in which Plaintiff's claims can be vindicated.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

21.      This Court has jurisdiction pursuant to the ADA, as amended, 42 U.S.C. § 12101 *et seq*., and Section 504, 29 U.S.C. § 794.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

22.      This Court has the authority to grant declaratory and injunctive relief and to compel or set aside agency action to address duties arising under the Constitution, laws, or treaties of the

United States. 42 U.S.C. § 1983, 28 U.S.C. § 2201 and 5 U.S.C. §§ 702, 704, and 706.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

23. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

24. Pursuant to 28 U.S.C. § 1391(b), venue lies in the Western District of Michigan as the events giving rise to this action occurred in and around Kelloggsville, Michigan.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

## LEGAL FRAMEWORK

*The Individuals with Disabilities in Education Act ("IDEA")*

25. The IDEA requires that qualifying students with disabilities receive a FAPE. 20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.101(a).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

8

26. To achieve this goal, the IDEA requires that LEAs design and develop an individualized education program ("IEP") for each qualifying child with a disability. 20 U.S.C. §§ 1412(a)(4), 1414(d); 34 C.F.R. §§ 300.112, 300.320-24.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court. In further answer, the ISD denies that it is an LEA in the context of this case because it was not asked by Plaintiff L.G. or KPS to provide any special education services to G.G.**

27. According to the IDEA and its implementing regulations, LEAs include:

> [A] public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for such combination of school districts or counties as are recognized in a State as an administrative agency for its public elementary schools or secondary schools.

20 U.S.C. § 1401(19)(A); 34 C.F.R. § 303.23(a).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

28. Under the IDEA, each state must "ensure" that it provides "special education" and "related services" to all children with disabilities within a specified age range residing in the state. 20 U.S.C.§§ 1401(9), 1412(a)(1). "Special education" means specifically designed instruction that meets the unique needs of a child with a disability. *See* 20 U.S.C. § 1401(29). "Related services"

mean the supportive services "required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(26).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

29. LEAs must ensure that "a reevaluation of each child with a disability is conducted . . . if the local educational agency determines that the educational or related service needs, including improved academic achievement and functional performance, of the child warrant a reevaluation." 20 U.S.C. § 1414(a)(2)(A)(i); 34 C.F.R. § 300.303(a)(1).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

30. In conducting an evaluation, the IDEA and its implementing regulations require LEAs to "use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information, including information provided by the parent, that may assist in determining . . . the content of a child's [IEP], including information related to enabling the child to be involved in and progress in the general education curriculum." 20 U.S.C. § 1412(b)(2)(A)(ii); 34 C.F.R. § 300.303(b)(2).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

31. States and LEAs must provide special education and related services to each eligible student with a disability by implementing an IEP, an individually tailored statement that is developed, reviewed, and revised by an IEP "team." *See* 20 U.S.C. § 1414(d).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

32. States and LEAs also must "ensure that the IEP Team . . . revises the IEP as appropriate to address any lack of expected progress toward the annual goals and in the general education curriculum . . . ; the results of any reevaluation conducted . . . ; the child's anticipated needs; or other matters." 20 U.S.C. § 1414(d)(4)(A)(ii); 34 C.F.R. § 300.324(b)(1)(ii).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court. The ISD further denies the allegation for the reason that it had no responsibility regarding G.G.'s IEP team decisions.**

33. States must "have in effect policies and procedures to ensure that public agencies in the State meet the LRE [least restrictive environment] requirements" of the IDEA. 34 C.F.R. § 300.114(a)(1).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

11

34. To achieve the goal of providing a FAPE to all children with qualifying disabilities, states and LEAs must design and develop an IEP for each qualifying child. 20 U.S.C. §§ 1412(a)(4), 1414(d); 34 C.F.R. §§ 300.112, 300.320-24.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

35. In *Endrew F. v. Douglas County School District Re-1*, 137 S. Ct. 988, 999 (2017), the Supreme Court of the United States defined FAPE as an offer of education, "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id.* at 999. The Court further clarified that, in designing an IEP, "every child should have the chance to meet challenging objectives," and the IEP Team must give, "careful consideration to the child's present levels of achievement, disability, and potential for growth." *Id.* at 1000.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

36. FAPE, as defined under 20 U.S.C. § 1401(9), requires special education and related services to be "provided in conformity with" a student's IEP.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

37. While the IDEA guarantees individually tailored educational services, the ADA and Section 504 mandate non-discriminatory access to federally funded programs. *See Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 756 (2017).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

38. Public schools that receive federal funds must comply with all three statutes, and the same underlying conduct—including denial of a FAPE—can violate the IDEA, the ADA, and Section 504 all at once. *Id.* at 755-56.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

***Title II of the Americans with Disabilities Act ("ADA")***

39. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

40. Further, under Title II of the ADA, covered entities must make "reasonable modifications

13

in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability  .  .  . "  28 C.F.R. § 35.130(b)(7).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

*Section 504 of the Rehabilitation Act of 1973 ("Section 504")*

41. Similarly, Section 504 of the Rehabilitation Act and its implementing regulations provide that no one may be excluded from a program receiving federal funds "solely by reason" of her disability. 29 U.S.C. § 794(a); *see also* 34 C.F.R. § 104.4(a).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

42. Under Section 504 of the Rehabilitation Act, a school district must provide a FAPE, meaning "the provision of regular or special education and related aids and services that  are designed to meet individual educational needs of [a child with a disability] as adequately as the needs of [non-disabled students] are met and…are based upon adherence to procedures that satisfy the requirements of [34 C.F.R. §§] 104.34, 104.35, and 104.36." 34 C.F.R. § 104.33(a)-(b).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by**

the Court.

*Michigan's Persons with Disabilities Civil Rights Act ("PDCRA")*

43. PDCRA prohibits educational institutions and public services from "[d]iscriminat[ing] in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability ..." M.C.L. 37.1402(a).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

44. PDCRA also guarantees full and equal use of public accommodations, public services, and educational facilities free from discrimination because of a disability. M.C.L. 37.1102.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

## FACTUAL ALLEGATIONS

45. G.G. is six years old.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

46. G.G. has a number of disabilities, including Autism Spectrum Disorder ("ASD"), severe cognitive impairment, oral phase dysphagia, idiopathic dysphagia, central nervous system complication, and pediatric feeding disorder.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore,**

15

leaves Plaintiffs to their proofs.

47. G.G.'s disabilities, including the fact that he is non-verbal, adversely impact his educational performance and learning capabilities.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

48. G.G. has several behaviors, including self-stimulation, lack of safety awareness, and a tendency to elope, that interfere with his ability to learn.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

49. G.G. has significant obstacles with self-feeding.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

50. G.G. needs assistance with toileting.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

51. G.G. requires medicine administration during the school day.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

52. KPS is the primary school district within which L.G. and G.G. reside.

**ANSWER: Admitted.**

53. Kent ISD is an intermediate school district and LEA which serves the students and educators of three non-public school districts and 20 public school districts, including KPS.

**ANSWER: The ISD admits that it "is an intermediate school district" but denies that**

in the context of this case that it is a "LEA". The ISD admits that it serves the public school districts that are the LEAs in this context and their respective students and educators in certain, specified ways pursuant to the Cooperative Agreement amongst the ISD and its constituent LEAs.

54. KPS and Kent ISD are responsible for providing G.G. with a FAPE and the procedural protections required by the IDEA and the Michigan Administrative Rules for Special Education ("MARSE").

**ANSWER: The ISD denies that it was responsible for providing G.G. a FAPE as that was the obligation of KPS, the LEA, since G.G. resided in KPS's boundaries and was enrolled in its school.**

55. Kent ISD provides special education services directly to students through its nine Special Education Center Programs.

**ANSWER: The ISD admits that pursuant to the Cooperative Agreement with its constituent LEAs that it provides services to some students placed at its center programs under the process defined in the Cooperative Agreement.**

56. Kent ISD's Special Education Center Programs offer specialized services to meet the needs of students with IEPs that have complex needs. Kent ISD operates Center Programs for  such special education students, birth through the age of 26 years old, who reside within the boundaries of Kent County and its member districts.

**ANSWER: The ISD admits that its programs are designed to and do provide appropriate special education programs and services to students placed at its programs through the process set forth in the Cooperative Agreement.**

57. Kent ISD is a "regional education service agency" whose purpose is to "help local

school districts with programs and services…that are highly specialized or that would be far too expensive on an individual basis."\

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

58.    Prior to enrolling in KPS, G.G. was a student in the Wyoming Public Schools ("WPS").

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

59.    G.G.'s IEP team at WPS determined that he needed to be placed in a dedicated classroom for emotionally impaired students in a one-on-one setting located in WPS's Early Childhood Center in the Godwin South Building, now called South Godwin Head Start.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

60.    G.G. was placed in that dedicated classroom from August 2021 through March 2022.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

61.    WPS unilaterally disenrolled G.G. in March 2022.  While the reasons offered for that disenrollment are contradictory and problematic, that decision is not a basis for any claims asserted in this lawsuit.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore,**

leaves Plaintiffs to their proofs.

62.     After G.G.'s disenrollment from WPS, Plaintiff searched for a new educational placement for G.G. for over six months, and he was finally accepted by KPS in September 2022 and placed in a classroom at KPS's Early Childhood Learning Center ("ECLC").

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

63. On or around September 23, 2022, Plaintiff attended an IEP meeting for G.G. at KPS, and an IEP was drafted and implemented on that same day for the 2022-2023 school year (the "September 2022 IEP").

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

64. Plaintiff was presented with a draft IEP at that meeting, with no opportunity to review it beforehand.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

65. At the meeting, Plaintiff raised concerns about G.G.'s ASD diagnosis and related indicative behaviors, limitations, impairments, and challenges, as well as his feeding and medical needs.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

66. Plaintiff raised concerns about the sufficiency of the behavioral and speech therapy supports in the IEP.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore,**

leaves Plaintiffs to their proofs.

67. KPS failed to amend the IEP to address the concerns Plaintiff raised at the meeting.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

68. KPS did not even include Plaintiff's concerns in the "Parent/Guardian Concerns" section of the IEP, which simply reads: "Mom is concerned about that [sic] he will be in the back of the room and left behind.  He is concerned about other children not being nice to him. He does not have a lot fear [sic]."

