UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L.G. o/b/o G.G.,

      Plaintiff/Appellant/Petitioner,           Judge Robert J. Jonker
                                          Magistrate Sally J. Berens
v                                            No. 24-833

KELLOGGSVILLE PUBLIC SCHOOLS and    MOAHR Case No. DP-23-0017
KENT INTERMEDIATE SCHOOL DISTRICT,  MOAHR Case No. DP-24-0005

      Defendants/Appellees/ Respondents,

_____/

| ELIZABETH K. ABDNOUR (P78203) | TIMOTHY J. MULLINS (P28021) |
|---|---|
| CORIANN GASTOL (P74904) | TRAVIS M. COMSTOCK (P72025) |
| ABDNOUR WEIKER LLP | GIARMARCO, MULLINS & HORTON, P.C. |
| *Attorneys for Plaintiff* | *Attorneys for Defendant Kent ISD* |
| 500 E. Michigan Ave., Suite 130 | 101 W. Big Beaver Road, 10th Floor |
| Lansing, MI 48912 | Troy, MI 48084-5280 |
| (517) 994-1776 | (248) 457-7020 |
| liz@education-rights.com | tmullins@gmhlaw.com |
| coriann@education-rights.com | tcomstock@gmhlaw.com |

---

**DEFENDANT, KENT INTERMEDIATE SCHOOL DISTRICT'S MOTION
FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

Defendant, Kent Intermediate School District ("the ISD"), moves to dismiss Plaintiff L.G.'s complaint appealing a decision in favor of the ISD from an Individuals with Disabilities Education Act "(IDEA") due process complaint and her claims under the Americans with Disabilities Act and Section 504 of Rehabilitation Act, and in support states as follows:

1.     Plaintiff filed a due process complaint against Defendant/Appellee/Respondent Kelloggsville Public Schools ("KPS") on November 20, 2023. (ECF No. 1, PageID.3, ¶ 3; PageID.23, ¶ 166; ECF No. 44-1, PageID.2321; ECF No. 44-1, PageID.2325 – ECF No. 45-1, PageID.2351).

2.      The Michigan Office of Administrative Hearings and Rules ("MOAHR") assigned the complaint against KPS the Docket No. **23-034010** and Case No. **DP-23-0117**. (ECF No. 44-1, PageID.2301).

3.      Plaintiff then filed a first amended due process complaint on January 11, 2024, adding the ISD. (ECF No. 1, PageID. 24, ¶ 169; ECF No. 42-1, PageID.2120). The Plaintiffs' caption expressly included two different case and docket numbers for the two **different** complaints – one against KPS (Docket No. 23-03410/Case No. DP-23-0117) and the other against the ISD (Docket No. 24-001329/Case No. DP-24-0005).

4.      MOAHR bifurcated the first amended complaint and "assigned a **separate docket number**, Docket No. **24-001329**" (emphasis added) to Plaintiff's allegations that the ISD violated the IDEA. (ECF No. 46-1, PageID.2358, FN 2; PageID. 2494 ("The portion of the Amended Complaint against Kent Intermediate School District (ISD) was assigned to Docket No. 24-001329.")).

5.      The Plaintiff never requested consolidation of the two complaints and ALJ did not *sua sponte* consolidate the two separately docketed complaints against different respondents.

6.      The ALJ then entered Orders in Docket No. 24-001329 setting **separate** deadlines in that matter. (ECF No. 46-1, PageID.2579; PageID.2582).

7.      The ISD filed a motion to dismiss Plaintiff's **separately** docketed complaint on January 22, 2024. (ECF No. 46-1, PageID.2503-2510). Plaintiff filed a response expressly noting the **separate** docket and case numbers assigned to the two due process complaints. (ECF No. 46-1, PageID.2467).

8.      The ALJ issued a Decision and Order on February 7, 2024, granting the ISD's motion on the basis that the ALJ lacked jurisdiction and dismissed Plaintiff's separate due process

complaint against the ISD. (ECF No. 1, PageID.26, ¶ 176; ECF No. 46-1, PageID.2358-2370 ("ISD Decision")).

9.      An appeal from an adverse due process decision must be filed within 90 days of the date of the decision. 20 USC 1415(i)(2)(B). This is the same deadline under Michigan law. *Northport Pub. Sch. v. Woods*, No. 1:11-CV-982, 2013 WL 435962, at *2 (W.D. Mich. Feb. 4, 2013) (citing Mich. Admin. Code R. 340.1724f(7) (now R. 340.1724(4)).

10.     The deadline for Plaintiff to appeal the February 7, 2024, ISD Decision was May 7, 2024.

11.     Plaintiff filed her appeal with this Court on August 12, 2024, beyond the 90-day deadline to appeal the ISD Decision.

12.     Count I as against the ISD must therefore be dismissed because this Court lacks subject matter jurisdiction over the claim. *Northport*, *supra*; *Maynard v. D.C.*, 579 F. Supp. 2d 137, 140 (D.D.C. 2008).

13.     Even if the Complaint is not untimely, there is no equitable reason to toll the 90-day deadline. Count I fails for this alternative reason.

14.     And pursuant to *Y.A. by Alzandani v. Hamtramck Pub. Sch.*, 137 F.4th 862 (6th Cir. 2025), and *D.L., et al v. Michigan Department of Education*, Case No. 22-cv-00838 (W.D. Mich., Sept. 24, 2025) (ECF No. 103), a supervisory educational entity is not liable for the alleged failures of a local school district under the IDEA. Thus, Count I fails for this second alternative reason.

15.     The ADA and § 504 claims fail as well because there is no material issue of fact that the ISD had no discriminatory motive and was not deliberately indifferent.

16.     There is no genuine issue of material fact that the ISD was not present at the Individualized Education Plan meeting that KPS conveyed and at which KPS's offer of FAPE did

not include placement at the ISD's Pine Grove center-based program.

17.    Plaintiff L.G. admits that neither she nor her attorney invited the ISD representatives to that meeting.

18.    The ISD's Pine Grove director avers that her only conversation with KPS's Special Education Director conveyed only general information about the program and did not opine on the question of whether Plaintiff G.G. should or could be placed at the program.

19.    KPS's Special Education Director confirmed this when she testified that she never disclosed to the ISD that Plaintiff L.G. was requesting consideration of placement at Pine Grove and that her contact with Pine Grove only sought general information about the program.

20.    Because the ISD was not present at the IEP meeting where KPS made an offer of FAPE to Plaintiff G.G. for placement in its autism program the ISD cannot have acted with deliberate indifference since it made no decision with respect to FAPE for G.G.

21.    Counts III and IV as against the ISD must therefore be dismissed. Fed. R. Civ. P. 56.

WHEREFORE Defendant/Appellee/Respondent Kent ISD requests that the Court dismiss Plaintiff's claims against it with prejudice.

