UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **L.G. obo G.G.** <br><br> Plaintiff, <br><br> v. <br><br> **KELLOGGSVILLE PUBLIC SCHOOLS, et al.,** <br><br> Defendants. | Case No.: 1:24-cv-833 <br><br> Hon. Robert J. Jonker <br><br> **PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT KENT INTERMEDIATE SCHOOL DISTRICT** |
| Elizabeth K. Abdnour (P78203) <br> Coriann Gastol (P74904) <br> Jacquelyn Kmetz (P83575) <br> ABDNOUR WEIKER LLP <br> 325 E. Grand River Ave., Ste. 250 <br> East Lansing, MI 48823 <br> (517) 994-1776 <br> liz@education-rights.com <br> coriann@education-rights.com <br> jacquelyn@education-rights.com <br><br> *Attorneys for Plaintiff* | Timothy J. Mullins (P28021) <br> Travis M. Comstock (P72025) <br> GIARMARCO, MULLINS, & HORTON, P.C. <br> Tenth Floor Columbia Center <br> 101 West Big Beaver Rd. <br> Troy, MI 48084-5280 <br> (248) 457-7036 <br> tmullins@gmhlaw.com <br> tcomstock@gmhlaw.com <br><br> *Attorneys for Defendant Kent ISD* |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT KENT INTERMEDIATE SCHOOL DISTRICT**

INTRODUCTION

This lawsuit dates back to fall of 2021, when Kent Intermediate School District ("Kent ISD," "KISD," or "Defendant") first began denying preschool student G.G. a free and appropriate public education (FAPE) under the Individuals with Disabilities in Education Act (IDEA). Compl., ECF No. 1, PageID.2 at ¶ 2. It culminated in May 2023, when Defendant and Kelloggsville Public Schools (KPS) unilaterally determined that Pine Grove, a placement owned and operated by Defendant, was not an option for G.G. without any input from L.G., G.G.'s mother, or G.G.'s

1

special education Individualized Education Program (IEP) team, in violation of the IDEA *See Id.* at PageID.22, 24, 28 at ¶¶ 157, 168, 189-195. This decision was made despite G.G.'s complete inability to make any appropriate educational progress within KPS and his increasing academic and functional deficits due to Defendant's failure to provide FAPE. *Id.* at PageID.28 at ¶¶ 192-194.

As the Intermediate School District, Defendant was not powerless to address G.G.'s lack of progress or lack of FAPE. In fact, it had a statutory affirmative duty to step in, correct any noncompliance by KPS, and ensure G.G. received FAPE. Inexplicably, Defendant failed to exercise this duty. When L.G. filed a due process complaint against Defendant and KPS for their respective failures to provide G.G. with FAPE, the administrative law judge inappropriately dismissed Defendant as a party to that complaint citing prior decisions that have no basis in statutory or binding case law. As a result, G.G. never received the education he was entitled to under the law and Defendant has never been held accountable for its actions and inactions, resulting in a further loss of FAPE for G.G. and out-of-pocket expenses to L.G., who was forced to place G.G. in a private educational setting just to meet his basic academic and socioemotional needs.

## STATEMENT OF FACTS

Plaintiff L.G. is the parent and legal guardian of G.G. Compl., ECF 1, PageID.4 at ¶ 9. G.G. is a six-year-old child with qualifying disabilities under the IDEA and is therefore entitled to receive special education and related services under the IDEA. *Id.* at PageID.2, 4 at ¶¶ 1, 10. G.G. was enrolled in KPS from September 2022 to June 2023. *See Id.* at PageID.11, 23 at ¶¶ 62, 163. Kent ISD is the intermediate school district (ISD) of which KPS is a constituent district. First Amended Due Process Compl., ECF 43-1, PageID.2176 at ¶ 9. ISDs are Local Education Agencies (LEAs) and therefore responsible for providing FAPE under federal and state law. *Id.* at ¶ 10. Kent

2

ISD was responsible for overseeing KPS and providing services to G.G. from September 2022 to June 2023. *See* Compl., ECF 1, PageID.11, 23 at ¶¶ 62, 163.

