UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L.G. o/b/o G.G.,

    Plaintiff/Appellant/Petitioner,      Judge Robert J. Jonker
                                                             Magistrate Sally J. Berens
v                                                                No. 24-833

KELLOGGSVILLE PUBLIC SCHOOLS and    MOAHR Case No. DP-23-0017
KENT INTERMEDIATE SCHOOL DISTRICT,   MOAHR Case No. DP-24-0005

    Defendants/Appellees/ Respondents,

_____/

| | |
|---|---|
| ELIZABETH K. ABDNOUR (P78203) | TIMOTHY J. MULLINS (P28021) |
| CORIANN GASTOL (P74904) | TRAVIS M. COMSTOCK (P72025) |
| ABDNOUR WEIKER LLP | GIARMARCO, MULLINS & HORTON, P.C. |
| *Attorneys for Plaintiff* | *Attorneys for Defendant Kent ISD* |
| 500 E. Michigan Ave., Suite 130 | 101 W. Big Beaver Road, 10th Floor |
| Lansing, MI 48912 | Troy, MI 48084-5280 |
| (517) 994-1776 | (248) 457-7020 |
| liz@education-rights.com | tmullins@gmhlaw.com |
| coriann@education-rights.com | tcomstock@gmhlaw.com |

**DEFENDANT KENT INTERMEDIATE SCHOOL DISTRICT'S RESPONSE IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

STANDARD OF REVIEW .................................................................................................. 1

COUNTER-STATEMENT OF FACTS ................................................................................ 2

LEGAL ANALYSIS ............................................................................................................ 4

I.     The ISD was properly dismissed because it is not liable for KPS's alleged denial of FAPE ............................................................................................... 4

II.    Plaintiff received a decision on the merits from the ALJ ............................... 8

CONCLUSION .................................................................................................................. 10

CERTIFICATE OF COMPLIANCE ................................................................................... 11

# INDEX OF AUTHORITIES

**Cases**

*ABB Paint Finishing, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*,
223 Mich. App. 559, 567 N.W.2d 456 (1997)...............................................................................9

*Anderson v Liberty Lobby, Inc.*, 477 U.S. 242 (1986)...................................................................3

*Bay City Educ. Ass'n v. Bay City Pub. Sch.*, 430 Mich. 370, 422 N.W.2d 504 (1988)...............7

*D.L., et al v. Michigan Department of Education*, Case No. 22-cv-00838
(W.D. Mich., Sept. 24, 2025)....................................................................................................6,7,8

*Focuspoint Int'l Inc. v. Baldeo*, No. 1:20-CV-2019, 2023 WL 2756986
(N.D. Ohio Apr. 3, 2023)...............................................................................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)..................................1

*Moore v. Philip Morris Cos.*, 8 F.3d 335 (6th Cir. 1993).............................................................2

*R.V. v. Rivera*, 220 F. Supp. 3d 588 (E.D. Pa. 2016)..................................................................5

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) ....................................................1

*Y.A. by Alzandani v. Hamtramck Pub. Sch.*, 137 F.4th 862 (6th Cir. 2025)...................1,5,6,7,8

**Statutes**

20 U.S.C. § 1401(5)(1)(A)(i) .........................................................................................................2

20 U.S.C. § 1401(19)(A)(i)............................................................................................................2

20 U.S.C. § 1414(a), (b)................................................................................................................3

20 U.S.C. § 1415(f)(1)(E) .............................................................................................................9

20 U.S.C. § 1415(i) .......................................................................................................................6

Mich. Comp. Laws 380.1711(1)(a), (f).........................................................................................4

Mich. Comp. Laws 380.1751(1) ...................................................................................................3

Mich. Comp. Laws 380.1751(1)(a), (b) ........................................................................................3

Mich. Comp. Laws 380.1751(1), (1)(a), and (b) .........................................................................4

**Rules**

MARSE R 340.1839 ...................................................................................................................6

MARSE R 340.1852(1) .............................................................................................................7