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

69. The IEP does not even address these concerns.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

70. The September 2022 IEP also inappropriately changed G.G.'s speech generating device from the Language Acquisition through Motor Planning ("LAMP") device he was comfortable with to another augmentative and alternative communication ("AAC") device with which he had no familiarity or working experience, which negatively impacted his ability to communicate, access the curriculum, and interact with his teachers and peers.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

71. The September 2022 IEP was not reasonably calculated to enable G.G. to make progress appropriate in light of his circumstances as required by *Endrew F.*, *supra*, and did not provide G.G. with a FAPE.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

72. On or around October 3, 2022, Dr. Shana Rush, a pediatric neuropsychologist specializing in neuropsychological, behavioral health, and communication assessments, completed a neuropsychological assessment of G.G.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

73. During the evaluation, Dr. Rush advised Plaintiff that she did not believe G.G.'s IEP was sufficient to meet his educational needs.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

74. On or around October 4, 2022, L.G. contacted Kimberlee Fountaine, KPS's Director of Student Services, asking KPS to conduct a Review of Existing Educational Data ("REED") and an evaluation of G.G., and convene a meeting of G.G.'s IEP team to review the results of Dr. Rush's forthcoming evaluation and update his IEP with the new information.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

75. On or around October 11, 2022, Dr. Rush issued her evaluation report ("the Rush report"), which diagnosed G.G. with Autism Spectrum Disorder ("ASD").

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

76. The Rush report included several recommendations for G.G., including an intensive full- day therapeutic programming to address his ASD symptoms, school-based special

education services, and Applied Behavioral Analysis ("ABA") therapy.[7]  The Rush report

suggested that he received speech/language therapy and occupational therapy.

>    **ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

77. On or around October 11, 2022, Plaintiff provided Fountaine with a copy of the Rush report.

>    **ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

78. Fountaine did not respond.

>    **ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

79. For five months, Plaintiff repeatedly contacted Fountaine to try to schedule a meeting to update L.G.'s IEP based on his ASD diagnosis.

>    **ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

80. On or around February 24, 2023, Fountaine finally contacted Plaintiff and told her that KPS did not need to listen to a doctor.

>    **ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

81. Despite Fountaine's dismissiveness, Plaintiff was able to convince Fountaine to schedule an IEP meeting to review the Rush report.  The meeting was set for March 3, 2023 at ECLC.

>    **ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

82. On or around March 3, 2023, Plaintiff arrived at ECLC for G.G.'s IEP meeting.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

83. Despite setting the date and time for meeting, Fountaine did not appear.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

84. Instead, only Jenna Jobin, G.G.'s special education teacher, and Kaitlyn Urena, a KPS speech-language pathologist, were present.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

85. To conduct an IEP meeting, the IDEA requires that, at a minimum, the following individuals be present:

> (1) The parents of the child;
>
> (2) Not less than one regular education teacher of the child (if the child is, or may be, participating in the regular education environment);
>
> (3) Not less than one special education teacher of the child, or where appropriate, not less than one special education provider of the child;
>
> (4) A representative of the public agency who—
>
> > (i) Is qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities;
> >
> > (ii) Is knowledgeable about the general education curriculum; and
> >
> > (iii) Is knowledgeable about the availability of resources of the public agency.
>
> (5) An individual who can interpret the instructional implications of evaluation results, who may be a member of the team described in paragraphs (a)(2) through (a)(6) of this

section;

(6) At the discretion of the parent or the agency, other individuals who have knowledge or special expertise regarding the child, including related services personnel as appropriate; and

(7) Whenever appropriate, the child with a disability.

34 C.F.R. § 300.321(a).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

86. Pursuant to the IDEA, a public agency may not conduct an IEP meeting without all required participants unless both the public agency and the parent agree to do so in writing.  34 C.F.R. § 300.321(e).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

87. Plaintiff was never asked to consent, and did not consent, to the IEP meeting proceeding without the presence of all required IEP team members.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

88. Nevertheless, KPS proceeded with an IEP meeting for G.G. even though a representative of KPS as required by 34 C.F.R. § 300.321(a)(4), was not present.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

24

89. Jobin and Urena read a draft IEP out loud to Plaintiff and her son's BCBA, Gracie Eyk, who was also present at the meeting at Plaintiff's request.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

90. Jobin and Urena did not provide a copy of the IEP to Plaintiff.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

91. During this meeting, Jobin acknowledged that G.G. did not participate in activities with other children in activities and that he engaged in self-stimulation activities which impeded his engagement in classroom activities, both of which were manifestations of his ASD diagnosis, but inexplicably refused to acknowledge the diagnosis itself.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

92. After reading the IEP to Plaintiff, Jobin and Urena asked her to sign it to consent to its implementation.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

93. Plaintiff objected to the content of the IEP and told Jobin and Urena that the IEP did not meet G.G.'s educational needs because it failed to include and address important information from the Rush report, most significantly the ASD diagnosis and his related needs.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

94. As a result, Plaintiff refused to sign the IEP.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

95. Jobin told Plaintiff she would have Fountaine call Plaintiff to discuss her concerns.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

96. Fountaine did not call Plaintiff.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

97. On March 6, 2023, Plaintiff called Fountaine and scheduled another IEP meeting for two days later.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

98. On March 8, 2023, KPS held another IEP meeting was held to review G.G.'s placement and services for the balance of the 2022-2023 school year.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

99. During the meeting, Urena told Plaintiff that KPS had not been providing G.G. with the speech therapy services or the imaginary/"pretend" play required by his 2022-2023 school year IEP.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

100. Jobin and Fountaine admitted that Jobin was teaching G.G. topics and areas he had already learned because she could not go beyond what she was teaching to the other students

in his classroom.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

101. The entire IEP team acknowledged that G.G. needed behavioral support in the classroom, but KPS failed to include those supports in the final March 2023 IEP.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

102. Plaintiff objected to the content of the IEP because the IEP did not include any behavioral supports or any supports for G.G.'s incontinence and medication needs, did not provide him with sufficient speech and occupational therapy hours to meet his needs, and did not provide him with necessary one-on-one support.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

103. From October 2022 to May 2023, Plaintiff repeatedly asked KPS to conduct a special education evaluation of G.G.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

104. KPS repeatedly refused to evaluate G.G., telling Plaintiff that evaluation was "not necessary" because G.G. had allegedly been evaluated 2020.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

105. At Plaintiff's insistence, after five months, KPS eventually provided her with a consent to evaluate form, which she promptly signed in March 2023.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

106.    KPS then conducted an evaluation of G.G. and scheduled an eligibility meeting for May 10, 2023 to discuss the results of the evaluation, which Plaintiff attended.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

107. At the May 10, 2023 meeting, KPS presented Plaintiff with an Eligibility Recommendation for G.G.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

108. The Eligibility Recommendation included the results of KPS's evaluations and observations of G.G. through May 4, 2023.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

109.  The Eligibility Recommendation cited observations from Jobin, including that G.G. was non-verbal and had behavioral issues including a lack of self-regulation and a lack of a demonstrated ability to engage in parallel play or other interactions with peers.

**ANSWER**:  **The ISD lacks knowledge upon which to form a believe and, therefore, leaves Plaintiffs to their proofs.**

110. The Eligibility Recommendation included a Developmental Profile ("DP-4") completed by Jobin, which reflected an overall drastic delay in G.G.'s development, placing his development in the second percentile.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore,**

leaves Plaintiffs to their proofs.

111.  The Eligibility Recommendation also included a teacher report form completed by Jobin.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

112.  Certain scores in Jobin's teacher report were not accurate.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

113.  For example, while Jobin rated G.G. in the "average" range of the "emotionally reactive" and "anxious/depressed" categories, certain of his behaviors, including his near constant "stimming," were both emotional reactions and behaviors which were rooted in and stemmed from his anxiety.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

114.  The Eligibility Recommendation also included inaccurate Behavioral Assessment for Children ("BASC-3") Teacher Rating Scale results.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

115.  That scale was also completed by Jobin.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

116.  Jobin did not find G.G. to be in the "clinical" range with  respect to his social skills, even though he displayed very limited social skills and did not interact with his peers without

maximal prompting.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

117.    Additionally, Jobin noted G.G.'s "attention problems" as being in the "average" range, despite his attention issues being so severe that he required medication.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

118.  The Eligibility Recommendation included a section titled "Relevant Behavior Observations," which included inaccuracies and contradictory information.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

119.  For example, while the social work description noted that G.G. wandered, elsewhere it was indicated that he was not a risk for elopement. These contradictions made no sense, because G.G. had always required staff support for transitions at school.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

120.    The occupational therapy ("OT") section noted that G.G. was being provided training in skills he had already mastered, indicating that KPS was not providing him with services that met his actual needs or that were individualized and tailored to his strengths and weaknesses.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

121.      The Eligibility Recommendation included a section titled "Evaluation

observations by staff."

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

122.    Some of these observations did not align with G.G.'s actual level of understanding and communication.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

123.    For example, while the observations stated that he expressed desires, he had not actually demonstrated that he knew how to share his wants and needs verbally.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

124.    This section also included observations of G.G. supposedly engaging in certain self- stimulatory behaviors that had never been documented in any of his other many evaluations and reports.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

125.    The Eligibility Recommendation included a summary of Plaintiff's observations from a parent input form.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

126.    This section noted that Plaintiff had provided Dr. Rush's evaluation to KPS in October 2022.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore,**

31

leaves Plaintiffs to their proofs.

127.     The Eligibility Recommendation provided no explanation for the five-month delay in initiating an evaluation of G.G. based on the new information in Dr. Rush's report.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

128.     This section also noted Plaintiff's ongoing concerns about G.G.'s behavior due to KPS's failure provide appropriate supports for his ASD diagnosis and symptoms.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

129.     The Eligibility Recommendation found G.G. eligible for ongoing special education programs and services.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

130.     On May 22, 2023, KPS held an IEP meeting for G.G. to plan for the 2023-2024 school year, which Plaintiff attended.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

131.   Upon reviewing the draft IEP, Plaintiff numerous concerns about its contents.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

132.     Plaintiff raised concerns about G.G.'s functional use and understanding of the whiteboard and AAC device.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore,**

leaves Plaintiffs to their proofs.