/s/ TRAVIS COMSTOCK
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendant Kent ISD
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7036
tcomstock@gmhlaw.com
P72025

DATED:  November 21, 2025

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L.G. o/b/o G.G.,

     Plaintiff/Appellant/Petitioner,          Judge Robert J. Jonker
                                           Magistrate Sally J. Berens
v                                        No. 24-833

KELLOGGSVILLE PUBLIC SCHOOLS and     MOAHR Case No. DP-23-0017
KENT INTERMEDIATE SCHOOL DISTRICT,   MOAHR Case No. DP-24-0005

     Defendants/Appellees/ Respondents,

_____/

| | |
|---|---|
| ELIZABETH K. ABDNOUR (P78203) | TIMOTHY J. MULLINS (P28021) |
| CORIANN GASTOL (P74904) | TRAVIS M. COMSTOCK (P72025) |
| ABDNOUR WEIKER LLP | GIARMARCO, MULLINS & HORTON, P.C. |
| *Attorneys for Plaintiff* | *Attorneys for Defendant Kent ISD* |
| 500 E. Michigan Ave., Suite 130 | 101 W. Big Beaver Road, 10th Floor |
| Lansing, MI 48912 | Troy, MI 48084-5280 |
| (517) 994-1776 | (248) 457-7020 |
| liz@education-rights.com | tmullins@gmhlaw.com |
| coriann@education-rights.com | tcomstock@gmhlaw.com |

**DEFENDANT, KENT INTERMEDIATE SCHOOL DISTRICT'S MOTION
FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

STANDARD OF REVIEW .....................................................................................1

FACTUAL BACKGROUND ...................................................................................2

PROCEDURAL BACKGROUND...........................................................................4

LEGAL ANALYSIS ...............................................................................................7

I.      Plaintiff failed to timely file this action and no equitable reason excuses the late filing ..............................................................................................7

      A.      The ALJ clearly gave notice to Plaintiff that there were two separate Complaints ........................................................................7

      B.      Rule 54(b) is inapplicable based on its plain language.......................9

      C.      There is no basis to apply either "equitable estoppel" or "equitable tolling" Here.................................................................10

II.     The ISD as a supervisory entity is not liable for every alleged denial of FAPE by a constituent local school district ..................................14

III.    Plaintiff fails to state a claim for relief under § 504 and the ADA ..............17

CONCLUSION......................................................................................................21

## INDEX OF AUTHORITIES

*A.J.T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. 335 (2025) ............................20

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ...............................................................1

*Benitez v. United States*, No. 1:04-CV-627, 2009 WL 1010928
(W.D. Mich. Apr. 14, 2009)...........................................................................................14

*Bradley v. Jefferson Cnty. Pub. Sch.*, 88 F.4th 1190 (6th Cir. 2023) .....................................17

*Cheatom v. Quicken Loans*, 587 F. App'x 276 (6th Cir. 2014)...............................................11

*D.L., et al v. Michigan Department of Education*, Case No. 22-cv-00838
(W.D. Mich., Sept. 24, 2025)...................................................................................16,17

*Dequan A., next friend of J.L. v. Whitmer*, No. 23-CV-12675,
2025 WL 2647573 (E.D. Mich. Sept. 15, 2025).........................................................20

*Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541 (2019) ............................................................10

*Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552
(6th Cir. 2000).................................................................................................................13

*Gui v. Inkster Sch. Districts*, No. 12-15654, 2013 WL 1282020
(E.D. Mich. Mar. 27, 2013) ...........................................................................................14

*Holden v. Miller-Smith*, 28 F. Supp. 3d 729 (W.D. Mich. 2014) ............................................13

*Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89 (1990) ..........................................................12,13

*Jackson v. United States*, 751 F.3d 712 (6th Cir.2014) ...........................................................13

*Johnson on behalf of X.M. v. Mount Pleasant Pub. Sch.*, No. 1:22-CV-12638,
2024 WL 3825196, (E.D. Mich. Aug. 14, 2024)..................................................19,20

*K.C. by & through T.C. v. Bd. Of Educ. Of Marshall Cnty. Sch., Benton, Kentucky*,
306 F. Supp. 3d 970 (W.D. Ky. 2018).........................................................................20

*K.I. v. Durham Public Schools Bd. of Educ.*, 54 F4th 779 (4th Cir. 2022)........................10,17

*Knox Cnty., TN v. M.Q.*, 62 F.4th 978 (6th Cir. 2023) ............................................................18

*Lawrence v. Florida*, 549 U.S. 327 (2007) ..............................................................................14

*Mahaffey ex rel. Mahaffey v. Aldrich*, 236 F. Supp. 2d 779 (E.D. Mich. 2002)..................3,18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)..................................1

*Maynard v. D.C.*, 579 F. Supp. 2d 137 (D.D.C. 2008) ............................................13

*Moore v. Philip Morris Cos.*, 8 F.3d 335 (6th Cir. 1993) ..........................................2

*Nilson v. Comm'r of Soc. Sec.*, No. 1:18-CV-908, 2019 WL 2344766 (W.D. Mich. Jan. 8, 2019) ............................................13

*Northport Pub. Sch. v. Woods*, No. 1:11-CV-982, 2013 WL 435962 (W.D. Mich. Feb. 4, 2013) ............................................10

*Pilling v. Hegseth*, No. 1:24-CV-1293, 2025 WL 1322662 (W.D. Mich. May 7, 2025) ............................................11,12,13

*R.V. v. Rivera*, 220 F. Supp. 3d 588 (E.D. Pa. 2016)............................................15

*S.S. v. E. Ky. Univ.*, 532 F.3d 445 (6th Cir. 2008) ............................................18

*Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156 (5th Cir. 2011)............................................21

*Sidney Coal Co. v. Soc. Sec. Admin.*, 98 F. App'x 378 (6th Cir. 2004) ............................................9

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) ............................................1

*Y.A. by Alzandani v. Hamtramck Pub. Sch.*, 137 F.4th 862 (6th Cir. 2025)..............15,16,17,21

## Statutes

20 U.S.C. § 1415(i)............................................16

20 U.S.C. § 1415(i)(2)(A), (B) ............................................7,10

20 U.S.C. § 1415(i)(2)(B) ............................................1

29 U.S.C. § 794(a) ............................................18

42 U.S.C. § 12132 ............................................18

## Rules

Fed. R. Civ. P. 54(b) ............................................7,9

Fed. R. Civ. P. 56............................................1

## INTRODUCTION

Defendant/Appellee/Respondent Kent Intermediate School District ("the ISD") moves to dismiss Count I of Plaintiff/Appellant/Petitioner L.G.'s appeal/complaint as against the ISD because she failed to file this appeal/complaint prior to the expiration of the 90-day period set in forth in 20 U.S.C. § 1415(i)(2)(B). The pleadings in the underlying due process proceedings clearly identified that the Plaintiff's complaint against the ISD was **separate and distinct** from their complaint against Kelloggsville Public SchoolsANDER ("KPS"). Plaintiff's due process counsel recognized the separate cases in his pleadings as well. Thus, there is no material issue of fact that Plaintiff failed to timely file this civil action and it must be dismissed. Fed. R. Civ. P. 56.