The IDEA requires that qualifying students with disabilities receive a free and appropriate education (FAPE). 20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.101(a). To achieve this goal, the IDEA requires that LEAs design and develop an IEP for each qualifying child. 20 U.S.C. §§ 1412(a)(4), 1414(d); 34 C.F.R. §§ 300.112, 300.320-24. Both KPS and the Defendants, Kent ISD, are LEAs responsible for ensuring the provision of a FAPE to G.G. Compl., ECF No. 1, PageID.10 at ¶ 54. KPS is the primary school district in which L.G. and G.G. reside. *Id.* at ¶ 52.

Kent ISD is an intermediate school district which services KPS and provides special education services directly to students through its Special Education Center Programs. *Id.* at PageID.10-11 at ¶¶ 53, 55-57. Kent ISD was responsible for providing a FAPE to G.G. under the IDEA. *Id.* at PageID.10 at ¶ 54. Under M.C.L. 380.1711, ISDs are responsible for developing, establishing, and continually evaluating and modifying a plan for the delivery of special education services for all students under the age of 26 who are residents of constituent districts and who have not graduated from high school. *Id.* at PageID.27 at ¶ 183; M.C.L. 380.1711(1)(a), (f). M.C.L. 380.1711 does not limit an ISD's obligation only to those students that are currently enrolled in one of the ISD programs or classrooms. *Id.* at ¶ 184.

KPS and Kent ISD failed to meet G.G.'s educational needs during the 2022-2023 and 2023-2024 school years. First Amended Due Process Compl., ECF No. 43-1, PageID.2175-2196 at ¶¶ 1-105. As outlined in detail in the Complaint, KPS and Kent ISD, among other things, failed to address L.G.'s concerns about the inadequacy of G.G.'s IEPs, failing to ensure G.G.'s IEPs for the 2022-2023 and 2023-2024 school years were appropriate, and unilaterally denying G.G.'s placement at Pine Grove Learning Center, operated by Kent ISD. *Id.* at PageID.2196-2197 at ¶¶

3

1-8. Therefore, on January 11, 2024, L.G. filed an Amended Due Process Complaint (DPC) against both KPS and Kent ISD. Compl., ECF No. 1, PageID.24 at ¶ 169. On January 22, 2024, Kent ISD filed a Motion to Dismiss the DPC. *Id.* at ¶ 170. Kent ISD argued that it was not responsible for the identification, placement, or provision of FAPE to G.G. because it was not a LEA. *Id.* at ¶ 171. In support of its Motion, Kent ISD attached five opinions attached by MOAHR administrative law judges ("ALJs") serving as special education due process Hearing Officers, all of which wrongly concluded that ISDs are not LEAs and therefore are not responsible for providing FAPE to students on IEPS. *Id.* at PageID.24-25 at ¶ 174.

On February 7, 2024, the Hearing Officer issued an order (the "February 7 order") erroneously dismissing Kent ISD as a party to the due process hearing based on incorrect legal arguments and wrongly decided prior caselaw cited by Kent ISD in its Motion to Dismiss. *Id.* at PageID.26 at ¶ 176. The February 7 order wrongly held that the responsibility of providing a FAPE resides solely with local school districts, that an ISD may only be responsible for the provision of FAPE if it has taken on direct responsibility for the education of a disabled student, which is contrary to Michigan law that contemplates a shared responsibility between local school districts and ISDs. *Id.* at PageID.26-27 at ¶¶ 176-187. The due process hearing took place in March 2024 regarding Plaintiff's claims against KPS only. *Id.* at PageID.28 at ¶ 188. On May 15, 2024, the Hearing Officer issued a final decision and order (the "May 15 order") finding that KPS had committed procedural violations of IDEA, but only one substantive violation denying G.G. FAPE. *Id.* at PageID.30 at ¶ 202. As a result, the May 15 order granted G.G. only a paltry 15 hours of compensatory speech therapy services via a speech generating device. *Id.* at ¶ 204. G.G. timely filed this appeal of that final order.