MARSE R 340.1853(1) .............................................................................................................7

Mich. Court Rule 2.116(C)(8) ...................................................................................................9

**Regulation**

Mich. Admin. Code 792.10129..................................................................................................9

## INTRODUCTION

Plaintiff L.G. **admits** that the ALJ determined in the underlying due process decision that Defendant Kent Intermediate School District ("the ISD") (1) "was **not** directly providing G.G. [with any] programs [or] services" under the IDEA and (2) "was **not** responsible for any violation of FAPE[.]" These factual admissions being undisputed, she nonetheless asserts that the ALJ was "required to hold a hearing **on the merits**." (ECF No. 62-1, PageID.2893 (emphases added)). This assertion is legally erroneous.

Contrary to Plaintiff's various statutory and regulatory citations, which are inapposite, the ISD is not liable under a supervisory liability theory for Kelloggsville Public Schools' ("KPS") allegedly violation of G.G.'s right to FAPE under the IDEA. As argued in the ISD's own motion for summary disposition (ECF No. 61), the Sixth Circuit's recent decision in *Y.A. by Alzandani v. Hamtramck Pub. Sch.*, 137 F.4th 862 (6th Cir. 2025), persuasively rejects this assertion. And since the ALJ **made a decision on the merits** – i.e., that Plaintiff **failed to state a claim for relief** since the ISD did not provide services directly to G.G. nor did KPS contracted with the ISD for those services – there is no legal or factual basis for "remanding" (ECF No. 62-1, PageID.2984) this Complaint back to the ALJ for another, duplicative decision on the merits.

## STANDARD OF REVIEW

Summary judgment should be granted if the pleadings and evidence "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). In response, the non-moving party cannot

merely rest on the pleadings. *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-340 (6th Cir. 1993).

## COUNTER-STATEMENT OF FACTS[1]

The ISD may, on **rare** occasions, be responsible for directly providing programs and services to a student found eligible under the IDEA. But the overarching rule under federal and state statutory and regulatory provisions is that it is the local school district in which such a student resides that is primarily responsible for providing any required programs and services. Only where a local school district of residence, such as KPS, contracts with the ISD to directly provide the services to a particular student could the ISD potentially be liable for an alleged violation of the IDEA or deprivation of FAPE (free and appropriate public education) to that particular student.

The starting point statutorily is the IDEA. The ISD fits best into the IDEA's definition of an "educational service agency" ("ESA") because it is authorized by Michigan law to "develop, manage, and provide services or programs **to LEAs**[.]" 20 U.S.C. § 1401(5)(1)(A)(i) (emphasis added). Notably the plain language lacks any directive that an ESA must "provide services and programs" to students at an elementary or secondary school generally or to a particular student specifically.

A "local educational agency" ("LEA"), on the other hand, is "a public board of education" created by state law "for either **administrative control** or direction of . . . public elementary schools or secondary schools . . . ." 20 U.S.C. § 1401(19)(A)(i) (emphasis added). And while a

---

[1] For brevity, the ISD incorporates by reference the Factual and Procedural Background section in its pending Motion for Summary Judgment. (ECF No. 61, PageID.2807-2812). Disputed facts are set forth in this section.

2

LEA can include an ESA, the plain language of the definition points to a LEA as being the entity with the administrative control for the operation of an elementary or secondary school. This is supported by additional statutory provisions requiring a LEA to conduct an initial or reevaluation of a student suspected of having a disability typically through a parental request that includes parental consent. 20 U.S.C. § 1414(a), (b). An ESA (while potentially a LEA) like the ISD does not have administrative control of an elementary or secondary school such that a parent of student enrolled at their local school district of residence, i.e., the operative LEA, would request the ISD to conduct an initial or revaluation of their student.