133.    G.G.'s ABA therapist, Stephanie Call, explained that at home, G.G. displayed no understanding of how to use the AAC device despite reports to the contrary in the draft IEP, which indicated that the information in the draft IEP may not be accurate.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

134.    The final May 2023 IEP did not address these concerns.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

135.    Plaintiff shared concerns about G.G.'s comprehension abilities.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

136.    The final May 2023 IEP did not address these concerns.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

137.    With respect to perception/motor/mobility, KPS's occupational therapist, Michael Zurgable, noted that ABA therapy would likely be helpful for G.G.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

138.    The final May 2023 IEP did not provide G.G. with ABA therapy services.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

139. Plaintiff shared that G.G. continued to struggle with eating and self-feeding and

discussed the results of a speech language pathology evaluation that had been conducted on

G.G. in February 2023, finding that he had significant challenges with feeding and eating.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

140.  The final May 2023 IEP did not address this concern.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

141.    Plaintiff noted that G.G. had been performing many of the activities  included as goals in his prior IEPs since 2021, but the draft IEP did not include any expanded or more challenging goals for him.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

142.    Call explained that G.G. had achieved many of the Goals and Objectives in Receptive Language and Expressive Language already, and that the goals were not appropriate and/or appropriately challenging for him.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

143.    Plaintiff expressed concern that the Perception/Motor/Mobility goals were not appropriately challenging for G.G. and were repetitive of previous IEPs.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

144.    The final May 2023 IEP did not address these concerns.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore,**

**leaves Plaintiffs to their proofs.**

145. Plaintiff challenged the Socio-Emotional/Behavioral Transition goal as not realistic and not reasonably calculated to meet G.G.'s needs. Plaintiff explained that G.G. needs full adult support for the whole portion of a transition or else he does not make the transition, and often will elope or attempt to elope during a transition or otherwise in the community. Plaintiff also explained that G.G. does not exhibit awareness of danger, which is particularly problematic if a transition would not be with full adult supervision and assistance, as he could elope and get hurt very quickly. Plaintiff reiterated the opinions of G.G.'s doctors that this was one of many areas in which G.G. needed one-on-one attention and instruction.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

146. The final May 2023 IEP did not address these concerns.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

147. Plaintiff expressed concern that the Speech and Language, Occupational Therapy, and School Social Worker hours provided in the IEP were insufficient to meet G.G.'s needs. Plaintiff requested that Speech and Language services be no less than three to five times a week because of huge deficits in this area and the fact that doctors evaluating G.G. had indicated he needed one-on-one services in this area.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

148. The final May 2023 IEP did not address these concerns.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore,**

leaves Plaintiffs to their proofs.

149.    Both Plaintiff and Call raised concerns about G.G.'s behaviors at home and in the community, including reacting in a negative or unsafe way when challenged by tasks or work.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

150.    The final May 2023 IEP did not address these concerns.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

151.    The IEP indicated that, for the 2023-2024 school year, G.G. be placed in what KPS referred to as "the elementary autism classroom housed at Southeast Kelloggsville."

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

152.    The elementary autism classroom housed at Southeast Kelloggsville did not yet exist.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

153.    KPS staff described the Southeast Kelloggsville classroom to Plaintiff as follows: "It's going to be an ASD classroom.  There will be an instructional support person within that classroom.  And the students in that classroom will be identified as having ASD."

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

154.    KPS staff characterized the South Kelloggsville classroom as "testing the

waters."

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

155.    KPS said there was no website or print material available about the South Kelloggsville classroom.  KPS staff told Plaintiff they had no information about the classroom other than what had been presented orally at the IEP meeting.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

156.    Based on this description and the lack of information, it was clear that the Southeast Kelloggsville classroom would not meet G.G.'s needs nor provide him with a FAPE because it could not address his severe cognitive impairment or his multiple disabilities.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

157.    Plaintiff asked that G.G. be placed at one of the Special Education Center Programs overseen by Kent ISD, Pine Grove Learning Center ("Pine Grove").  Pine Grove "serves students with special needs who have moderate to severe cognitive impairments, are severely multiply impaired, or have autism from Kindergarten through age 26" and "serves students from the south western side of Kent County."

**ANSWER**: **The ISD lacks knowledge upon which to form a belief with respect to the first sentence and, therefore, leaves Plaintiffs to their proofs. The ISD neither admits nor denies the second sentence as its website and description speak for themselves.**

158.    Pine Grove "educate[s] students with complex needs by providing specialized instruction specific to the communication, academic, adaptive behavior, mobility, and adult

living skills required to develop independence."

**ANSWER: The ISD neither admits nor denies the allegation as its website and description speak for themselves.**

159.    Unlike the South Kelloggsville classroom, based on Pine Grove's description, it would not only be able to meet G.G.'s needs as a student with ASD, but it would also be able to meet his needs as a student with a severe cognitive impairment and multiple disabilities.

**ANSWER: The ISD lacks knowledge upon which to form a belief for the reason that the ISD was never invited by the Plaintiff L.G. or the LEA, KPS, to any IEP or other meeting to discuss possible placement of G.G. and, therefore, leaves Plaintiffs to their proofs.**

160.    After Plaintiff raised Pine Grove as an option, KPS staff began an inquisition regarding details of the exact name and specification of the program at Pine Grove she was seeking as a placement for G.G.  KPS staff interrupted and talked over Plaintiff as she attempted to respond to their questions, making it impossible for her to participate in the IEP team meeting as an equal member.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

161.    At the end of the meeting, Plaintiff reiterated her concerns about the draft IEP, including her concerns about the Southwest Kelloggsville classroom and G.G.'s need for one-on- one support throughout the school day.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

162.    Plaintiff was gravely concerned with adequacy and appropriateness of the Southwest Kelloggsville classroom for G.G. and the potential negative impact on G.G. of

KPS's failure to properly accommodate his educational, social/emotional, medical, and communication needs; his tendency to elope; and his lack of safety awareness.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

163.       For these reasons, Plaintiff made alternative educational arrangements for G.G. for the 2023-2024 school year at Thrive Learning Center in Kentwood, Michigan.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

164.       Plaintiff ensured that G.G. continued to receive ABA services both in the classroom at Thrive Learning Center and in the home and community.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

165.       Plaintiff also arranged for G.G. to receive speech therapy, feeding therapy, and augmented AAC device evaluation, training, and lessons at Mary Free Bed Hospital in Grand Rapids, Michigan.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

166.       Due to the IDEA violations outlined previously in this Complaint, Plaintiff filed a Due Process Complaint ("DPC") and Request for Due Process Hearing against KPS on November 30, 2023.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

167.       On December 11, 2023, KPS filed a Response to the DPC.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

168.    KPS's Response acknowledged that "P[laintiff] expressed her preference for placement at Pine Grove Learning Center."  KPS wrote: "The District is a constituent member of Kent ISD, which means its students can access the ISD's programs if both the District and the ISD determine the placement is appropriate."

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

169.    On January 11, 2024, Plaintiff filed a First Amended DPC and Request for Due Process Hearing against KPS and Kent ISD on January 11, 2024.

**ANSWER: The ISD admits that the Plaintiff L.G. filed an amended due process complaint and that the ALJ *bifurcated* the amended complaint to create a *second* complaint against the ISD (*See* ECF No. 15-2, PageID.450).**

170.    On January 22, 2024, Kent ISD filed a Motion to Dismiss Plaintiff's DPC.

**ANSWER: Admitted.**

171.    Kent ISD's Motion to Dismiss argued that it was not responsible for the identification, placement, or provision of FAPE to G.G. because it was not a LEA.

**ANSWER: Admitted that the allegation is one of the reasons stated in the ISD's motion.**

172.    Kent ISD wrote:

> As a matter of law, Kent ISD is not now nor has it ever been responsible for the identification, evaluation, educational placement, or provision of a free and appropriate public education ("FAPE") to the Student. That responsibility belongs solely to a student's district of residence or, as appropriate, the operating district. Kent ISD is not the student's district of

residence nor has it operated any program that the Student is presently attending or has ever attended.

**ANSWER: Admitted.**

173.    As will be detailed later in this Complaint, not only is this a wholly false assertion about Kent ISD's responsibilities to G.G. under the IDEA, Kent ISD very likely knew it was false at the time it filed the Motion.

**ANSWER: The ISD denies the allegation for the reason that it is untrue.**

174.    In support of its Motion, Kent ISD attached five opinions issued by Michigan Office of Administrative Hearings and Rules ("MOAHR") ALJs serving as special education due process hearing officers, all of which wrongly conclude that ISDs are not LEAs and therefore are not responsible for providing FAPE to students on IEPs.

**ANSWER: Admitted that the ISD attached persuasive decisions to its motion, but denied as to Plaintiffs' conclusions about the holdings of those cases as the cases speak for themselves and the final decision thereon is to be determined by the Court.**

175.    In Plaintiff's response to Kent ISD's Motion to Dismiss, she argued that Kent ISD was a proper party to the action for the following reasons:

a.  Kent ISD was responsible for the provision of FAPE for G.G;

b.  Kent ISD owned and operated Pine Grove and other special education programs for students within its jurisdiction;

c.  Kent ISD had entered into a written contract with its member school districts, including KPS, for the delivery of special education programs and services for students attending its member school districts;

d.  Pursuant to C.F.R. §§ 300.327 and 300.501(c), each public agency, including Kent ISD and KPS, must ensure that the parent, like Plaintiff, of each child with

a disability, like G.G., is a member "of any group that makes decisions on the educational placement of their child;" and

e.  In violation of that obligation, Kent ISD and KPS predetermined that G.G. was not eligible for placement at Pine Grove, excluding Plaintiff from the decision-making process regarding G.G.'s placement for the 2023-2024 school year, which constituted a violation of G.G.'s right to a FAPE under the IDEA.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

176.    On February 7, 2024, the Hearing Officer issued an order dismissing Kent ISD based solely on the incorrect legal arguments and wrongly decided prior caselaw cited by Kent ISD in its motion ("the February 7, 2024 order").

**ANSWER: Admitted that the ALJ properly dismissed the Plaintiffs' complaint against the ISD and denies that the ALJ's decision was incorrect in any way.**

177.    The February 7, 2024 order held that ISDs are not primarily responsible for the provision of a FAPE, incorrectly holding that "it is *generally* the responsibility of a local school district or the Local Educational Agency (LEA) to provide a FAPE to individual students within the local school district" and also incorrectly finding that "there is not a remedy for a parent or student in a due process hearing against a Respondent ISD."

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

178.    The February 7, 2024 order also erroneously summarized *Bay City Education*

*Association v. Bay City Public Schools*, 430 Mich. 370, 378-79; 422 N.W.2d 504 (1988),

without quoting the case, wrongly asserting that the *Bay City* court held that ISDs "may become

responsible for providing a FAPE only if the local school district contracts with the ISD for the

delivery of special education programs and services."

**ANSWER**: **The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

179.    In fact, *Bay City* holds:

> In spite of whether the ISD or the local district provides the program or service, however, neither party may completely terminate its statutory obligation to these special education students. The Legislature crafted a statutory scheme that contemplates cooperative decision making and shared responsibility for providing programs and services designed to develop the maximum potential and address the special needs of each handicapped child in this state.