To the extent there is a reason to excuse the untimely filing, there is no material issue of fact that the ISD, which did not provide any direct services at any time to G.G., is not liable for the alleged predetermination placement of G.G. by KPS. Count I must therefore be dismissed. Further, there is no material issue of fact that because the ISD lacked any information regarding KPS's placement decision for the Student it cannot have acted in a "deliberately indifferent" manner. Counts III and IV must therefore be dismissed.

## STANDARD OF REVIEW

Summary judgment should be granted if the pleadings and evidence "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). In response, the non-moving party cannot merely rest on the pleadings. *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead,

1

the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-340 (6th Cir. 1993).

## FACTUAL AND PROCEDURAL BACKGROUND

*Factual background*

The ISD does not dispute that the Plaintiff minor, G.G. ("the Student"), "has a number of disabilities" including Autism Spectrum Disorder ("ASD"), severe cognitive impairment, and other disabilities and physical limitations. (ECF No. 1, PageID.10, ¶¶ 46-51). Plaintiff L.G. enrolled the Student at KPS at the start of the 2022-23 school year. (Id., PageID.11, ¶ 62). KPS provided IDEA programs and services to the Student under various IEPs. (ECF No. 1, PageID.11-21).

KPS then made an offer of FAPE to the Student for the 2023-24 school year that included placement in its own ASD program/classroom. (Id., PageID.21, ¶¶ 151-53). Plaintiff L.G. disagreed with proposed FAPE placement and requested consideration of placement at a center-based program operated by the ISD. (Id., PageID.22, ¶ 157). Plaintiff L.G. then elected to withdraw the Student from KPS and "made alternative educational arrangements" for the Student at a non-public school. (Id., PageID.23, ¶ 163). The Student remains enrolled at a private school for the 2025-26 school year.

Plaintiff alleges that KPS made the unilateral decision that the ISD's center-based program, Pine Grove Learning Center ("Pine Grove"), was not the appropriate placement for the Student. (Id., PageID.28, ¶¶ 190-92). Plaintiff goes further and contends that "KPS and/or Kent ISD" allegedly predetermined the Student's placement at KPS's ASD program. (Id., PageID.29, ¶ 197; PageID.30, ¶ 201). Plaintiff's Amended Complaint relies in part on a Cooperative Agreement

between the ISD and its constituent local school districts such as KPS. (**Exhibit 1**; see also ECF No.43-1, PageID.2150).

The Cooperative Agreement clearly states that placement at center-based programs operated by the ISD or other local school districts requires a determination "by an IEP . . . Team meeting[.]" (**Exhibit 1**, p. 2). It further clearly states that if a local school district such as KPS is considering placing a resident student in a program not operated by KPS, then "the Resident District [KPS] **shall invite** the potential Operating District [the ISD] to the placement meeting of the IEP . . . Team . . . ." (Id., p. 3) (emphasis added). The practical process required KPS to submit an online request to the ISD and then the ISD would reach out to discuss that request. (ECF No. 30-1, PageID.823, Trans., p. 681 (Paul Dymowski testimony (former ISD Special Education Center Programs Director))). The ISD never received a request from KPS to consider placement of the Student at Pine Grove. (Id.). Nor did Dymowski have any specific knowledge about the Student. (Id., PageID.825, Trans., p. 692) or ever speak with Plaintiff L.G. (Id., PageID.831, Trans., p. 714).

Plaintiff L.G. admitted in her Complaint and during her deposition that the ISD did not attend the IEP Team placement meeting convened by KPS. (ECF No. 1, PageID.28, ¶ 195; **Exhibit 2**, L.G. Deposition Transcript, pp. 87-88. 89). Plaintiff L.G. testified that she knew, through prior conversations with the Student's school district case manager in 2021 and 2022, that she needed to have KPS invite the ISD to the May 10, 2023, IEP meeting. (Id., p. 61; 63; 64-66; see also ECF No. 33-1, PageID.1146, Trans., p. 157). She further testified that she never sent any documents related to the Student to the ISD. (Id., pp. 74-75). She and her former counsel (who has withdrawn from the case, ECF No. 54) attended that IEP meeting. (Id., p. 82). She stated that her former counsel "tried" to invite the ISD, but he didn't talk directly to anyone at the ISD or Pine Grove.

3

(Id., p. 83; see also ECF No. 30-1, PageID.826-27, Trans., pp. 696-97 (ISD does not communicate with parent(s) about placement "unless the resident district [i.e., KPS] invites" the ISD to participate in "a meeting with the parent.")). Although Plaintiff L.G. claimed that KPS Special Education Director Kim Fountaine invited the ISD, Dymowski testified that he never received a request for a needs review from KPS. (ECF No. 30-1, PageID.823, Trans., p. 681).

Dymowski and Fountaine's testimony at the due process hearing confirmed that (1) Fountaine only sought general information about Pine Grove from Dymowski, (2) did not provide any Student specific information, and (3) a needs review request was not made to the ISD **prior to** the May 2023 IEP meeting. Fountaine testified that KPS "didn't feel that Pine Grove would be an appropriate placement" for the Student. (ECF No. 30-1, PageID.862, Trans., p. 839). And because of that, KPS "didn't initiate that process" of referring the Student to Pine Grove. (Id.; Trans., p. 840). She further testified that her conversation with Pine Grove did not pertain to the Student specifically but, rather, that "it was regarding the skill set that G.G. possesses and would that be a student that [Pine Grove] would typically see in their classroom at Pine Grove. (Id., Trans., p. 841). "So it was spoken **in generics**." (Id. (emphasis added)). "It was **not disclosed** in that conversation **who I was talking about**." (Id. (emphasis added); see also pp. 842-43). She denied that the reason for her contact with Pine Grove was the issue of the Student's placement. (Id., Trans., p. 841).

*Procedural Background*

In the administrative proceedings below, Plaintiff initially filed a due process complaint on November 30, 2023, against Defendant/Appellee/Respondent KPS. (ECF No. 1, PageID.23, ¶ 166). This was assigned Docket No. 23-034010 and Case No. DP-23-0117 by the Michigan Office of Administrative Hearings and Rules ("MOAHR). (ECF No. 44-1, PageID.2325). The

4

Administrative Law Judge ("ALJ") thereafter sent out several orders pertaining to pre-hearing matters using the assigned case and docket number. (See, e.g., ECF No. 44-1, PageID.2287, 2301, 2304).