## STANDARD OF REVIEW

Summary judgment should be granted if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) (citing Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment "in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ARGUMENT

**A. Kent ISD should not have been dismissed from the due process proceeding.**

In its motion for summary judgment during the due process proceedings, Defendant argued, "In Michigan, a student's local district of residence, not the ISD, is responsible for identifying students with disabilities, conducting evaluations, and providing special education programs and services." Def. KISD's Mot. to Dismiss, ECF No. 46-1, PageID.2507. In support of its arguments, it cited to the Revised School Code. *Id.* at PageID.2507-2508. However, Kent ISD only paints part of the picture, as the Michigan Department of Education (MDE), which is responsible for oversight and implementation of the IDEA in Michigan, has stated its position that ISDs are considered LEAs in Michigan, as Plaintiff argued in her response to Defendant's Motion to Dismiss during the due process proceedings. Pet.'s Resp. to KISD's Mot. to Dismiss, ECF No. 46-1, PageID.2383-2386. Plaintiff also argued throughout her response that here, Defendants are

5

even more responsible for the provision of FAPE to G.G. due to their operation of Pine Grove, which Plaintiff had specifically requested as a placement for G.G. and which Defendants with KPS had unilaterally improperly denied outside of the IEP process. Pet.'s Resp. to KISD's Mot. to Dismiss, ECF No. 46-1, PageID.2375-2393. The Hearing Officer rejected those arguments in her February 7, 2024, order. Decision and Order Granting KISD's Mot. to Dismiss, ECF No. 46-1, PageID.2363-2367. That decision is wrong.

The IDEA is clear that its provisions apply to ISDs:

> **Applicability of this part to State and local agencies.**
>
> (a) *States.* This part applies to each State that receives payments under Part B of the Act, as defined in § 300.4.
>
> (b) *Public agencies within the State.* The provisions of this part—
>
>> (1) Apply to all political subdivisions of the State that are involved in the education of children with disabilities, including:
>>
>>> (2) The State educational agency (SEA).
>>> (ii) Local educational agencies (LEAs), educational service agencies (ESAs), and public charter schools that are not otherwise included as LEAs or ESAs and are not a school of an LEA or ESA.
>>>
>>> (iii) Other State agencies and schools (such as Departments of Mental Health and Welfare and State schools for children with deafness or children with blindness).
>>>
>>> (iv) State and local juvenile and adult correctional facilities; and
>>
>> (2) Are binding on each public agency in the State that provides special education and related services to children with disabilities, regardless of whether that agency is receiving funds under Part B of the Act.

6

34 C.F.R. § 300.2 (emphasis in original). Further, the IDEA's special education due process hearing procedural safeguards explicitly contemplate a parent filing a due process complaint against entities other than LEAs:

> **Response to complaint**
>
> **(i) Local educational agency response**
>
> **(I) In general**
>
> If the local educational agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, such local educational agency shall, within 10 days of receiving the complaint, send to the parent a response….
>
> **(ii) Other party response**
>
> Except as provided in clause (i), the non-complaining party shall, within 10 days of receiving the complaint, send to the complaint a response that specifically addresses the issues raised in the complaint.

20 U.S.C. § 1415©(2)(B) (emphasis in original). If Congress had not intended for parents to be able to file due process complaints against entities other than LEAs, such as ISDs and ESAs, it would have had no reason to include the language of 20 U.S.C. § 1415(c)(2)(B)(ii) in the IDEA, as there would be no "other party" to respond to a complaint.

A state that receives funding under IDEA must demonstrate that it has in effect policies and procedures that ensure "[a] [FAPE] is available to all children with disabilities residing in the State . . . including children with disabilities who have been suspended or expelled from school." 20 USC § 1412(a)(1)(A). The State Educational Agency's ("SEA")[1] responsibilities include ensuring "(i) the requirements of [IDEA] are met" and that "(ii) all educational programs for children with

---

[1] In Michigan, the SEA is the Michigan Department of Education.