This is further buttressed by state law. Michigan's Revised School Code plainly states that a local school district (i.e., KPS), as opposed to the ISD, "shall provide special education programs and services designed to **meet the individual needs of each student with a disability in its district** on record under section 1711 for whom an appropriate educational or training program can be provided in accordance with the intermediate school district special education plan[.]" Mich. Comp. Laws 380.1751(1) (emphasis added). It is therefore the local school district of residence, a LEA, that must meet the special education needs of each student residing in its district. G.G. resided in KPS's district at the relevant time. (ECF No. 1, PageID.10, ¶ 54; ECF No. 62-1, PageID.2973).

The local level LEA is required to meet those special education needs by either (1) operating the requisite "special education program or service" or (2) contracting with its ISD (the supervisory ESA) or another educational entity "for the delivery of special education programs or services" required by a student in its district. Mich. Comp. Laws 380.1751(1)(a), (b). It is the "intermediate school board['·]s" responsibility, as an ESA or supervisory LEA, to "[d]evelop, establish, and continually evaluate and monitor . . . a plan for" all the students that reside in its

3

constituent local level LEAs. Mich. Comp. Laws 380.1711(1)(a), (f).

The key is that this "plan" is developed and established "in cooperation with its **constituent districts**" and sets forth whether the ISD will operate the special education programs or "**contract** for the delivery of special education services by local school district boards[.]" *Id*. at (1)(a) (emphasis added) and (1)(i) (emphasis added). That contract between the ISD and KPS is the Cooperative Agreement. (ECF No. 61-2). And nothing in the plain language of § 380.1711 even remotely requires an ISD to directly provide services or programs to a student that is enrolled in a local level LEA that has not contracted with it for the provision of the same for a particular student, which is plainly required of the LEA in Mich. Comp. Laws 380.1751(1), (1)(a), and (b).

The ALJ's decision (ECF No. 46-1) properly applied these statutory provisions. The ALJ first determined that, regardless of the speculation that the ISD and KPS had a discussion about the placement of G.G., the administrative record lacked any evidence that the ISD "had ever taken on any responsibilities to provide FAPE" to G.G. (Id., PageID.2365, 2367). The ALJ also determined that there was "nothing" in the record showing that the ISD contracted with KPS "to assume any responsibility" for providing necessary programs or services to G.G. (Id., PageID.2367). For that reason, the ISD was not a proper party because Plaintiff "fail[ed] to state a claim" for relief against the ISD. (Id., PageID.2367).

## LEGAL ANALYSIS

**I.   The ISD was properly dismissed because it is not liable for KPS's alleged denial of FAPE.**

Plaintiff asserts that Michigan special education regulations "requires" the ISD's "active involvement" with respect to the provision of FAPE to G.G. (ECF No. 62-1, PageID.2979). This purportedly includes "ensuring a FAPE[,]" presumably in reference to G.G. (Id.). But recent Sixth Circuit precedent and this Court's own application of that precedent preclude holding the ISD

4

liable for G.G.'s claims that the KPS violated the IDEA.

In *Y.A. by Alzandani v. Hamtramck Pub. Sch.*, 137 F.4th 862 (6th Cir. 2025), the Sixth Circuit analyzed whether the Michigan Department of Education ("MDE") could be held liable for a local school district's alleged violation of Title II of the ADA. The Court first noted the general rule that local school districts, not the MDE, "undertake general responsibility for public education[.]" *Id*. at 870. The Court reviewed the various state statutes applicable to local school district board of education decisions. *Id*. And because they are separate political entities, local school districts are amendable to suit because they "remain responsible to their local electorates" and "operate their school largely as they see fit[.]" *Id*. (citations omitted). What "doom[ed]" the plaintiffs' claims against MDE in *Y.A.* was that it was the **local school district** that allegedly denied certain educational services or benefits and thus "they [did] not have a claim against the State." *Id*.

During its analysis, the Sixth Circuit **rejected** the argument that MDE could be vicariously liable for a local school district's failure. *Id*., at 871. Within the ADA context, assessing liability against another public entity would eviscerate the distinction between a state and its various local instrumentalities. *Id*.