430 Mich. 370, 378-79; 422 N.W.2d 504 (1988).

**ANSWER**: **The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

180.    The February 7, 2024 order also cited M.C.L. 380.1751 and 380.1711 and a

January 11, 1991 Michigan Attorney General Opinion in support of its dismissal of Kent ISD

as a respondent.

**ANSWER: Admitted.**

181.    The statutes and the Attorney General opinion address ISD's obligations to

provide special education programs and services to students, not the opposite.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

182.    M.C.L. 380.1751(1) requires that Michigan school districts "provide special education programs and services designed to meet the individual needs of each student with a disability in its district…for whom an appropriate educational or training program can be provided in accordance with the intermediate school district special education plan."

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

183.    Under M.C.L. 380.1711, ISDs are responsible for developing, establishing, and continually evaluating and modifying a plan for the delivery of special education services for all students under the age of 26 who are residents of constituent districts and of the special education programs and services in which each student participates.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

184.    M.C.L. 380.1711 does not limit an ISD's obligation only to those students that are currently enrolled in one of the ISD programs or classrooms, and instead places the

responsibility on the ISD for all students for which it is required to maintain records as defined above.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

185.    The cited Michigan Attorney General opinion directs ISDs to provide educational services to homebound and hospitalized students.

**ANSWER:  The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

186.    The February 7, 2024 order  dismissing Kent ISD failed to address Plaintiff's arguments, directly citing only to Kent ISD's authority, including the five wrongly decided opinions dismissing ISDs from due process matters cited previously.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

187.    Five wrongs do not make a right, and the fact that Michigan's due process hearing officers have been wrongly relieving ISDs of their responsibility to provide students within their districts of jurisdiction with FAPE since at least 2019 is evidence of MDE's years-long failure to properly train them.

**ANSWER**: **The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

188.    In March 2024, a due process hearing was held between parties Plaintiff and KPS.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

189.    As previously discussed, KPS's Response to the DPC explicitly stated that "its students can access [Kent] ISD's programs if both the District and [Kent] ISD determine the placement is appropriate."

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

190.    At the due process hearing, Fountaine admitted to communicating with Pine Grove's principal, a Kent ISD employee, regarding Pine Grove as a potential placement for G.G.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs. In further answer, the ISD denies that any contact by Fountaine included specific, individualized information about Plaintiff G.G.**

191.    Fountaine admitted to engaging in those communications without involving Plaintiff or giving her any notice of or opportunity to participate in the communications.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

192.    Fountaine admitted that the reason she thought Pine Grove was not a good

46

placement for G.G. was her personal belief that G.G. would not be able to protect himself in the event of an outburst by another Pine Grove student.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

193.     Fountaine's rationale had nothing to do with considering the LRE for G.G.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

194.     The communications between Fountaine and Pine Grove's principal occurred outside the scope of an IEP meeting.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

195.     Neither the Pine Grove principal nor any other Kent ISD representative attended any of G.G.'s IEP meetings.

**ANSWER: Admitted that KPS did not, per the Cooperative Agreement, invite the ISD or its representatives to a needs review meeting and therefore the ISD had no information and took no part in the KPS decision regarding placement.**

196.     The Kent ISD Cooperative Agreement, which was discussed at length at the due process hearing, and of which KPS was a member and a party, specifically indicated that LRE decisions must be made in an IEP team meeting, as required by the IDEA.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

197.      Instead, KPS and/or Kent ISD unilaterally made the determination that G.G. did not qualify for placement at Pine Grove without input from Plaintiff and outside of an IEP team meeting.

**ANSWER: The ISD denies the allegation for the reason that it did not "unilaterally" make any decision about Plaintiff G.G.'s placement as it was not invited to a needs review meeting by KPS and therefore has no responsibility for KPS's placement decision.**

198.      No documentation of the decision was ever provided to Plaintiff.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

199.      34 C.F.R. § 300.227 requires that a parent must be a "member of any group that makes decisions on the educational placement of their child."

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

200.      Courts have repeatedly found predetermination by educational agencies to be a violation of the IDEA.  *See*, e.g., *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 857 (6th Cir. 2004):

> The evidence reveals that the School System, and its representatives, had pre-decided not to offer Zachary intensive ABA services regardless of any evidence concerning Zachary's individual needs and the effectiveness of his private program. This predetermination amounted to a procedural violation of the IDEA. Because it effectively deprived Zachary's parents of meaningful participation in the IEP process, the predetermination caused substantive harm and therefore deprived Zachary of a FAPE.

*See also Spielberg by Spielberg v. Henrico Cty. Pub. Sch.*, 853 F.2d 256, 258-9 (4th Cir. 1988):

> Congress, through the EHA,[16] uses federal money to induce the states to provide handicapped students with a free appropriate public education ("FAPE")….
>
> The district court found that the defendants decided to change Jonathan's placement from Melmark to Randolph before developing a new IEP to support the change. Under the EHA, the general rule  is that placement should be based on the IEP. 34 C.F.R. Sec. 300.552. The appendix interpreting the EHA regulations states that "IEP objectives must be written before placement." 34 C.F.R. Part 300, App. C., Question 42. The decision to place Jonathan at Randolph before developing an IEP on which to base that placement violates this regulation as interpreted by the Secretary of Education. It also violates the spirit and intent of the EHA, which emphasizes parental involvement. After the fact involvement is not enough….
>
> The defendants violated EHA procedures when they resolved to educate Jonathan Spielberg at Randolph, and then developed an IEP to carry out their decision. This failure to follow EHA procedures is sufficient to hold that the defendants failed to provide Jonathan with a FAPE.

(Internal citations omitted).

**ANSWER**: **The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

201.    KPS and Kent ISD's decision to eliminate Pine Grove as a placement option for G.G. outside of an IEP meeting and without Plaintiff's involvement constituted unlawful predetermination and denied G.G. a FAPE.

**ANSWER**: **The ISD denies the allegation for the reason that it was not invited to a needs review meeting by KPS and therefore has no responsibility for KPS's placement decision and did not engage in unlawful predetermination. In further answer, the ISD denies**

that it made any "decision to eliminate" its program as a placement option for the reason that it lacked knowledge or information that Plaintiff L.G. asked KPS to consider Pine Grove.

202.    On May 15, 2024, the Hearing Officer issued a final decision and order ("the May 15, 2024 order") finding that KPS committed procedural violations against Plaintiff and G.G. during the 2022-2023 school year, but that it only committed one substantive violation of the IDEA resulting in failure to provide FAPE to G.G.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

203.    Specifically, the May 15, 2024 order found that KPS had violated the IDEA and failed to complete G.G.'s IEP correctly as it related to his need for assistive technology for communication, and that KPS failed to provide G.G. with assistive technology from September 2022 through February 2023.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

204.    To make G.G. whole, the May 15, 2024 order granted him a paltry 15 hours of compensatory education speech therapy services in the use of a speech generating device.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and,**

therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.

205.    This was nowhere near sufficient to make up for the educational loss G.G. suffered over the course of seven months of trying to learn without necessary communication technology.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

206.    The May 15, 2024 order also found that KPS had committed procedural violations throughout the 2022- 2023 school year, but it did not find those violations to have resulted in a substantive violation or denial of FAPE to G.G.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

207.    The May 15, 2024 order also required KPS to address Plaintiff's concerns about G.G.'s feeding and elopement issues, largely resolving the alleged issues from the 2022-2023 school year.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

208.    The May 15, 2024 order found that KPS had not violated the IDEA during the 2023- 2024 school year, and found that KPS's determination that G.G. did not qualify for

services at Pine Grove was not an IDEA placement decision because Kent ISD's contract prerequisites for an LRE placement in its Cooperative Agreement with KPS were not initiated.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

209.    This finding violated the law, because the IDEA explicitly provides that IEP team decisions, including placements, must be made by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options. 34 C.F.R. § 300.116.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

210.    The IDEA defines the IEP team, and the first person(s) on the list of team members are "the parents of the child," followed by regular education teacher, special education teacher, representative of the public agency, and others. 34 C.F.R. § 300.321.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

211.    Neither the IDEA nor any State or Federal case law known to Plaintiff allows for placement decisions to be made by administrators alone or for limited placement options

to be presented to parents at an IEP team meeting.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

212.    Neither the IDEA nor any State or Federal case law known to Plaintiff allows for the terms of a cooperative agreement between an ISD and a local school district to supersede the requirements of the IDEA.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

213.    On July 15, 2024, Rebecca McIntyre, Assistant Director of the MDE Office of Special Education ("OSE"), sat for a deposition in the matter of *Lewis et al. v. Mich. Dep't of Educ.*, No. 1:22-cv-838 (W.D. Mich. 2022).

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

214.    During her deposition, McIntyre testified that, for the last seven years, MDE has provided training and guidance to ISDs that ISDs are primarily responsible, as LEAS and the subrecipients of the IDEA grant funds, for ensuring the delivery of FAPE to special education students:

> Q:    ... So from what I understand based on the flow-through money, the SEA takes money, sends it to the ISDs. The ISDs are viewed as the LEA at that point in time?
>
> A:    Yes.

> Q:    Under IDEA, the LEA is responsible for providing a FAPE, correct?
>
> A:    For – yes, for ensuring that FAPE is provided.
>
> Q:    Okay. Does MDE OSE have any opinion about the ISDs claiming that they have no responsibility to provide or ensure FAPE at the due process level?
>
> A:    We are working on that. Q:    Tell us more about that.
>
> A:    That – that has been communicated for the last seven years.
>
> Q:    Okay. Is there anything that MDE OSE is doing to try to rectify that situation so that students receive FAPE?
>
> A:    We have been – well, our new Deputy Superintendent Michelle Harmala has actually gotten in front of a number of audiences that we have not been able to get in front of before.

**ANSWER**: **The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court. In further answer, the ISD denies that an employee's deposition testimony is binding on the ISD or the Court in this matter.**

215.    This requirement is independent of the ISD or the local school district's obligation to provide FAPE as the educational agency responsible for a specific program in which a student is enrolled. Instead, McIntyre testified that the IDEA grant fund documentation that ISDs must complete each year requires that the ISD recognize their obligation to ensure the provision of FAPE to students in their jurisdiction:

> Q:    Are there any other avenues that MDE pursuing to ensure that LEAs are taking responsibility for ensuring a FAPE?
>
> …
>
> A:    We…met with five ISDs…and actually gave them…what they have to fill out annually through the State for the IDEA grant dollars; and showed them that

when they fill out that application, the very first thing
that they are agreeing to is ensuring FAPE for
students…with IEPs in their jurisdiction.