Plaintiff then filed a first amended due process complaint on or about January 11, 2024, adding the ISD. (Id., PageID.2237; ECF No. 42, PageID.2031). The ALJ entered an Order Scheduled Prehearing Conference on January 18, 2024, identifying the **separately docketed complain**t against the ISD – Docket No. 24-001329. (ECF No. 46-1, PageID.2582; see also PageID.2579 (Order Regarding Timelines)). Plaintiff refiled the amended complaint on January 24, 2024, to correct a procedural defect and that clearly identified the two different cases and docket numbers. (ECF No. 46-1, PageID.2467). On the same day, Plaintiff's former counsel stated via email that he "added the case and docket number**s**" to the caption thereby recognizing that the two complaints had different and distinct captions. (ECF No. 46-1, PageID.2425) (emphasis added).

The ALJ issued an Order Following Prehearing and Order Setting Deadlines January 25, 2024, stating, "The portion of the Amended Complaint against Kent Intermediate School District (ISD) was assigned to Docket No. 24-001329." (ECF No. 46-1, PageID.2494; see also ECF No. 43-1, PageID.2200-01 (Order Setting Prehearing)). The ALJ thereafter issued "Amended Subpoena Dues Tecum" on January 30, 2024, at Plaintiff's counsel's request that reflected the two distinct cases in the caption. (ECF No. 46-1, PageID.2465).

The ISD filed a motion to dismiss Plaintiff's **separately** docketed complaint on January 22, 2024. (ECF No. 46-1, PageID.2503-2510). On February 5, 2024, after the ALJ's January 25, 2024, Order assigning different case and docket numbers, Plaintiff's counsel served its response to the ISD's motion to dismiss that utilized the two separate case and docket numbers. (ECF No.

5

42-1, PageID.2065, 2067). The subject line of his email stated, "RE: 23-034010 L.G. o/b/o/ G.G. v KELLOGGSVILLE PUBLIC SCHOOLS **&** 24-001329 L.G. o/b/o/ G.G. v KENT INTERMEDIATE SCHOOL DISTRICT". (ECF No. 42-1, PageID.2065) (emphasis added). On February 6, 2024, Plaintiff's counsel sent another email expressly recognizing again the two different cases. (ECF No. 42-1, PageID.2064).

The ALJ issued a Decision and Order Granting Kent Intermediate School District's Motion to Dismiss ("ISD Decision") on February 7, 2024. (ECF No. 46-1, PageID.2358). In the ISD Decision, the ALJ once again **reiterated** that Plaintiff's claims against KPS were separately docketed. She stated that Plaintiff's "Amended Complaint was also filed against Kelloggsville Public Schools and was **assigned a separate docket number**, Docket No. 23-034010." (Id., FN 2 (emphasis added)).

Following the ISD Decision, the ALJ issued multiple Orders and subpoenas for the ongoing due process proceeding against KPS that only used Docket No. 23-034010 and did not include the separate Docket No. 24-001329 for the now dismissed complaint against the ISD. (See, e.g., ECF No. 42-1, PageID.2055 (Order Granting Request for Adjournment), PageID.2061; ECF No. 41-1, PageID.2015, 2018, 2021). Plaintiff's counsel also filed witness and exhibit lists in the proceedings against KPS that similarly only used Docket No. 23-034010 assigned to Plaintiff's complaint against KPS. (ECF No. 41-1, PageID.2006, 2009). Plaintiff's counsel also sought a settlement conference solely for the proceeding against KPS on February 16, 2024, via email that only referenced the Docket No. 23-034010. (ECF No. 42-1, PageID.2040).

Plaintiff filed this action on August 12, 2024 – over three months after the May 7, 2024, deadline to seek review of the February 7, 2024, ISD Decision. (ECF No. 1). The ISD sought to dismiss the claims against it via a motion to dismiss based on the untimely filing and other

6

arguments. (ECF No. 13). Following a hearing on January 28, 2025, the Court denied that motion without prejudice to the ISD being able to re-raise the issues. (ECF No. 47, PageID.2636).

## LEGAL ANALYSIS

### I.    Plaintiff failed to timely file this action and no equitable reason excuses the late filing.

There can be no reasonable factual dispute that the Plaintiff failed to timely file a civil action after the dismissal of the Plaintiff's **separately docketed** due process complaint against the ISD. The IDEA permits an aggrieved party to file a civil action within 90 days of the date of the decision. 20 U.S.C. § 1415(i)(2)(A), (B). The ISD Decision was issued on February 7, 2024. The 90-day time period expired on May 7, 2024. Plaintiff did not file the instant appeal/complaint until August 12, 2024, over three months **after** the expiration of the 90-day period.

During the Court's oral decision on the ISD's motion to dismiss, the Court indicated that it saw the caselaw tilting towards the 90-day statute of limitation for seeking review of an ALJ's decision as being a claims-processing rule rather than a hard jurisdictional barrier. (ECF No. 47, PageID.2634). The Court also indicated that Fed. R. Civ. P. 54(b) may come into play based the concept in that Rule that "nothing is final until everything is final." (Id., PageID.2635). And that perhaps the erroneous application of that Rule by Plaintiff's due process counsel could be an equitable reason to not apply the 90-day rule. But determining those issues had to wait because the Court was unclear, at the motion to dismiss stage, what exactly was occurring with the two separately docketed due process complaints. (Id.).

### A.    The ALJ clearly gave notice to Plaintiff that there were two separate complaints.

With the conclusion of discovery, what occurred below with the two separately docketed complaints is clear. First, Plaintiff filed a due process complaint on November 30, 2023 only against KPS. That complaint was assigned a docket (23-03410) and case (DP-23-0117) number. Second, Plaintiff then filed a first amended due process complaint on or about January 11, 2024,

adding the ISD. The ALJ, through her January 18, 2024, Order provided notice to the Plaintiff that the claims against the ISD were given **separate docket and case numbers**. (ECF No. 46-1, PageID.2582). Plaintiff's counsel, having to refile the amended complaint for procedural reasons, stated in an email that he "added the case and docket number**s**" (plural) to the caption. (ECF No. 46-1, PageID.2425 (emphasis added)). And the First Amended Complaint Plaintiff filed on January 24, 2024 used the **two separate** docket and case numbers. (ECF No. 46-1, PageID.2467).

Third, the ALJ issued an Order Following Prehearing and Order Setting Deadlines on January 25, 2024, stating, "The portion of the Amended Complaint against Kent Intermediate School District (ISD) was assigned to Docket No. 24-001329." (ECF No. 46-1, PageID.2494). The earlier Order Setting Prehearing also used two distinct docket and cases numbers to reflect the **two different** complaints at issue. (ECF No. 43-1, PageID.2200-01). The ALJ thereafter issued "Amended Subpoena Dues Tecum" on January 30, 2024, at Plaintiff's counsel's request that reflected the two distinct cases in the caption. (ECF No. 46-1, PageID.2465).