7

disabilities in the State, including all such programs administered by any other State agency or local agency . . . (II) meet the educational standards of the [SEA] . . . ." Id. at § 1412(a)(11)(A). This provision "incorporates by reference state standards, be they substantive or procedural, that exceed the federal basic floor of meaningful, beneficial educational opportunity." *Town of Burlington v. Dep't of Educ. for Com. Of Mass.*, 736 F.2d 773, 789 (1st Cir. 1984), aff'd sub nom *Sch. Comm. Of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985), referencing 20 U.S.C. § 1401(18)(B) and *Bd. of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 203 (1982).

Michigan has promulgated several legal provisions that "exceed the federal basic floor of meaningful, educational opportunity." Pursuant to 34 C.F.R. § 300.705(a), 815, Michigan Administrative Rules for Special Education ("MARSE") Part 7 requires that each ISD in Michigan submit a plan ("ISD Plan") for special education, which must be approved by the district's superintendent, which corresponds to the assurances that each LEA must provide to receive federal funding. MARSE R. 340.1831. The same part prescribes that:

> (2) The department shall establish monitoring procedures, criteria, and evaluation activities to ensure that minimum standards are being achieved by all public agencies.
>
> (2) Each intermediate school district shall implement monitoring procedures and evaluation methods developed by the department to ensure that the standards and criteria established are being achieved by the intermediate school district, their constituent local school districts, and their public school academies.

MARSE R. 340.1839. Through these additional obligations concerning monitoring and evaluation procedures, the State of Michigan demonstrates that it views the ISD, in this case IISD, as an integral part of ensuring that state educational standards are met and thus ensuring that the requirements of IDEA are met.

8

IDEA's regulations also require that the SEA, as part of its general supervisory responsibilities under 34 C.F.R. §§ 300.149 and 300.600, must adopt written procedures for remedies of an ISD's or local district's denial of appropriate services. 34 C.F.R. § 300.151(a). When a failure to provide appropriate services has been identified, the SEA must address: (1) The failure to provide appropriate services, including corrective action appropriate to address the needs of the child (such as compensatory services or monetary reimbursement); and (2) Appropriate future provision of services for all children with disabilities. 34 C.F.R. § 300.151(b).

In Michigan, the special education state complaint process requires an ISD's active involvement. The ISD must assist in monitoring and "[t]he public agency shall submit proof of compliance to the department and the intermediate school district documenting that the violation is corrected within the time line specified in the corrective action." MARSE R. 340.1854(3). Further, MARSE provides for reimbursement for special education programs and services in compliance with the MARSE and the ISD Plan approved by the Michigan Department of Education ("MDE"). MARSE R. 340.1809. As a result, IDEA, state law, the corresponding implementing regulations, and practice have created a system where an ISD, such as IISD, is responsible for ensuring a FAPE. Among an ISD's responsibilities are "investigating complaints made about the special education program and services provided by constituent districts" and "maintaining a record of all students who are eligible for special education programs and services within the boundaries of one of its constituent districts." Def. KISD's Mot. to Dismiss, ECF No. 46-1, PageID.2507 (citing M.C.L. 380.1711). ISDs are also responsible for maintaining a "record of…the special education programs or services in which the student with a disability is participating…," M.C.L. 380.1711(1)(f), "[h]ave the authority to place in appropriate special education programs or services a student with a disability for whom a constituent district is

9

required to provide special education programs or services…," M.C.L. 380.1711(1)(g), and operating "the special education programs or services or contract for the delivery of special education programs or services by local school district boards, in accordance with section 1702, as if a local school district under section 1751," M.C.L. 380.1711(1)(i).

In addition to the testimony cited in the Complaint, MDE has issued guidance demonstrating its position that ISDs are LEAs in Michigan:

> MDE provides IDEA Part B subgrants to each eligible Intermediate School District (ISDs). <u>IDEA Part B Local Education Agency (LEA) eligibility requirements apply to ISDs or Education Service Agencies as the LEA (subrecipient) receiving the IDEA Part B grant and responsible for ensuring that the requirements of this part are met.</u> A condition of eligibility for an IDEA Part B subgrant, is that in providing for the education of children with disabilities within its jurisdiction, the ISD must have in effect policies, procedures, and programs that are consistent with the State policies and procedures established as required in IDEA §1412(a).