The Court then examined this issue of supervisory liability in the context of the IDEA per the plaintiffs' argument. *Id.*, at 872. The IDEA provided that the MDE had "general supervision" over local school districts to ensure compliance with the IDEA's requirements and have a remedial process for parents to asset claims against a school. *Id*. The Court **rejected** the plaintiffs' contention that this framework meant that the MDE was responsible for a school's failures holding that "oversight alone does not transform a local school into a state school." *Id*. (citation omitted).[2]

---

[2] See also *R.V. v. Rivera*, 220 F. Supp. 3d 588, 594 (E.D. Pa. 2016) ("Where there is an existing LEA that could be held responsible for alleged FAPE violations, then it, and not the SEA, would be the proper party in a due process hearing.") (going on to hold that because of the unique and

5

This Court recently applied *Y.A.* directly in the context of IDEA claims against the MDE. In *D.L., et al v. Michigan Department of Education*, Case No. 22-cv-00838 (W.D. Mich., Sept. 24, 2025) (ECF No. 62-4), the plaintiffs asserted that the MDE was liable under the IDEA, ADA, and § 504 for the purported violations of those Acts by local school districts that the MDE's "deficiencies" ("its complaint process was 'broken'", PageID.2770) enabled. *Id.*, PageID.2757; PageID.2766. This Court held that an action under 20 U.S.C. § 1415(i) (permitting a civil action from an adverse due process decision) "would have to allege and establish something more than IDEA noncompliance on the part of the local educational agency." *Id.*, PageID.2773. "Otherwise, the state would become liable for every failure by the local or intermediate school district in particular IDEA cases. That would effectively impose exactly the kind of *respondeat superior* liability on the State that the Sixth Circuit was keen to avoid in *Hamtramck*." *Id.*

Both *Y.A.* and *D.L.* control the legal issue here. Like in *Y.A.*, Plaintiff's motion for summary judgment is "doom[ed]" because the ISD admittedly never provided any services directly to G.G. and also admittedly was not involved in the operative IEP meeting at which KPS offered the alleged inappropriate place. There is no material issue of fact on either of those two points.

In addition, both cases hold that the general rule is that a supervisory educational agency under the IDEA cannot be held responsible for a local school district's alleged failure to provide FAPE or otherwise implement the IDEA. Here, that means that the ISD – either in its capacity as a regional ESA or as a supervisory LEA – cannot be held liable for KPS's alleged failures.[3]

---

unprecedented facts in the case (the public academy at issue when out of business) the SEA would be responsible).

[3] The ISD can agree that the Michigan's Administrative Rules for Special Education ("MARSE) generally provide that it is involved in "establishing" or "monitoring" LEAs, but the Rule Plaintiff cites applies only to "minimum standards" or "the standards and criteria". MARSE R 340.1839. But MARSE does not require the "ISD's active involvement" in ongoing, daily monitoring of a LEA's implementation of a particular student's IEP for possible IDEA violations. (ECF No. 62-1,

The decisions in *Y.A.* and *D.L.* also buttress the ALJ's decision in favor of the ISD that "[i]t was still the local school district that was and is responsible for upholding FAPE." (ECF No. 46-1, PageID.2367). Based on KPS' responsibility, and because the ISD had not "contracted with" KPS to provide services to G.G., the ALJ held that the ISD could not be liable for KPS's alleged failure to provide FAPE. (Id.).

The ALJ also properly distinguished *Bay City Educ. Ass'n v. Bay City Pub. Sch.*, 430 Mich. 370, 422 N.W.2d 504, 507 (1988), because unlike here, that local school district transferred its responsibility to provide special education services and programs for its students to the intermediate school district. *Id*., at 373, 377-78.[4] In addition, the administrative decisions that the ISD cited in its motion to dismiss all presciently held, as later confirmed in *Y.A.* and *D.L.*, that an ISD is not liable under the theory of supervisory liability for a local school district's alleged noncompliance with IDEA or denial of FAPE. (ECF No. 46-1, PageID.2511-2571).