**ANSWER**: **The ISD neither admits nor denies the allegations contained therein for
the reason that they constitute conclusions of law, rather than allegations of fact, and,
therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by
the Court. In further answer, the ISD denies that an employee's deposition testimony is
binding on the ISD or the Court in this matter.**

216.     McIntyre testified that MDE sanctions ISDs, not local school districts, when
local school districts within their jurisdiction do not properly provide FAPE to students with
IEPs:

> Q:     And this says it's the OS[E] Continuum of Improvement,
> Correction, Incentives, and Sanctions.  Is that correct?
>
> A:     Yes.
>
>        …
>
> Q:     And this document discusses sanctions towards ISDs; is
> that correct?
>
> A:     Yes, among other things.
>
> Q:     And, again, this is not directed at districts themselves?
>
> A:     Mmm-hmm.
>
> Q:     Why not?
>
> A:     Because the intermediate school districts have
> jurisdiction over their member districts.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for
the reason that they constitute conclusions of law, rather than allegations of fact, and,
therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by
the Court. In further answer, the ISD denies that an employee's deposition testimony is**

**binding on the ISD or the Court in this matter.**

217.    McIntyre also testified that Michigan ISDs have historically resisted exercising their required supervisory control over local districts:

> Q:    Okay. Why do you think they resisted enforcing with their local districts?
>
> A:    I think in their opinion, they were the – they had to – they were the protectors, the service providers and the protectors of their member districts.
>
> Q:    Who were they protecting the member districts from?
>
> A:    Is that a rhetorical question?
>
> Q:    A real question. Who did they think --
>
> A:    We ask the same questions. So they're protecting them from us and from -- from parents.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court. In further answer, the ISD denies that an employee's deposition testimony is binding on the ISD or the Court in this matter.**

218.    McIntyre also testified that MDE had no consistent process in place to review the content of due process hearing officer decisions or that the decisions were compliant with or demonstrated an understanding of special education law:

> Q:    What is SEAC?
>
> A:     Special Education Advisory Committee. It's a state-level committee.
>
>       …
>
> Q:    This is a SEAC New Member Orientation from September 10 of 2020, slide deck, and page 37 talks a bout administrative law judges.
>
>       Do you recall if you would have presented this

information at SEAC?

A:    Yes.

Q:    Okay. And it says that there's certain requirements for ALJs, and one of them is that they possess knowledge of an ability to understand the provisions of IDEA, federal and state regs pertain to IDEA, legal interpretations of IDEA by federal and state courts, conduct hearings in accordance with appropriate standard legal practice, and render and write decisions. Correct?

A:    Correct.

Q:    Okay. How does MDE know that the ALJs possess the knowledge and ability to do those things?

A:    We provide them training annually, and that's part of looking at the final decisions, sharing final decisions with SEAC, and getting input.

Q:    Okay. What training do you provide to ALJs annually?

A:    We would have to look back at the record. Each year it's different. They used to go to Lehigh, go to LRP. Last year they received a two-day training from Pingora. They just received a two-day training again from Pingora, as well as they've attended CASE -- I think it was CASE and CADDRA.

A:    So we're trying to provide them as much -- the Pingora trainings are Michigan specific, because we have told them, you know, that Lehigh, LRP, CADDRA, those are all from a national perspective and topic specific, where we need process specific.

Q:    Okay. So you provide the trainings for the ALJs. Is there any assessment done to determine what they've learned through those trainings?

A:    Assessment, I think, plus watching the data.

Q:    Okay. How does watching the data determine whether or not they've learned?

A:    Because there's topic-specific information that they are learning, and then we watch the data to see that there's progress.

Q:    Okay. What does it actually mean to watch the data?

A:    Pull it, look at it, analyze it.

Q:      Are you looking -- like what data are you looking at specifically? What are you pulling?

A:      Hearing data.

Q:      Okay. And what specific pieces of hearing data are you looking at?

A:      File date, who's filing, who the attorneys are on both sides, any motions that are made, when they're made, looking at that information.

Q:      And who looks at that information to determine if ALJs are demonstrating that they understand Michigan law and federal law?

A:      I was looking. I still look…. [W]e have a due process…administrative support [employee] in our office, and…she keeps a spreadsheet and updates us on all of the hearings, and we look at issues….

Q:      Do you look at substantive issues as well as the time lines?

A:      And when you say -- we look at the issue as a -- as like the topics we're following. We're not looking in at all the details of a hearing and looking to see if they got that information right.

        …

Q:      I guess I'm trying to understand how looking at that data actually tells you whether the ALJs are knowledgeable in the area and have the expertise if you're not diving into every -- like the entire decision or what happened at the hearing?

A:      No, we don't dive into the entire decision.

        …

Q:      How does MDE actually ensure that the ALJs possess the knowledge and ability to understand the legal interpretations of IDEA and MARSE?

        …

A:      Just reviewing data.· I guess there's no -- there is no review and check, check, check.

Q:      To demonstrate that they understand IDEA and MARSE?

A:      Correct.

58

…

Q:    Okay. So I hear that you're reviewing data, but you're not looking at the decisions specifically. So how is MDE ensuring that the ALJs are actually -- that they actually have the ability to understand the legal interpretations of IDEA and MARSE?

…

A:    So I gave you what I know. We look at the data. We're following that. We're not looking at the substantive nature of the decisions.

Q:    Okay. Who would know how MDE is ensuring that the ALJs possess the knowledge of and ability to understand legal interpretations of IDEA and MARSE?

A:    I don't know.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court. In further answer, the ISD denies that an employee's deposition testimony is binding on the ISD or the Court in this matter.**

219.    McIntyre testified that SEAC reviews special education due process hearing decisions:

Q:    Do you get input from SEAC based on those due process  hearing decisions?

A:    They review the decisions that are fully redacted, and then they provide input into what -- what gaps in understanding there may be, and they help us identify if there is guidance that's needed, if -- because there are, what, 80-some different people in there bringing different perspectives as do we need to understand things differently, be able to present the information and requirements differently. So this is one of the essential functions of SEAC.[31]

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

220.     However, the SEAC membership list, while lengthy, does not appear to include a single attorney or other professional with the training and knowledge necessary to understand whether due process hearing decisions demonstrate that hearing officers possess knowledge of, and the ability to understand, the provisions of the IDEA, Federal and State regulations pertaining to the IDEA, and legal interpretations of the IDEA by Federal and State courts; the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice; or the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice.

**ANSWER**: **The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

221.     McIntyre also testified that MDE does not currently have adequate staffing of hearing officers handling special education due process complaints, and that MDE had not been providing sufficient oversight of its hearing officers to realize that staffing had been inadequate for years until June 2024:

> Q:     Okay. And you said that there were five ALJs that are able to do special education cases; is that correct?
>
> A:     I believe there are.
>
> Q:     Okay. And how does MDE determine whether the ALJs are able to do special education cases?
>
> A:     LARA[33] does.
>
> Q:     LARA does. Okay. Do you think that five ALJs is an adequate number of ALJs for special education cases?
>
> A:     So our ALJs are not assigned only to special education. And that is a LARA process that we…we have talked about… with LARA.

Q:    Okay. So are you saying that five is or is not an adequate number?

A:    It is not an adequate number.

Q:    Okay. And it's not adequate because they're also doing other cases too; is that what --

A:    Correct.

Q:    I'm understanding you saying? Okay. Do you think it would be adequate if they were only doing special education cases?

A:    That's what we have asked for, at least some of them need to do just special education cases.[34]

      …

Q:    Okay. How long have five judges been assigned for special education cases?

A:    I think probably for at least three years. During the pandemic, we maybe had three. And then coming out of the pandemic, we ordered two more. We added.

Q:    Okay. Prior to the pandemic, how many were there?

A:    I think there were four.

Q:    Okay. How long have you been under the impression that five was not an adequate number of ALJs?

A:    Well, we just talked about this back in June with, I guess, deepening our understanding that the ALJs are not just covering special education. Like I said, all of that is handled by LARA, so that's ...

Q.    And how did you learn that?

A:    Through meeting with them and asking questions.

Q:    Okay. And what prompted all those questions?

A:    Our training and looking at the data.

Q:    Okay. And which data specifically prompted that?

A:    The motions that were extending, extending, extending, because that is an acceptable or an allowable -- I don't know the right word to use -- under other different types of procedures but not necessarily under IDEA.

      …

61

Q:      So…were you out of compliance with MOU[35] or was LARA out of compliance with MOU if they were not providing an adequate number of ALJs?

A:      I don't think that it was that they weren't providing it. I think they thought that they were providing it and we thought that they were providing it, but we understand things differently now, and we have asked for them to provide additional ALJs –

Q:      Okay.

A:      -- and they have agreed to that.

Q:      At what point did you determine that it was inadequate?

A:      I think in our conversations with them back in June.

Q:      June.· So June of 2023?

A:      '4.

Q:      This past June? Oh, we already had June. Sorry. This past June. Okay. And what caused that change in understanding?

A:      Our conversation with them…. [T]hey shared how their ALJs are assigned, and we thought that all five of them were dedicated specifically to special education. And understanding that they aren't and looking at the volume of due process hearings that we have, we -- we have asked for additional ALJs and for them to be dedicated to special education.[36]

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

222.    McIntyre testified that she was not aware that ISDs were seeking dismissal of DPCs against themselves on the false premise that they are not LEAs:

Q:      Are you aware that ISDs are filing motions to dismiss based on the fact that they are not responsible for ensuring FAPE for students in due process hearings?

A:      No.

        …

Q:      Regarding the due process system, previously you had said that you were not aware that ISDs were filing motions to dismiss in due process proceedings alleging

Case 1:24-cv-00833-RJJ-SJB    ECF No. 53,  PageID.2717    Filed 07/16/25    Page 63 of 96


that they weren't responsible for ensuring IDEA compliance. Do you remember talking about that earlier?

A:     Yes.

Q:     Okay. So for the purposes of this questioning, I'm going to offer that they are doing that. Does that surprise you that they would file motions dismissing that they are not responsible for ensuring IDEA is implemented?