 Fourth, the ISD filed a motion to dismiss Plaintiff's **separately** docketed complaint on January 22, 2024. (ECF No. 46-1, PageID.2503-2510). On February 5, 2024, **after** the ALJ's January 25, 2024 Order assigning different case and docket numbers, Plaintiff's counsel served its response to the ISD's motion to dismiss that utilized the two separate case and docket numbers. (ECF No. 42-1, PageID.2065, 2067). On February 6, 2024, Plaintiff's counsel sent an email that once again expressly recognized the two different cases. (ECF No. 42-1, PageID.2064).

Lastly, when the ALJ issued the "ISD Decision" on February 7, 2024, it only contained Docket No. 24-00139 and Case No. DP-24-0005. (ECF No. 46-1, PageID.2358). The ALJ again reiterated that Plaintiff's claims against KPS were separately docketed. She stated that Plaintiff's "Amended Complaint was also filed against Kelloggsville Public Schools and was **assigned a**

**separate docket number**, Docket No. 23-034010." (Id., FN 2 (emphasis added)).

What is clear now is that the Plaintiff knew that there were **two different complaints** at issue – Docket No.23-034010/Case No. DP-23-0117 against KPS **and** Docket No. 24-001329/Case No. DP-24-0005 against the ISD. Plaintiff was put on notice of the two separate actions as of January 18, 2024. Plaintiff's counsel recognized this in the pleadings submitted after January 18, 2024. The ALJ made it crystal clear in her January 25, 2024 order by expressly stating that Plaintiff's allegations against the District "was assigned to Docket No. 24-001329." (EFC No. 46-1, PageID.2494). Her subsequent Orders and the ISD Decision plainly only referenced Docket No. 24-001329/Case No. DP-24-0005 against the ISD in the captions. Thus, in two separate Orders, the ALJ first gave notice that there were two actions proceeding, not one consolidated due process complaint, and then consistently and expressly utilized only Docket No. 24-001329/Case No. DP-24-0005 for orders and the ISD Decision. There is no material issue of fact that Plaintiff was on notice of and acknowledged (ECF No. 42-1, PageID.2120 and ECF No. 46-1, PageID.2425) the existence of **two separate** complaints.

### B. Rule 54(b) is inapplicable based on its plain language.

Because there were two separate and distinct due process complaints, Rule 54(b) is inapplicable to facts in this matter. Rule 54(b) pertains to a suit "involving multiple parties." But the plain language of the Rule limits its application to "an action" – singular. Where "an action" involves "multiple parties" a final entry may be entered against one or more parties while the action continues against the remaining parties, i.e., an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties . . ." Rule 54(b). *Cf. Sidney Coal Co. v. Soc. Sec. Admin.*, 98 F. App'x 378, 380 (6th Cir. 2004) (First step in the Rule 54(b) determination is that a "district court must expressly 'direct the

entry of final judgment as to **one or more** but fewer than all the . . . **parties'** in a case.") (emphasis added).

This Rule is inapplicable here because there were two **separate** actions – one against KPS and one against the ISD. And in the complaint against the ISD, there was only one party. Thus, not only is it speculation that Plaintiff's former counsel had this Rule in mind when he let the 90-day deadline pass, but even if that was a consideration, the plain language makes the Rule inapplicable to the facts of the separately docketed "action" against the ISD.

### C.  There is no basis to apply either "equitable estoppel" or "equitable tolling" here.

The ISD Decision was a final order in the separately docketed complaint against the ISD. The 90-day window began to run following the ISD Decision issuance. The IDEA permits an aggrieved party to file a civil action within 90 days of the date of the decision. 20 U.S.C. § 1415(i)(2)(A), (B). See also *Northport Pub. Sch. v. Woods*, No. 1:11-CV-982, 2013 WL 435962, at *2 (W.D. Mich. Feb. 4, 2013). The facts in the Complaint, and the ALJ decisions, are clear that Plaintiff failed to timely appeal the dismissal of her separately docketed due process complaint against the ISD by May 7, 2024, which was the 90th day following the issuance of the decision. *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 548–49 (2019) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s]' it.") (citation omitted).

The Court previously pointed to *K.I. v. Durham Public Schools Bd. of Educ.*, 54 F4th 779 (4th Cir. 2022) as indicative of the current trend towards the 90-day window being a claims-processing rule. After holding that the appeal window between an ALJ decision and the state level review (set forth by state law) was a claims processing rule, that court considered whether that mattered under the facts of its case. *Id.*, at 792. The court agreed that claims processing issues

10

generally concerned the waiver or forfeiture of that issue and the defendants in that case did not waive or forfeit the defense. *Id*., at 793. The court then considered whether there was an equitable reason to excuse the failure to timely exhaust. Ultimately, the court held that plaintiff failed to raise any equitable arguments on appeal. *Id*., at 794.

The ISD has not waived or forfeited the issue that the Plaintiff failed to timely file this civil action with respect to the ISD because it sought dismissal under Rule 12(b) at the start of this case. That leaves the only possibility of equitable reasons to excuse the undisputed late filing. Plaintiff claimed in her response to the ISD's motion to dismiss that her former's counsel alleged reliance on waiting for a final decision for the purported "single due process complaint" was the basis for either "equitable tolling" or "equitable estoppel." (ECF No. 20, PageID.579-80). But as explained *supra*, there is no dispute that not only did the ALJ here give ample notice that this **was not** "a single due process complaint" via multiple orders and a distinct and separate caption, but Plaintiff's former counsel recognized the distinction in his own emails and pleadings.

First, Plaintiff's reliance on "equitable estoppel" fails. "To invoke equitable estoppel, a plaintiff must show that the defendant took affirmative steps to prevent the plaintiff from suing in time, 'such as by hiding evidence or promising not to plead the statute of limitations.'" *Cheatom v. Quicken Loans*, 587 F. App'x 276, 280 (6th Cir. 2014) (citation omitted). See also *Pilling v. Hegseth*, No. 1:24-CV-1293, 2025 WL 1322662, at *5 (W.D. Mich. May 7, 2025). And Plaintiff must further demonstrate "that her 'ignorance is not attributable to a lack of diligence on [her] part.'" *Id*. (citation omitted; alteration original).

There are no facts that would justify the application of equitable estoppel here. Plaintiff's former counsel knew there were two separate due process complaints from the ALJ's orders and decision dismissing the ISD, as well as his own emails and pleadings utilizing the two separate

case and docket numbers assigned to each complaint. There is no suggestion that the ISD "took affirmative steps to prevent" Plaintiff from filing a timely civil action against the ISD with this Court. *Pilling*, at *5 ("affirmative misconduct" necessary to invoke estoppel requires proof of "an act by the government that either intentionally or recklessly misleads the claimant"). Plaintiff's counsel (as argued by her current counsel) was aware that the IDEA explicitly required filing a civil action within 90 days from a decision on a due process complaint. (ECF No. 20, PageID.575-76). The ISD did not hide that statutory provision or make any promise not to rely on the failure to timely file in any subsequent civil action. Thus, equitable estoppel is not a basis to toll the 90-day deadline.