MICH. DEP'T OF EDUC., MICHIGAN DEPARTMENT OF EDUCATION (MDE) AND INTERMEDIATE SCHOOL DISTRICT (ISD) GENERAL SUPERVISION RESPONSIBILITIES at 2 (Mar. 2003), https://training.catamaran.partners/wp-content/uploads/2025/04/Michigan-Department-ofEducation-MDE-and-Intermediate-School-District-ISD-General-Supervision-Roles.pdf (emphasis added).

Congress allowed states to determine how they would comply with IDEA. The United States Department of Education, Office of Special Education and Rehabilitative Services has explained, "[a]s part of its general supervisory responsibility, the [State Educational Agency], through its laws, regulations, and policies, establishes which public agencies have the legal and fiscal responsibility to serve children with disabilities." Letter to Hokenson, Feb. 4, 2009 (Ex. 1). Through the structure of ISDs, Michigan has explicitly placed the burden of IDEA compliance upon both individual school districts and ISDs.

10

For these reasons, Plaintiff is entitled to summary judgment as a matter of law. The ALJ should not have dismissed Defendants as a party to the due process proceedings as they were clearly a proper party under the relevant statutes and binding case law. There is no genuine issue of material fact for which a jury could find that, under the legal framework, Defendants did not have a legal obligation to ensure G.G. received FAPE and Plaintiff is entitled to present her case on its merits to a due process hearing.

**B. The Hearing Officer's decision to dismiss KISD improperly denied Plaintiff of her right to a decision on her due process complaint under the IDEA.**

The IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas County Sch. Dist. RE-1*, 580 U.S. 386, 403 (2017). "[E]very child should have the chance to meet challenging objectives," and the "adequacy of a given IEP turns on the unique circumstances of the child for whom it was created." *Id*. at 402, 404. In assessing whether an educational authority has provided a FAPE, a "reviewing court may fairly expect . . . to [hear] a cogent and responsive explanation for [its] decisions that show the IEP" meets the standard. *Id.* at 404.

When a student challenges the appropriateness of their IEP, courts look to whether the IEP (1) complied with the procedures set forth in the IDEA and (2) whether it was "reasonably calculated to enable the [student] to receive educational benefits." *Board of Ed. Of Hendrick Hudson Central School Dist., Westchester Cty. V. Rowley*, 458 U.S. 176, 206-07 (1982). Plaintiff's DPC alleged that KISD failed to ensure that G.G. was being provided a FAPE by KPS —with the result being that G.G.'s IEP was not "tailored to [his] unique needs." *Rowley*, 458 U.S. at 181.

Under the IDEA, Plaintiff was entitled to a decision from a hearing officer as to whether her claim against KISD had merit. The ALJ's incorrect decision to dismiss KISD from the due

11

process proceedings denied Plaintiff her right to a decision under the IDEA pursuant to 34 C.F.R. §§ 300.507-515. 34 C.F.R. § 300.507 clearly states "a parent or a public agency may file a due process complaint on *any* of the matters described in §300.503(a)(1) and (2) (relating to the identification, evaluation *or educational placement of a child with a disability, or the provision of FAPE to the child*)." (Emphasis added). Neither 34 C.F.R. § 300.503 nor 34 C.F.R. § 300.507 limits this to only matters taken (or not taken) by the student's specific school district. Under 34 § C.F.R. 300.511, "Whenever a due process complaint is received under §300.507 or §300.532, the parents or the LEA involved in the dispute *must have an opportunity for an impartial due process hearing*." (Emphasis added).