Factually, the Plaintiff cannot dispute that the ISD was unaware of Plaintiff's request of

---

PageID.2979). This would be practically impossible and unworkable for the ISD since it has thousands of disabled students spread across its many local LEAs. Instead, when the ISD receives an allegation of a violation by KPS or another LEA, it forwards the complaint on to the MDE. MARSE R 340.1852(1). And while the ISD could potentially be asked by MDE to investigate such a filed state complaint, MARSE R 340.1853(1), MDE position is that it is its role to investigate all state complaints. See chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.michigan.gov/mde/-/media/Project/Websites/mde/specialeducation/DRO/StateComplaints_ProceduresModelForms.pdf (p. 4 ("It is the responsibility of MDE to resolve all state complaints that meet the requirements of the IDEA and are filed with the MDE OSE in accordance with these procedures.")). And there is not material issue of fact that Plaintiff neither filed a state complaint (as opposed to a due process complaint) against the ISD nor made any verbal complaint of KPS's alleged violations. R 340.1852(1).

[4] To the extent that the *Bay City* Court stated that an ISD may not "completely terminate its statutory obligation" to special education students in a local school district, *id*., at 378, it was not opining on the same issue as presented here, i.e., whether the ISD can be found to have supervisory liability for a particular student at an LEA that it neither directly provided services to or had accepted that responsibility from the LEA via a contract.

KPS to place the Student at Pine Grove during the May 2023 IEP meeting. (ECF No. 30-1, PageID.823, Trans., p. 681; PageID.825, Trans., p. 692). And the then Special Education Director for the ISD never spoke with Plaintiff prior to the IEP meeting. (ECF No. 30-1, PageID.831, Trans., p. 714). Plaintiff also admits that the ISD was not present at the May 2023 IEP meeting. (ECF No. 1, PageID.28, ¶ 195).

Since it is undisputed that the (1) ISD lacked knowledge of the IEP meeting and (2) did not attend the meeting, and (3) never took on any responsibility to directly provide FAPE to G.G. or (4) otherwise contract with KPS to do so, there is no material issue of that that Plaintiff therefore alleges nothing "more than IDEA noncompliance on the part of" KPS. *D.L.*, ECF NO. 62-4, at PageID.2773. As the ALJ properly determined, supported by *Y.A.* and *D.L.*, this fails to state a claim for relief. The ALJ properly dismissed Plaintiff's due process complaint against the ISD. And Plaintiff's motion for summary judgment seeking a remand should be denied, and the ISD's motion should be granted. (ECF 62; 62-1).[5]

## II.    Plaintiff received a decision on the merits from the ALJ.

Plaintiff's last argument is that the ALJ's dismissal of her due process complaint robbed her of the right to have "a hearing on the merits." (ECF No. 62-1, PageID.2983). That is, that she "was entitled to a decision" from the ALJ "as to whether her claim against [the ISD] **had merit**."

---

[5] Although Plaintiff attaches as an exhibit a 2009 letter from the US Department of Education Office of Special Education and Rehabilitative Services (ECF No. 62-2), she does not specifically rely on it in her briefing. But even if she did, this letter is inapposite. The DOE was discussing how financing worked between it, the Minnesota Department of Education, its "co-ops" (i.e., the equivalent of Michigan's ISDs), and standalone LEAs in Minnesota. (Id.). The letter contains *dicta* that "the co-op, as a whole, is responsible for meeting the IDEA requirements[.]" (Id., PageID.2987). That analysis of fiscal responsibility and subgrantee parameters is not related to whether the ISD (or a "co-op") can be found liable for a local LEAs alleged violation of the IDEA or FAPE where it neither provided services nor contracted to do so. Instead, the letter actually supports the ISD's arguments in that it confirms that it can "choose" to use IDEA funding "to pay for special education and related services by member or participating" local LEAs, which the ISD has done through its Cooperative Agreement. Moreover, both *Y.A.* and *D.L.*, *supra*, are controlling.

(Id., PageID.2981 (emphasis added)). Contrary to these assertions, the ALJ did provide the Plaintiff with a decision on the merits. Just not one she was happy with.