…

A:     Yeah, I guess it surprises me but doesn't surprise me. It surprises me it's happening. It doesn't surprise me that they are pushing back, and that…would be more probably their attorney's…defense.[38]

**ANSWER: The ISD denies that its reasons for seeking dismissal, and the ALJ's conclusions of law, "were based on a false premise". In further answer, the ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

223.     McIntyre testified that Michigan's ISD special education directors are aware of their direct responsibility to ensure that students in their local school districts receive a FAPE, because MDE has been training them on that obligation "ad nauseam" since 2019; and that Kent ISD is not only aware of its responsibility but has a system to provide such oversight of local school districts and has sanctioned local school districts within its jurisdiction for failing to provide a FAPE to students:

Q:     Still on page 36 [of State General Supervision Responsibilities Under Parts B and C of the IDEA].[39] The last paragraph says: An SEA may take over the direct provision of special ed and related services in certain circumstances. One of the circumstances is that if the LEA is unable to establish and maintain programs of FAPE, meeting Part B requirements, then the SEA must use payments that would otherwise have been available to the district. Has MDE ever done this with any school

district?

A:    To my knowledge, no, but ISD has.

Q:    How has the ISD done that?

A:    And they have done that with our support.

Q:    Okay. So which ISD are you speaking to?

A:    Because the state education agency flows money out to the ISDs. So for the purposes of the -- the uniform grant guidance, that is the LEA is the ISD. They are the subrecipients of the grant.

Q:    Okay. So…what the ISD does from there with their IDEA dollars, every ISD is different in how they do that, but, yes, they have -- there are ISDs who are withholding dollars and hiring people and operating programs.

Q:    Do you know which ISDs have done that?

A:    I know that Kent ISD has done it in the past, because I was a part of that.

      …

Q:    [Y]ou said that the ISDs are more and more looking at their districts. Why is this happening more and more?

A:    Because the special education directors are understanding they do have a general supervision responsibility. It's -- in some cases, it's do they have the support of their superintendent and understanding. And then in other cases, they've -- they have taken the lead and demonstrated to their superintendent where that responsibility is and they've created a system…. There were a number of people in the room that said because I asked, how many of you actually have a developed system, and I was surprised. Because I knew about Kent, but I was surprised at the number in the room that raised their hand.

Q:    And what do you think is the reason for this new understanding or finally coming to an understanding of the responsibilities they have?

A:    Because we talk about it at every single director meeting and any at MAASE[41] Summer Institute. We received feedback last year that they are sick of hearing about general supervision and want to know when we're just

going to make it a breakout instead of a keynote and -- but that's the work of our office. So…they get it.

Q:    Okay. And when did you start talking about this to the point where they were getting sick of it?

A:    Ad nauseam.

Q:    Yeah.

A:    Well, I mean, since 2019, since I've been on board.

Q:    Okay. And…why did this shift occur, this, you know, talking campaign about the ISDs' responsibility occurring?

A:    I think it really -- listening to what Teri [Rink][42] has said, and she shares out with everybody, that this really started with an understanding with U.S. Department of Ed[ucation] and John Andrejack [43] talking fiscally; and understanding that in Michigan, our ISDs are the LEAs. That's…who the subrecipients are, but we were treating school districts as subrecipients, but they weren't our subrecipients, so -- they were the ISDs' subrecipients. Actually, there's no -- there is no subrecipient to a subrecipient, so that was a misstatement, but, yeah, they were under the purview of the ISDs.

Q:    Okay.

A:    And so that whole thing, that -- that was chaos for like the first two years of trying to message that out. And so -- but I think more and more we'd just done it so much that more and more people are hearing it and accepting it, and they're just finally moving forward with their work.

**ANSWER**: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court. In further answer, the ISD denies that an employee's deposition testimony is binding on the ISD or the Court in this matter.

### COUNT I
**Violations of the Individuals with Disabilities in Education Act,
20 U.S.C. § 1400 *et. seq.* and implementing federal regulations
(Defendants KPS and Kent ISD)**

65

224.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs as if fully restated herein.

**ANSWER: The ISD incorporates by references its Answers to the Paragraphs 1 – 224 as if fully restated herein.**

225.    In a December 7, 2023 order, the ALJ identified the following issues for the due process hearing:

    a.    Whether Respondent failed to allow Petitioner to meaningfully participate in the IEP development process and educational decision making for Student for the 2022-2023 and 2023-2024 school years.

    b.    Whether the IEPs for Student for the 2022-2023 and 2023-2024 school years were reasonably calculated to enable Student to make appropriate progress considering Student's diagnoses, educational needs, and other relevant circumstances.

    c.    Whether Respondent failed to take steps to ensure Student had a FAPE for the 2022-2023 and 2023-2024 school years.

    d.    Whether Respondent failed to provide Student a FAPE for the 2023-2024 school year when it denied Student a placement at Respondent's Pine Grove Learning Center.

    e.    Whether compensatory education or services should be awarded and if so, of what type and/or amount?

    f.    What other remedies are appropriate in the event Respondent is found to have committed FAPE violations?

**ANSWER: The ISD neither admits nor denies the allegations contained therein for**

**the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

226.     The February 7, 2024 order contained errors of law due to the ALJ's failure to properly interpret the IDEA and relevant caselaw.  Accordingly, Plaintiff seeks review of the administrative decision as to all issues.  Reversal is warranted under the "modified de novo" standard and based upon a preponderance of the evidence in the record.

**ANSWER: Denied as to "errors of law" in the February 7, 2024, ALJ decision. Admitted Plaintiffs seek review of that decision. Denied that reversal of that decision is warranted for the reason that the allegation in the third sentence constitutes conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court..**

227.     The May 15, 2024 order disregarded much of the ample evidence in the record demonstrating KPS's denial of a FAPE to G.G., reached several erroneous conclusions of fact and law, and gave undue deference to KPS's witnesses.  The ALJ also committed errors of law by failing to properly interpret the IDEA.  As a result, the remedy awarded by the ALJ for the limited issues on which she did find in favor of Plaintiff was insufficient and not reasonably calculated to make G.G. whole.  Accordingly, Plaintiff seeks review of the administrative decision as to all issues presented on which she was not the prevailing party.  Reversal is warranted under the "modified de novo" standard and based upon a preponderance of the evidence in the record.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and,**

**therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

228.     Kent ISD was wrongly dismissed as a respondent based on its own legally flawed and likely disingenuous argument that it did not have responsibility to provide FAPE to G.G. and the Hearing Officer's incorrect understanding and application of the IDEA, Michigan law, and MDE guidance.

**ANSWER: Denied for the reason that the allegations constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

229.     Further, Kent ISD was wrongly dismissed based on the erroneous finding that the Kent ISD Cooperative Agreement superseded the IDEA and MDE requirements that ISDs have supervisory and independent responsibilities to ensure provision of a FAPE, regardless of whether the subject student was enrolled in an ISD program.

**ANSWER: Denied for the reason that the allegations constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court**

230.     The May 15, 2024 order also erroneously found that parents have no recourse against an ISD for IDEA violations, in violation of the clear text of the IDEA, case law, and MDE guidance.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

231.    The May 15, 2024 order's finding that KPS did not violate the IDEA during the

2023-2024 school year is not supported by the preponderance of the evidence in the record.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for
the reason that they constitute conclusions of law, rather than allegations of fact, and,
therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by
the Court.**

232.    The May 15, 2024 order's finding that the appropriate remedy for KPS's failure

to provide G.G. with a FAPE with respect to his assistive technology needs was 13 hours of

compensatory education is not supported by the preponderance of the evidence in the record.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for
the reason that they constitute conclusions of law, rather than allegations of fact, and,
therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by
the Court.**

233.    The May 15, 2024 order's factual conclusions to the contrary were unsupported,

ignored critical evidence in the record, and did not align with the requirements of the IDEA.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for
the reason that they constitute conclusions of law, rather than allegations of fact, and,
therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by
the Court.**

## COUNT II

### Violations of the Individuals with Disabilities in Education Act,
### 20 U.S.C. § 1400 *et. seq.* and implementing federal regulations
### (Defendant MDE)

234.    Plaintiff incorporates by reference the allegations contained in the previous

paragraphs as if fully restated herein.

**ANSWER: The ISD incorporates its prior Answers in Paragraphs 1-233 as if restated herein.**

235.    In Michigan, MDE is the SEA responsible for administering and enforcing laws related to public education. M.C.L. 16.400-16.402.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

236.    As an SEA, MDE is responsible for the State supervision of public elementary and secondary schools and is specifically "responsible for ensuring" all eligible Michigan children with disabilities receive a FAPE in the least restrictive environment. 20 U.S.C. § 1412(a)(11)(A), (a)(1), (a)(5).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

237.    As an SEA, MDE also has general supervisory responsibility for implementing IDEA's requirements. 20 U.S.C. § 1412(a)(11)(A).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

238.    MDE is specifically "responsible for ensuring" that IDEA's regulations are carried out and is responsible for its general supervision over each educational program for children with disabilities to ensure the programs meet MDE's educational standards, which include IDEA's regulatory requirements. 34 C.F.R. § 300.149(a).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

239.    Such responsibility includes coordinating with other public agencies as needed to ensure that children with disabilities receive the education to which they are entitled under IDEA. 20 U.S.C. § 1412(a)(12).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

240.    MDE's duties are similarly codified in state law.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

241.    The Michigan Mandatory Special Education Act ("MMSEA") is a state law, enacted to meet the requirements of IDEA, that ensures special education is provided to Michigan's children with disabilities from birth to age 26. M.C.L. 380.1701 *et seq*.; *Miller ex*

*rel. Miller v. Lord*, 262 Mich. App. 640, 645 (2004).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

242.      MARSE sets forth the requirements for special education and related services for the State of Michigan, providing how special education is to be implemented in Michigan. Mich. Admin. Code R. 340.1701c(c).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

243.      MARSE defines special education as "specially designed instruction, at no cost to the parents, to meet the unique educational needs of the student with a disability and to develop the student's maximum potential." *Id*. Special education includes instructional services defined in Mich. Admin. Code R. 340.1721a.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

244.      Pursuant to MARSE, "[t]he individualized education program team shall determine the programs and services for a student with a disability in accordance with 34 C.F.R. part 300. The individualized education program shall not be restricted to the programs

and services available." Mich. Admin. Code R. 340.1721e(4).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

245.    MARSE charges MDE with maintaining an effective complaint resolution process for claims of denied education or failure of the district to provide evaluations, programs and services in accordance with MARSE. Mich. Admin. Code R. 340.1851-55.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

246.    The IDEA incorporates the standards of the MMSEA and MARSE. *Doe By and Through Doe v. Bd. of Educ. of Tullahoma City Sch.*, 9 F.3d 455, 457 (6th Cir. 1993) (stating, in the 6th Circuit, it is "settled" that violations of any state law that enlarges the scope of an educational agency's obligations are still enforceable under IDEA, even if federal law is satisfied) (citing *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 620 (6th Cir. 1990) and *David D. v. Dartmouth Sch. Comm.,* 775 F.2d 411, 417 (1st Cir. 1985) (It is "beyond cavil that the federal [IDEA] standard explicitly incorporates some of a state's substantive law.")).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

247.      As Michigan's SEA, MDE bears the ultimate responsibility for ensuring that all public schools in Michigan comply with the IDEA, including, by extension, the MMSEA and MARSE.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

248.      Further, MDE, as Michigan's SEA, is the agency responsible for conducting impartial due process hearings required by the IDEA. 34 C.F.R. § 300.511.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

249.      The IDEA requires that special education due process hearing officers:

(ii) Must possess knowledge of, and the ability to understand, the provisions of the Act, Federal and State regulations pertaining to the Act, and legal interpretations of the Act by Federal and State courts;

(iii) Must possess the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice; and

(iv) Must possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice.