Second, the facts here foreclose any application of equitable tolling. Under well-established Supreme Court precedent, "courts have typically extended equitable relief only sparingly." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990). Equitable tolling is limited to situations to "where the claimant has actively pursued his judicial remedies **by filing a defective pleading** during the statutory period, or where the complainant has been **induced or tricked** by his adversary's misconduct into allowing the filing deadline to pass." *Id*. (emphases added; footnotes omitted). It is undisputed that Plaintiff did not file a civil action within the 90-day window or that such was considered "defective" because Plaintiff had to wait for the other due process decision to issue. Nor is there any factual basis for finding that the ISD "induced or tricked" Plaintiff into not filing within the 90-day window. Neither of those situations being present here, precedent also holds that courts "have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving [her] legal rights." *Id*.

To be able to rely on equitable tolling, courts examine five factors: "(1) plaintiff's lack of notice of the filing requirement; (2) plaintiff's lack of constructive knowledge of the filing

requirement; (3) plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Holden v. Miller-Smith*, 28 F. Supp. 3d 729, 738 (W.D. Mich. 2014) (citing *Jackson v. United States*, 751 F.3d 712, 719–20 (6th Cir.2014)). Not every factor needs to be considered nor is all five required to be present. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000).

There is no dispute that Plaintiff (via counsel) had actual notice of the 90-day filing deadline. ((ECF No. 20, PageID.575-76). L.G. also admitted during her deposition that she received notice of her procedural safeguards and rights. (Exhibit 2, p. 61). Plaintiff also was not diligent in pursuing their rights despite having actual knowledge of the 90-day deadline. Plaintiff did not make any effort to inquire as to whether the ISD decision was part of the separate complaint against KPS. *Pilling*, at *6.

And even if counsel erroneously interpreted the IDEA regulation at issue, attorney negligence is not a basis for equitable tolling. "[S]pecifically, 'lack of due diligence on the part of [the] plaintiff's attorney is insufficient to justify application of an equitable toll.'" *Maynard v. D.C.*, 579 F. Supp. 2d 137, 143 (D.D.C. 2008) (citation omitted; IDEA 90-day filing period at issue). Moreover, it is axiomatic that equitable tolling does not apply to "'garden variety' neglect[.]" *Pilling*, at *6 (quoting *Irwin*, 498 U.S. at 96). To the extent Plaintiff argues that they are "entitled to equitable tolling because [their] attorney's negligence constitutes extraordinary circumstances" this "is unpersuasive as counsel's mistake or negligence in calculating the filing deadline or filing his client's appeal is insufficient." *Nilson v. Comm'r of Soc. Sec.*, No. 1:18-CV-908, 2019 WL 2344766, at *1 (W.D. Mich. Jan. 8, 2019) (citations omitted). It also well-settled that "an attorney mistake in calculating the limitations period [does] not warrant equitable tolling because 'this

13

argument would essentially equitably toll limitations periods for every person whose attorney missed a deadline.'" *Benitez v. United States*, No. 1:04-CV-627, 2009 WL 1010928, at *4 (W.D. Mich. Apr. 14, 2009) (quoting *Lawrence v. Florida*, 549 U.S. 327, 335 (2007)).

Regarding the last two factors, the ISD is extremely prejudiced by Plaintiff's failure to timely seek review of the ISD Decision. Once the 90-day window passed, the ISD relied on the fact that no further legal action could be taken with respect to Plaintiff's claim that it was liable for the alleged FAPE violation by KPS. Nor was it reasonable for Plaintiff to remain ignorant of the filing deadline for this separately docketed complaint. "Plaintiff's actual knowledge of the filing deadline renders the fifth factor (the plaintiff's reasonableness in remaining ignorant of the filing deadline) inapplicable." *Gui v. Inkster Sch. Districts*, No. 12-15654, 2013 WL 1282020, at *5 (E.D. Mich. Mar. 27, 2013). Thus, none of the equitable considerations apply here and Count I must be dismissed for the failure to file this civil action on or before May 7, 2024.[1]

## II. The ISD as a supervisory entity is not liable for every alleged denial of FAPE by a constituent local school district.

Even if the Court were to excuse the Plaintiff's failure to file within the 90-day deadline,

---

[1] The Court wondered, in discussing possible equitable reasons to excuse the late filing, whether "Pine Grove was still part of the discussion" during the hearing in the complaint against KPS. (ECF No. 47, PageID.2635). While Pine Grove did come up in Plaintiff's L.G.'s testimony, it was limited to her disagreement with KPS about the appropriate placement for the Student. And Paul Dymowski's testimony was limited to the needs review process (testifying without dispute that he had no knowledge of the Student) and generic questions about what type of student may be eligible for placement at Pine Grove. (ECF No. 30-1, PageID.825 (Trans., p. 692); PageID.826 (Trans., p. 696); PageID.827 (Trans., p. 697); PageId.829 (Trans., p. 705)). And Kim Fountain's testimony focused on her decision to not recommend Pine Grove (or involve the ISD) because it was not appropriate based on her generic questions to the Pine Grove principal. (Id., PageID.862-63, Trans., pp. 838-843). Thus, while Pine Grove was mentioned, placement and/or the ISD's role in KPS's decision was not a significant issue to support Plaintiff's claim here that her attorney was confused about the 90-day filing deadline for the ISD decision. In addition, the ALJ's decision on the alleged FAPE denial due to non-placement at Pine Grove focused on KPS – not the ISD. (ECF No. 29-1, PageID.744). Taken collectively, Pine Grove was discussed generally but did not form the basis for any legal conclusion in the ALJ's decision in the KPS due process complaint.

recent Sixth Circuit precedent and this Court's own application of that precedent forecloses holding the ISD liable for G.G.'s claims that the KPS violated the IDEA.

In *Y.A. by Alzandani v. Hamtramck Pub. Sch.*, 137 F.4th 862 (6th Cir. 2025), the Sixth Circuit analyzed whether the Michigan Department of Education ("MDE") could be held liable for a local school district's alleged violation of Title II of the ADA. The Court first noted the general rule that local school districts, not the MDE, "undertake general responsibility for public education[.]" *Id*. at 870. The Court reviewed the various state statutes applicable to local school district board of education decisions. *Id*. And because they are separate political entities, local school districts are amendable to suit because they "remain responsible to their local electorates" and "operate their school largely as they see fit[.]" *Id*. (citations omitted). What "doom[ed]" the plaintiffs' claims against MDE in *Y.A.* was that it was the local school district that allegedly denied certain educational services or benefits and thus "they [did] not have a claim against the State." *Id*.