As noted above, if parents could only file due process complaints against their specific school district, and not other relevant agencies responsible for a student's FAPE, such as ISDs and ESAs, Congress would have had no reason to include the language of 20 U.S.C. § 1415©(2)(B)(ii) in the IDEA for "other party response" to due process complaints. Further, in prescribing the hearing rights for a due process hearing, 34 C.F.R. § 300.512 includes the language, "*Any party* to a hearing conducted pursuant to §§300.507 through 300.513 . . .," further clarifying that school districts are not the only proper parties to a due process hearing. (Emphasis added).

Under 34 C.F.R. § 300.513(a)(1), "a hearing officer's determination of whether a child received FAPE must be based on substantive grounds," and a denial of FAPE may only be found for procedural violations if there was a resulting substantive harm to the child's receipt of FAPE. *See* 34 C.F.R. § 300.513(a)(2). However, "Nothing in paragraph (a) of this section shall be construed to preclude a hearing officer from ordering an LEA *to comply with procedural requirements* under §§300.500 through 300.536." 34 C.F.R. § 300.513(a)(3) (emphasis added).

Here, Plaintiff filed an amended due process complaint against KISD directly related to G.G.'s educational placement and receipt of FAPE for the 2022-2023 and 2023-2024 school years, pursuant to 34 C.F.R. § 300.507. *See* First Amended Due Process Compl., ECF No. 43-1, PageID.2174-2197. These allegations stemmed from KISD's failure to ensure G.G.'s receipt of FAPE from KPS during the 2022-2023 and 2023-2024 school years, and due to their participation in unilaterally denying G.G.'s educational placement for the 2023-2024 school year outside of the IEP process. *Id*. Therefore, under 34 C.F.R. § 300.511, the SEA was *required* to hold an impartial due process hearing regarding Plaintiff's due process complaint. Even if the ALJ ultimately determined that, because KISD was not directly providing G.G. programs and services, it was not responsible for any violation of FAPE, as indicated by the ALJ's February 7, 2024 order dismissing KISD (*see* Decision and Order Granting KISD's Mot. to Dismiss, ECF No. 46-1, PageID.2360-2367), the hearing officer was required to hold a hearing on the merits. Per 34 C.F.R. § 300.513, if the hearing officer were to find only procedural violations, nothing would preclude him or her from "ordering an LEA to comply with procedural requirements." The ALJ's decision to improperly dismiss KISD from the due process proceedings denied Plaintiff her right to a due process hearing and decision on the merits, as required by law.

For these reasons, Plaintiff is entitled to summary judgment as a matter of law. The ALJ should not have dismissed Defendants as Plaintiff was entitled to a due process hearing and decision under the relevant statutes and binding case law. There is no genuine issue of material fact for which a jury could find that, under the legal framework, Defendant did not have a legal obligation to ensure G.G. received FAPE and Plaintiff is entitled to present her case on its merits to a due process hearing.

**CONCLUSION AND RELIEF REQUESTED**

For the reasons set forth above, Plaintiff requests that this Court issue an order granting Plaintiff summary judgment under Federal Rule of Civil Procedure 56, remanding this case for a Due Process Hearing against Defendant Kent ISD, and granting Plaintiff such further relief as the Court deems just and appropriate.

>  Respectfully submitted,
>  ABDNOUR WEIKER LLP
>
>  */s/ Elizabeth K. Abdnour*_____
>  Elizabeth K. Abdnour (P78203)
>  Coriann Gastol (P74904)
>  Jacquelyn Kmetz (P83575)
>  325 E. Grand River Ave., Ste. 250
>  East Lansing, MI 48823
>  (517) 994-1776
>  liz@education-rights.com
>  coriann@education-rights.com
>  jacquelyn@education-rights.com
>
>  *Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Brief complies with the limits set forth in LCivR 7.2(b)(i). Further, based on the Word Count function of Microsoft Word for Mac word processing software, applied to include all include headings, footnotes, citations and quotations, but not to include the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits, I certify that this Brief contains 3,911 words.

>  */s/ Elizabeth K. Abdnour*_____

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2025, I filed this Document by use of this Court's ECF system, which will serve copies to all counsel of record.

*/s/ Elizabeth K. Abdnour*_____