The ALJ considered all of Plaintiff's arguments. (ECF No. 46-1, PageID.2365 ("This ALJ has carefully considered . . . Petitioner's Response in Opposition" to the ISD's motion)). And the ALJ properly determined that because the ISD neither took on any responsibility itself to directly provide IDEA related programs or services to G.G. nor contracted with KPS to do so, Plaintiff's due process complaint "fail[ed] to state claim" against the ISD "upon which relief can be granted." (ECF 46-1, PageID.2367).

A decision on a due process complaint is required to be made "on substantive grounds" regarding whether there was a denial of FAPE. 20 U.S.C. § 1415(f)(1)(E). The ALJ cited to Mich. Admin. Code 792.10129 and Mich. Court Rule 2.116(C)(8) as the basis for possible dismissal on summary disposition grounds when there is failure to state a claim for relief. (ECF No. 46-1, PageID.2359-60). A decision on a motion for summary disposition based on the failure to state claim for relief is a decision on the merits under Michigan case law. *ABB Paint Finishing, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa,* 223 Mich. App. 559, 563, 567 N.W.2d 456, 458 (1997) (Trial court's decision to grant "summary disposition under [MCR 2.116]C(8) is necessarily a decision on the merits."). A decision on summary judgment is similarly a decision on the merits under federal rules. See, e.g., *Focuspoint Int'l Inc. v. Baldeo*, No. 1:20-CV-2019, 2023 WL 2756986, at *1 (N.D. Ohio Apr. 3, 2023) ("Rule 56 is the Federal Rule of Civil Procedure which governs summary judgment, the procedural mechanism by which a party may seek and obtain a decision on the merits of the case without going to trial."). Plaintiff therefore **did receive a decision on the merits** – except that that decision was that she failed to state a claim on which relief could be granted. And that decision is what she is unhappy with.

9

Since Plaintiff has already received a substantive decision on the merits, there is no legal or practical reason to remand the IDEA claim (Count I) back to the ALJ to obtain a subsequent and duplicative decision on the merits. Thus, Plaintiff's motion for summary judgment on this basis should be rejected, and the ISD's pending motion for summary judgment should be granted. (ECF 62; 62-1).

## CONCLUSION

There is no material issue of disputed fact that (1) the ISD did not directly provide IDEA services to G.G. as an enrolled student at one of its center-based programs, and (2) it did not contract with KPS to take on KPS's responsibility under federal and state law to do so.  And under persuasive Sixth Circuit case law and this Court's own decision apply that case law, the ISD cannot be found liable for KPS's alleged violation of the IDEA or failure to provide FAPE under a theory of supervisory liability. Lastly, the Plaintiff received a decision on the merits below – the ALJ held that she failed to state a claim for relief. Thus, Plaintiff's motion should be denied, and the ISD's pending motion for summary judgment (ECF No. 62, 62-1) granted.

/s/ TRAVIS COMSTOCK  
GIARMARCO, MULLINS & HORTON, PC  
Attorney for Defendant, Kent ISD

DATED: December 10, 2025

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this brief complies with the type-volume limitations of L.Civ. R. 7.2(b)(ii). The motion and brief were prepared in Microsoft Word 365, using a Times New Roman 12 pt. font. Microsoft Word 365 has a function that calculates the number of words in a document. According to that function, there are 3,449 words in this brief.

/s/ TRAVIS COMSTOCK
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendant, Kent ISD

DATED: December 10, 2025

## CERTIFICATE OF ELECTRONIC SERVICE

TRAVIS M. COMSTOCK states that on December 12, 2025, he did serve a copy of **Defendant Kent Intermediate School District's Response in Opposition to Plaintiff's Motion for Summary Judgment** on Plaintiff via the United States District Court electronic transmission system (CM/ECF).

/s/ TRAVIS COMSTOCK
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendant, Kent ISD
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7036
tcomstock@gmhlaw.com
P72025