34 C.F.R. § 300.511(c)(1).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by**

the Court.

250.     By MDE's own admission through Rebecca McIntyre's deposition testimony, and as demonstrated by the February 7, 2024 order dismissing Kent ISD as a party in the due process proceeding, MDE failed to provide training and oversight to special education due process hearing officers regarding ISDs' supervisory responsibilities under the IDEA and ISDs' status as LEAs that are responsible for providing students with disabilities with FAPE.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

251.     Further, MDE admitted that it does not review special education due process hearing decisions to ensure that its hearing officers comply with the IDEA's requirements.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

252.     The February 7, 2024 order wrongly dismissed Kent ISD from the due process proceeding under the incorrect understanding that ISDs do not have an independent responsibility to ensure the delivery of a FAPE to students with disabilities under the IDEA, demonstrating that the Hearing Officer did not possess knowledge of, and the ability to understand, the provisions of the IDEA, Federal and State regulations pertaining to the IDEA, and legal interpretations of the IDEA by Federal and State courts, in violation of 34 C.F.R. § 300.511(c)(1)(ii).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

253.    The February 7, 2024 order also incorrectly cited to case law, as the order completely misstated the holding in *Bay City*, demonstrating that the Hearing Officer did not possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice, in violation of 34 C.F.R. § 300.511(c)(1)(iv).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

254.    At her July 15, 2024 deposition, Rebecca McIntyre testified that the MDE does not monitor hearing officers' decisions to ensure they comply with the IDEA's requirements.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

255.    Therefore, under the IDEA, MDE repeatedly failed in its monitoring and supervising obligations. 20 U.S.C. § 1412(a), 1416; 34 C.F.R. § 300.120, 149(a), 511, 600-602, 606-608.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

256.    For the foregoing reasons, MDE failed to provide a FAPE to G.G.

**ANSWER**: **The ISD neither admits nor denies the allegations contained therein for
the reason that they constitute conclusions of law, rather than allegations of fact, and,
therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by
the Court.**

### COUNT III
**Violations of Section 504 of the Rehabilitation Act
29 U.S.C. § 794 *et. seq.* and implementing federal regulations
(All Defendants)**

257.    Plaintiff incorporates by reference the allegations contained in the previous
paragraphs as if fully restated herein.

**ANSWER**: **The ISD restates its prior Answers in Paragraphs 1-256 as if fully restated
herein.**

258.    Pursuant to Section 504 of the Rehabilitation Act of 1973 (Section 504) and its
regulations, "[n]o otherwise qualified individual with a disability ... shall, solely or by reason
of her or his disability, be excluded from the participation in, be denied the benefits of, or be
subjected to discrimination under any program or activity receiving federal financial
assistance." 29 U.S.C. § 794; 34 C.F.R. § 104.1(a).

**ANSWER**: **The ISD neither admits nor denies the allegations contained therein for
the reason that they constitute conclusions of law, rather than allegations of fact, and,
therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by
the Court.**

259.    The regulations regarding preschool, elementary, and secondary education apply
to "preschool, elementary, secondary, and adult education programs or activities that receive
Federal financial assistance and to recipients that operate or that received Federal financial
assistance for the operation of, such programs or activities." 34 C.F.R. § 104.31.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

260.    Defendants are a "program or activity" under Section 504 and a recipient of federal financial assistance for the provision of elementary and secondary education and is therefore obligated to comply with Section 504 and the regulations under 34 C.F.R. Part 104.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

261.    In general, "[a] recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

262.    MDE, KPS, and Kent ISD are recipients of federal financial assistance and operate public elementary or secondary education programs or activities and, thus, are covered entities under Section 504. 29 U.S.C. § 794.

**ANSWER: Admitted as to the ISD.**

263.    G.G. is a person with a disability within the meaning of Section 504. 29 U.S.C.§ 794 and 34 C.F.R. § 104.3(1)(2).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

264.    A person is an "individual with a disability" under Section 504 if that person experiences "a physical or mental impairment which substantially limits one or more major life activities." 29 U.S.C. § 705(20)(B) (incorporating definition in 42 U.S.C. § 12102 by reference).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

265.    "Major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

266.    Under these regulations, educational programs or activities must, *inter alia*:

a.  provide a free appropriate public education to each qualified (individual with a disability] who is in the recipient's jurisdiction, regardless of the nature or severity of the person's [disability]," 34 C.F.R. § 104.33(a);

b.  "educate, or ... provide for the education of, each qualified [individual with a disability] in its jurisdiction with persons who [do not experience disabilities] to the maximum extent appropriate to the needs of the [individual with a disability]." 34 C.F.R. § 104.34(a);

c.  "place [an individual with a disability] in the regular educational environment operated by the recipient unless it is demonstrated by the recipient that the education of the person in the regular environment with the use of supplementary aids and services cannot be achieved satisfactorily. Whenever a recipient places a person in a setting other than the regular educational environment pursuant to this paragraph, it shall take into account the proximity of the alternate setting to the person's home." 34 C.F.R. § 104.34(a);

d.  "ensure that [individuals with disabilities] participate with non [disabled] persons in [nonacademic and extracurricular services and activities, including meals, recess periods, and other nonacademic services] to the maximum extent appropriate to the needs of the [individual with a disability] in question." 34 C.F.R. § 104.34(b). These nonacademic services include, but are not limited to: counseling services, athletics, transportation, health services, recreational activities, special interest groups or clubs sponsored by the recipients, and others. 34 C.F.R. § 104.37(a)(2);

e.  conduct evaluations in accordance with 34 C.F.R. § 104.35(b) "before taking any action with respect to the initial placement of the person [with a disability] in regular or special education and any subsequent significant change in placement." 34 C.F.R. § 104.35(a);

f.  provide procedural safeguards, including, *inter alia*, notice, an opportunity to examine records, an impartial hearing, and a hearing review process. 34 C.F.R. § 104.36.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

267.    Under Section 504, FAPE requires the provision of regular or special education and related aids and services that "(i) are designed to meet individual educational needs of [a child with a disability] as adequately as the needs of [non-disabled students] are met and (ii) are based upon adherence to procedures that satisfy the requirements of [34 C.F.R.] § 104.34, 104.35, and 104.36."

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

268.    Through the acts and omissions described herein, Defendants discriminated against G.G. in violation of Section 504, including, but not limited to the following ways:

a.  Denying G.G. the opportunity to participate in or benefit from educational services equal to that afforded to other similarly situated nondisabled students;

b.  Denying G.G. educational services that are as effective in affording equal opportunity to obtain the same result, gain the same benefit, or reach the same level of achievement as that provided other similarly situated nondisabled students;

c.  Denying G.G. the opportunity to receive educational programs and services in the most integrated setting appropriate to his needs, in contrast to other similarly situated nondisabled students;

d.  Failing to make reasonable modifications to its programs and services necessary to avoid discrimination against G.G.;

e.  Utilizing methods of administration including, but not limited to, the processes and guidelines in the Kent ISD Cooperative Agreement, that have the effect of defeating or substantially impairing the accomplishment of the objectives of Defendants' educational programs with respect to G.G. and other disabled students, in contrast to other similarly situated nondisabled students;

f.  Failing to properly train and supervise special education due process hearing officers in their obligations under the IDEA.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

**COUNT IV**
**Violations of Title II of the Americans with Disabilities Act, 42**
**U.S.C. § 12132 *et. seq.* and implementing federal regulations**
**(All Defendants)**

269.    Plaintiff incorporates by reference the allegations contained in the previous

paragraphs as if fully restated herein.

**ANSWER: The ISD restates its prior Answers in Paragraphs 1-268 as if fully restated herein.**

270.    Title II of the ADA and its regulations provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also* 28 C.F.R. § 35.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

271.    "Qualified individual with a disability" under ADA Title II means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 28 C.F.R. § 35.104.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

272.    G.G. is a person with disabilities within the meaning of the ADA. 42 U.S.C. § 12102.

**ANSWER**: **The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

273.    Disability discrimination under Title II also includes a public entity's failure to make reasonable modifications necessary to avoid disability discrimination. 28 C.F.R. § 35.130(b)(7).

**ANSWER**: **The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

274.    ADA regulations specify, *inter alia*, that it is unlawful discrimination for a public entity either directly or through contractual, licensing, or other arrangements to:

    a.  Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;

    b.  Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

    c.  Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

    d.  Aid or perpetuate discrimination against a qualified individual with a disability

by providing significant assistance to an agency, organization, or person that

discriminates on the basis of disability in providing any aid, benefit, or service

to beneficiaries of the public entity's program; or

e.    Otherwise limit a qualified individual with a disability in the enjoyment of any

right, privilege, advantage, or opportunity enjoyed by others receiving the aid,

benefit, or service.

28 C.F.R. § 35.130(b)(1).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

275.    According to the ADA:

A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration: (1) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [or] (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities . . .

28 C.F.R. § 35.130(b)(3).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

276.    "Individual with disability" and "major life activities" have the same meaning

under Title II of the ADA and under Section 504 as set forth above. 20 U.S.C. § 12102.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

277.     Under Title II of the ADA, a public entity includes any state or local government and any "department, agency, special purpose district, or other instrumentality of a State or States or local government." 28 C.F.R. § 35.104.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

278.     MDE, KPS, and Kent ISD are public entities subject to Title II of the ADA.

**ANSWER: Admitted as to Kent ISD only.**

279.     Through the acts and omissions described herein, Defendants discriminated against G.G. in violation of the ADA, including, but not limited to the following ways:

   a.  Denying G.G. the opportunity to participate in or benefit from educational services equal to that afforded to other similarly situated nondisabled students;

   b.  Denying G.G. educational services that are as effective in affording equal opportunity to obtain the same result, gain the same benefit, or reach the same level of achievement as that provided other similarly situated nondisabled students;

   c.  Denying G.G. the opportunity to receive educational programs and services in the most integrated setting appropriate to his needs, in contrast to other similarly situated nondisabled students;

    d.   Failing to make reasonable modifications to its programs and services necessary to avoid discrimination against G.G.;

    e.   Utilizing methods of administration including, but not limited to, the processes and guidelines in the Kent ISD Cooperative Agreement, that have the effect of defeating or substantially impairing the accomplishment of the objectives of Defendants' educational programs with respect to G.G. and other disabled students, in contrast to other similarly situated nondisabled students;

    f.   Failing to properly train and supervise special education due process hearing officers in their obligations under the IDEA.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

280.    Defendants' violations of the ADA have caused, and continue to cause, actual and proximate harm to G.G.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

281.    At the time Defendants violated G.G.'s rights under the ADA as set forth above, Defendants, and their respective agents, had knowledge that a harm to a federally protected right was substantially likely and were deliberately indifferent to that risk.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for**

the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.

282.    Defendants and their respective agents acted with deliberate indifference to G.G.'s federally protected rights under the ADA.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

283.    Defendants intentionally violated Plaintiff's rights under the ADA and its regulations by denying him access to equal educational opportunities afforded to students without disabilities, by excluding him from participation in and denying him the benefits of their services, programs and activities, and by subjecting him to discrimination. 42 U.S.C. § 12132.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

284.    Defendants otherwise intentionally discriminated against Plaintiff in violation of 42 U.S.C. § 12132, 12182.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by**

the Court.

<div align="center">

**COUNT V**
**Violation of Michigan's Persons with Disabilities Civil Rights Act**
**M.C.L. 37.1101** *et seq.*
**(All Defendants)**

</div>

285.    Plaintiff incorporates by reference the allegations contained in the previous

paragraphs as if fully restated herein.

**ANSWER: The ISD restates its prior Answers in Paragraphs 1-284 as if fully restated**

**herein.**

286.    KPS, Kent ISD, and MDE are education institutions as defined in PDCRA.

M.C.L. 37.1401 *et seq.*

**ANSWER: Admitted as to Kent ISD only.**

287.    PDCRA prohibits discrimination in educational institutions or facilities and

public services because of a disability. M.C.L. 37.1302; MCL 37.1402.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for**

**the reason that they constitute conclusions of law, rather than allegations of fact, and,**

**therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by**

**the Court.**

288.    PDCRA prohibits educational institutions from discriminating against an

individual in the full utilization of or benefit from the institution, or the services, activities, or

programs provided by the institution because of a disability. M.C.L. 37.1402(a).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for**

**the reason that they constitute conclusions of law, rather than allegations of fact, and,**

**therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by**

**the Court.**

289.      PDCRA prohibits places of public accommodation, including educational facilities, and public services from denying an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations because of a disability. M.C.L. 37.1302(a).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

290.      Through the acts and omissions described herein, Defendants discriminated against G.G. in violation of PDCRA, including, but not limited to the following ways:

a.  Denying G.G. the opportunity to participate in or benefit from educational services equal to that afforded to other similarly situated nondisabled students;

b.  Denying G.G. educational services that are as effective in affording equal opportunity to obtain the same result, gain the same benefit, or reach the same level of achievement as that provided other similarly situated nondisabled students;

c.  Denying G.G. the opportunity to receive educational programs and services in the most integrated setting appropriate to his needs, in contrast to other similarly situated nondisabled students;

d.  Failing to make reasonable modifications to its programs and services necessary to avoid discrimination against G.G.;

e.  Utilizing methods of administration including, but not limited to, the processes and guidelines in the Kent ISD Cooperative Agreement, that have the effect of

defeating or substantially impairing the accomplishment of the objectives of
Defendants' educational programs with respect to G.G. and other disabled
students, in contrast to other similarly situated nondisabled students;

f. Failing to properly train and supervise special education due process hearing
officers in their obligations under the IDEA.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for
the reason that they constitute conclusions of law, rather than allegations of fact, and,
therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by
the Court.**

291.     Defendants' violations of PDCRA have caused and continue to cause direct and
proximate harm to G.G.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for
the reason that they constitute conclusions of law, rather than allegations of fact, and,
therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by
the Court.**

## COUNT VI
### Petition for Attorney's Fees Pursuant to the IDEA
### (Defendant KPS)

292.     Plaintiff realleges and incorporates by reference the allegations contained in the
previous paragraphs.

**ANSWER: The ISD restates its prior Answers in Paragraphs 1-291 as if fully restated
herein.**

293.     Pursuant to the IDEA's implementing regulations:

In any action or proceeding brought under this section, the court,
in its discretion, may award reasonable attorneys' fees as part of

the costs—

>  (I) to a prevailing party who is the parent of a child with
>  a disability;

34 C.F.R. § 1415(i)(3)(B)(i).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

294.    Because the Hearing Officer found for Plaintiff on several issues in her DPC, she was the prevailing party in the March 2024 due process hearing against KPS.

**ANSWER: The ISD lacks knowledge upon which to form a belief and, therefore, leaves Plaintiffs to their proofs.**

295.    "Fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection." 34 C.F.R. § 1415(i)(3)(C).

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

296.    Plaintiff is entitled to recover the reasonable attorneys' fees and costs incurred by Matthew C. McCann for his representation of Plaintiff in the DPC and hearing against KPS.

**ANSWER: The ISD neither admits nor denies the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and,**

**therefore, leaves Plaintiffs to their proofs thereon with a final determination to be made by the Court.**

<div align="center"><b>REQUESTED RELIEF</b></div>

WHEREFORE, Defendant, KENT INTERMEDIATE SCHOOL DISTRICT, respectfully requests that this Honorable Court enter an order of no cause of action as to Defendant, together with costs and attorney fees so wrongfully sustained.

<div align="right">/s/TIMOTHY J. MULLINS_____<br>GIARMARCO, MULLINS & HORTON, PC<br>Attorney for Defendant</div>

DATED:  July 16, 2025

<div align="center"><b><u>AFFIRMATIVE DEFENSES</u></b></div>

Defendant, KENT INTERMEDIATE SCHOOL DISTRICT, by and through its attorneys, GIARMARCO, MULLINS & HORTON, P.C., states its Affirmative Defenses as follows:

1.    Plaintiffs' Complaint fails to set forth a claim or cause of action upon which relief can be granted as prayed.

2.    Defendant will show that at all times relevant hereto, it was engaged in a governmental function acting within the scope of its authority and, as such, is immune from suit for civil damages as set forth in Plaintiffs' Complaint.

3.    Plaintiffs' claims against Defendant fail because Plaintiff cannot show that Defendant acted with deliberate indifference regarding Plaintiff's allegations of discrimination.

4.    Plaintiffs' claims under the Persons with Disability Act are precluded by the Michigan Special Education Act, MCL 380.1701.

5.    Defendant is entitled to qualified immunity.

6.    Defendant has not violated any clearly established constitutional or statutory right.

7.    Plaintiffs' ADA and Section 504 claims are preempted by the IDEA.

8.      Plaintiffs' claim is barred because they did not notify Defendant of the actions complained of.

9.      Plaintiffs' claim is barred by the Statute of Limitations.

10.     Defendant will show at the time of trial that there was no discriminatory intent.

11.     Plaintiffs have failed to mitigate his damages, if any.

12.     Plaintiffs have failed to satisfy a condition precedent to filing this lawsuit.

13.     Defendant strictly observed all legal duties and obligations imposed by operation of law and otherwise, and all actions of its agents, servants, and/or employees were careful, prudent, proper, and lawful.

14.     Plaintiffs' voluntary conduct and/or comparative negligence may act to bar this claim in whole or in part.

15.     Any damages complained of by Plaintiff were not proximately caused by Defendant.

16.     The Court lacks jurisdiction over Plaintiff's state law claims because the state law claims substantially predominate the federal claims.

17.     Plaintiffs' claims are barred because Defendant took prompt, remedial, and corrective action to all known claimed acts of discrimination of harassment.

18.     Defendant will show at trial that any injury complained of by Plaintiffs was preexistent and/or proximately caused by the acts of third persons not under the control of Defendant.

19.     Defendant will show that at all times relevant hereto, it acted without malice, ill will and in good faith in the performance of its duties and, as a result, is immune from suit and recovery by Plaintiffs in this case.

20.     Defendant will show that Plaintiffs have failed to prove any deprivation of a Federal right, nor have Plaintiffs alleged or proven an act of deprivation taken under color of law sufficient

to maintain an action based upon the American with Disabilities Act and/or the Persons with Disabilities Civil Rights Act.

21.     Defendant will show and rely upon at the time of trial that Plaintiff, as a matter of law, is not entitled to emotional, exemplary, or punitive damages.

22.     Plaintiffs did not request an accommodation.

23.     Plaintiffs did not act in good faith.

24.     Defendant is excused from performance of its duties due to impracticability and impossibility.

25.     Defendant reserves the right to amend its Answer, including additional Affirmative Defenses, upon completion of investigation and discovery of this cause.

<div style="text-align:right">

/s/ TIMOTHY J. MULLINS_____
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendant
</div>

DATED:  July 16, 2025

<div style="text-align:center">

## <u>RELIANCE ON JURY DEMAND</u>
</div>

Defendant KENT INTERMIEDIATE SCHOOL DISTRICT, by and through its attorneys, GIARMARCO, MULLINS & HORTON, P.C., hereby rely upon the jury demand previously filed by Plaintiff as to all issues of trial.

<div style="text-align:right">

/s/ TIMOTHY J. MULLINS_____
TIMOTHY J. MULLINS (P28021)
TRAVIS M. COMSTOCK (P72025)
GIARMARCO, MULLINS & HORTON, PC
Attorneys for Defendant
101 W. Big Beaver Road, 10th Floor
Troy, MI  48084-5280
(248)457-7036
</div>

DATED:  July 16, 2025

## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

TIMOTHY J. MULLINS states that on July 16, 2025, he did serve a copy of the **Answer, Affirmative Defenses and Reliance Upon Jury Demand** via the United States District Court electronic transmission.

<div align="right">

/s/ TIMOTHY J. MULLINS
TIMOTHY J. MULLINS (P28021)
TRAVIS M. COMSTOCK (P72025)
GIARMARCO, MULLINS & HORTON, PC
Attorneys for Defendant
101 W. Big Beaver Road, 10th Floor
Troy, MI  48084-5280
(248)457-7036

</div>