During its analysis, the Sixth Circuit rejected the argument that MDE could be vicariously liable for a local school district's failure. *Id.*, at 871. Within the ADA context, assessing liability against another public entity would eviscerate the distinction between a state and its various local instrumentalities. *Id*.

The Court then examined this issue of supervisory liability in the context of the IDEA per the plaintiffs' argument. *Id.*, at 872. The IDEA provided that the MDE had "general supervision" over local school districts to ensure compliance with the IDEA's requirements and have a remedial process for parents to asset claims against a school. *Id*. The Court rejected the plaintiffs' contention that this framework meant that the MDE was responsible for a school's failures holding that "oversight alone does not transform a local school into a state school." *Id*. (citation omitted).[2]

---

[2] See also *R.V. v. Rivera*, 220 F. Supp. 3d 588, 594 (E.D. Pa. 2016) ("Where there is an existing

15

This Court recently applied *Y.A.* directly in the context of IDEA claims against the MDE. In *D.L., et al v. Michigan Department of Education*, Case No. 22-cv-00838 (W.D. Mich., Sept. 24, 2025) (ECF No. 103; **Exhibit 3**),[3] the plaintiffs asserted that the MDE was liable under the IDEA, ADA, and § 504 for the purported violations of those Acts by local school districts that the MDE's "deficiencies" ("its complaint process was 'broken'", PageID.2770) enabled. *Id.*, PageID.2757; PageID.2766. This Court held that an action under 20 U.S.C. § 1415(i) (permitting a civil action from an adverse due process decision) "would have to allege and establish something more than IDEA noncompliance on the part of the local educational agency." *Id.*, PageID.2773. "Otherwise, the state would become liable for every failure by the local or intermediate school district in particular IDEA cases. That would effectively impose exactly the kind of *respondeat superior* liability on the State that the Sixth Circuit was keen to avoid in *Hamtramck*." *Id.*

Both *Y.A.* and *D.L.* control the legal issue here. Each held that the general rule is that a supervisory educational agency under the IDEA cannot be held responsible for a local school district's alleged failure to provide FAPE or otherwise implement the IDEA. Plaintiff cannot dispute that the ISD was unaware of Plaintiff's request of KPS to place the Student at Pine Grove during the May 2023 IEP meeting. (ECF No. 30-1, PageID.823, Trans., p. 681; PageID.825, Trans., p. 692). And the then Special Education Director for the ISD never spoke with Plaintiff prior to the IEP meeting. (ECF No. 30-1, PageID.831, Trans., p. 714). Plaintiff also admits that the ISD was not present at the May 2023 IEP meeting. (ECF No. 1, PageID.28, ¶ 195). Since it is

---

LEA that could be held responsible for alleged FAPE violations, then it, and not the SEA, would be the proper party in a due process hearing.") (going on to hold that because of the unique and unprecedented facts in the case (the public academy at issue when out of business) the SEA would be responsible).

[3] Plaintiff's counsel here represented the plaintiffs in *D.L.* and thus is familiar with this Court's holding in that case.

undisputed that the ISD lacked knowledge of the IEP meeting and did not attend the meeting, Plaintiff therefore alleges nothing "more than IDEA noncompliance on the part of" KPS and her attempt to hold the ISD liable fails. Count I should therefore be dismissed for this independent reason.[4]

## III.    Plaintiff fails to state a claim for relief under § 504 and the ADA

Counts III and IV of Plaintiff's Complaint allege disability discrimination claims under Section 504 of the Rehabilitation Act ("§ 504") and the Americans with Disabilities Act ("ADA"). First, these claims must be dismissed because the underlying IDEA claim (on which the ADA and § 504 allegations rest) must be dismissed. Plaintiff's IDEA claim alleged that the ISD denied the Student FAPE by predetermining placement with KPS. That is the same essential allegation for the ADA and § 504 claims. But "a claim under the Americans with Disabilities Act or Rehabilitation Act will not gain traction if it turns solely on an alleged denial of a free appropriate public education." *Bradley v. Jefferson Cnty. Pub. Sch.*, 88 F.4th 1190, 1198 (6th Cir. 2023) (citation omitted). See also *K.I.*, 54 F.4th at 795 (upholding dismissal of ADA and § 504 claims when IDEA claim also dismissed).

Second, if there is a determination that the ADA and § 504 allegations do not arise from the same FAPE denial claims as in the IDEA count, Plaintiff cannot demonstrate a *prima facie* case of discrimination and fails to allege the requisite deliberate indifference by the ISD. Thus,

---

[4] The decisions in *Y.A.* and *D.L.* buttress the ALJ's decision in favor of the ISD that "[i]t was still the local school district that was and is responsible for upholding FAPE." (ECF No. 46-1, PageID.2367). Based on that responsibility of KPS, and because the ISD had not "contracted with" KPS to provide services to the Student, it could not be liable KPS's alleged failure to provide FAPE. (Id.). Plaintiff takes issue with the other MDE decisions the ISD relied on for its motion to dismiss (ECF No. 1, PageID.25-26, ¶ 174). But all presciently held, as later confirmed in *Y.A.* and *D.L.*, that an ISD is not liable for a local school district's noncompliance with IDEA or denial of FAPE. (ECF No. 46-1, PageID.2511-2571).

their claims therefore fail and must be dismissed.

To establish an ADA or § 504 claim, Plaintiff must plead plausible facts that give rise to an inference that the Student was subject to discrimination "by reason" of his disability. *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008). A plaintiff alleging violations of either of the two statutes must first establish a *prima facie* case. That is, they must establish "1) that he is a person with a disability; 2) that he is qualified for the educational opportunity that he seeks despite his disability; and 3) in spite of these qualifications, he has not been given an equal opportunity to secure a similar education as other persons." *Mahaffey ex rel. Mahaffey v. Aldrich*, 236 F. Supp. 2d 779, 790 (E.D. Mich. 2002) (citation, internal quotes, and internal modification omitted).

The standards under the two statutes are similar. For a § 504 claim, a plaintiff must show that the discrimination or exclusion was done "**solely by** reason of his or her disability[.]" *Id.* (quoting 29 U.S.C. § 794(a) (emphasis added)). The ADA requires a showing that the discrimination is "by reason of [a] disability[.]" 42 U.S.C. § 12132. Outside of § 504's use of the word "solely" and that a defendant must be a federally funded entity, "the reach and requirements of both statutes are precisely the same." *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 452–53 (6th Cir. 2008) (citation omitted).

"A plaintiff may allege disability discrimination under two available theories: intentional discrimination and failure to reasonably accommodate." *Knox Cnty., TN v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023). "An intentional discrimination claim lies where the defendant treated someone less favorably on account of his disability; '[p]roof of discriminatory motive is critical.'" *Id.* (citation omitted). A "failure-to-accommodate" claim requires Plaintiff to meet a *prima facie* case demonstrating "(a) the defendant reasonably could have accommodated his disability but refused to do so; (b) this failure to accommodate impeded the plaintiff's ability to participate in, or

benefit from, the subject program; (c) the requested accommodation was reasonable; and (d) the provided accommodation was unreasonable. Moreover, when reviewing this latter 'failure-to-accommodate' disability discrimination claim, courts defer to 'school administrators' educational expertise in reviewing the reasonableness of their selected accommodations.'" *Johnson on behalf of X.M. v. Mount Pleasant Pub. Sch.*, No. 1:22-CV-12638, 2024 WL 3825196, at *21 (E.D. Mich. Aug. 14, 2024) (appeal filed) (citations omitted).

Plaintiff's Complaint speculates that the ISD intentionally discriminated against the Student by allegedly "predetermine[ing]" that Pine Grove was not the proper placement for him. (ECF No. 1, PageID.25, ¶ 175.e.). But Dymowski's unrefuted testimony at the due process hearing was that KPS never initiated the **required** needs review process through the proper channels. (ECF No. 30-1, PageID.823, Trans., p. 681). Fountain's testimony confirmed that KPS did not initiate a needs review with the ISD prior to the IEP meeting. (ECF No. 30-1, PageID.862, Trans., p. 839-40). And her later conversation with the then Pine Grove's principal ("Todd") was not about the Student specifically but only about **generic** information as to whether his "skillset" would be typical of other students in the program. (Id., Trans., p. 841; 842 (calling about placement consideration for "any other student that we would consider")).

There is also no material issue of fact that the ISD was wholly unaware of the May 2023 IEP meeting, KPS's offer of FAPE through its ASD program, or even any specific educational needs or details regarding the Student. Plaintiff cannot demonstrate any discriminatory motive by the ISD. The ISD cannot have intentionally discriminated against the Student if it was unaware of the situation, was not invited to the IEP meeting, and never made any decision or recommendation as to his placement. Thus, the ADA and § 504 claims based on this theory fail.

When considering the failure to accommodate theory, Plaintiff's claim fails the first

element. *Johnson*, 2024 WL 3825196, at *21.  The record in this case is clear that they did not directly request that the ISD make any reasonable accommodation, i.e., that it would consider and/or recommend the Student's placement at Pine Grove. L.G. admitted that she did not send any information to the ISD and neither she nor her attorney invited the ISD to the May 2023 IEP meeting. Exhibit 2, pp. 74-75; p. 83). Not having been presented with a request for a reasonable accommodation, the ISD could not have reasonably accommodated this request outside the Cooperative Agreement's framework and process. *Dequan A., next friend of J.L. v. Whitmer*, No. 23-CV-12675, 2025 WL 2647573, at *5 (E.D. Mich. Sept. 15, 2025) (a complaint that fails to allege that the plaintiff proposed a reasonable accommodation and that such was rejected means plaintiff "is not entitled to relief under Title II of the ADA or section 504 of the Rehabilitation Act.") (footnote omitted). Thus, this theory also fails.

But even if Plaintiff could make out a *prima facie* case for either theory, he fails to both allege and prove deliberate indifference. As recently reiterated by the Supreme Court, the deliberate indifference standard requires that a "defendant disregarded a strong likelihood that the challenged action would result in a violation of federally protected rights." *A.J.T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 345 (2025) (quotation omitted). *A.J.T.* reversed the "bad faith" or "gross misjudgment" standard previously utilized by courts. *Id*. No Sixth Circuit court has substantively analyzed an ADA or § 504 claim after *A.J.T.* But pre-*A.J.T.*, in the context of disability discrimination based on student-on-student harassment, courts in the Sixth Circuit have stated that "school officials act with deliberate indifference when they have knowledge of alleged harassment and respond, or fail to respond, in a manner that is clearly unreasonable in light of the known circumstances." *K.C. by & through T.C. v. Bd. of Educ. of Marshall Cnty. Sch., Benton, Kentucky*, 306 F. Supp. 3d 970, 978 (W.D. Ky. 2018), *aff'd sub nom.* 762 F. App'x 226

(6th Cir. 2019).[5]

There is no material issue that Plaintiff cannot meet this high standard. As discussed above, the record is clear that prior to the May 2023 IEP meeting, the ISD lacked any knowledge that Plaintiff asked KPS to consider Pine Grove as a placement option for the Student. This is because KPS admittedly did not initiate the needs review process with the ISD, and L.G. admitted neither she nor her attorney contacted the ISD to invite it to the meeting. Lacking any knowledge of Plaintiff's preference for Pine Grove or that KPS was considering placing the Student in its own program during the May 2023 IEP meetings, and clearly not being in attendance at that meeting, the ISD cannot have failed to respond in a clearly unreasonable manner. That is, the ISD cannot have disregarded any likelihood that the Student's federal rights would be violated. Thus, Plaintiff's ADA and § 504 claims fail for this additional reason.

## CONCLUSION

Plaintiff does not dispute that he filed this civil action on August 12, 2024, more than three months after the May 7, 2024 deadline under 20 U.S.C. § 1415(i)(2). The ALJ's orders and decision clearly identified a separately docketed due process complaint against the ISD. No equitable reasons exist to excuse the late filing, and the Court must dismiss Plaintiff's Complaint in its entirety.

Even if there is an equitable reason to toll the deadline, the Sixth Circuit's decision in *Y.A. by Alzandani v. Hamtramck Pub. Sch.*, 137 F.4th 862 (6th Cir. 2025), precludes a finding of supervisory liability against the ISD. And Plaintiff cannot demonstrate a *prima facie* case under either the ADA or § 504 nor demonstrate that the ISD, which lacked any relevant knowledge, was

---

[5] The Fifth Circuit has described the standard as a "high bar[.]" *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011) (citation omitted).

deliberately indifferent or responded in a clearly unreasonable manner. The Court should therefore grant the ISD's motion and dismiss all claims with prejudice.

/s/ TRAVIS COMSTOCK
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendant, Kent ISD

DATED: November 21, 2025

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this brief complies with the type-volume limitations of L.Civ. R. 7.2(b)(ii). The motion and brief were prepared in Microsoft Word 365, using a Times New Roman 12 pt. font. Microsoft Word 365 has a function that calculates the number of words in a document. According to that function, there are 7,951 words in the motion and brief.

/s/ TRAVIS COMSTOCK
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendant, Kent ISD

DATED: November 21, 2025

## CERTIFICATE OF ELECTRONIC SERVICE

TRAVIS M. COMSTOCK states that on November 21, 2025, he did serve a copy of **Defendant Kent Intermediate School District's Motion for Summary Judgment** on Plaintiff via the United States District Court electronic transmission system (CM/ECF).

/s/ TRAVIS COMSTOCK
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendant, Kent ISD
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7036
tcomstock@gmhlaw.com
P72025