UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **L.G. obo G.G.**<br><br>      Plaintiff,<br><br>v.<br><br>**KELLOGGSVILLE PUBLIC SCHOOLS, et al.,**<br><br>      Defendants. | Case No.: 1:24-cv-833<br><br>Hon. Robert J. Jonker<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT KENT ISD'S MOTION FOR SUMMARY JUDGMENT** |
| Elizabeth K. Abdnour (P78203)<br>Coriann Gastol (P74904)<br>Jacquelyn Kmetz (P83575)<br>ABDNOUR WEIKER LLP<br>325 E. Grand River Ave., Ste. 250<br>East Lansing, MI 48823<br>(517) 994-1776<br>liz@education-rights.com<br>coriann@education-rights.com<br>jacquelyn@education-rights.com<br><br>*Attorneys for Plaintiff* | Timothy J. Mullins (P28021)<br>Travis M. Comstock (P72025)<br>GIARMARCO, MULLINS, & HORTON, P.C.<br>Tenth Floor Columbia Center<br>101 West Big Beaver Rd.<br>Troy, MI 48084-5280<br>(248) 457-7036<br>tmullins@gmhlaw.com<br>tcomstock@gmhlaw.com<br><br>*Attorneys for Defendant Kent ISD* |

**PLAINTIFF'S RESPONSE TO DEFENDANT KENT ISD'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff L.G., on behalf of her son G.G., through undersigned counsel, respectfully submits this Response to Defendant Kent Intermediate School District's ("Kent ISD" or "Defendant") Motion for Summary Judgment. ECF 61. This Court has subject matter over Plaintiff's appeal, the appeal was timely filed, and Plaintiff has adequately pled a claim for relief against Kent ISD. Thus, Kent ISD's Motion for Summary Judgment must be denied.

1

## STATEMENT OF FACTS

Plaintiff L.G. is the parent and legal guardian of G.G. Compl., ECF 1, PageID.4 at ¶ 9. G.G. is a six-year-old child with qualifying disabilities under the IDEA and is therefore entitled to receive special education and related services under the IDEA. *Id.* at PageID.2, 4 at ¶¶ 1, 10. G.G. was enrolled in Kelloggsville Public Schools (KPS) from September 2022 to June 2023. *See Id.* at PageID.11, 23 at ¶¶ 62, 163. Kent Intermediate School District ("Kent ISD" or "Defendants") is the intermediate school district (ISD) of which KPS is a constituent district. First Amended Due Process Compl., ECF 43-1, PageID.2176 at ¶ 9. ISDs are considered Local Education Agencies (LEAs) and therefore responsible for providing FAPE under federal and state law. *Id.* at ¶ 10. Kent ISD was responsible for overseeing KPS and providing services to G.G. from September 2022 to June 2023. *See* Compl., ECF 1, PageID.11, 23 at ¶¶ 62, 163.

The Individuals with Disabilities in Education Act ("IDEA") requires that qualifying students with disabilities receive a free and appropriate education ("FAPE"). 20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.101(a). To achieve this goal, the IDEA requires that LEAs design and develop an individualized education program ("IEP") for each qualifying child. 20 U.S.C. §§ 1412(a)(4), 1414(d); 34 C.F.R. §§ 300.112, 300.320-24. Both KPS and the Defendants, Kent ISD, are LEAs responsible for ensuring the provision of a FAPE to G.G. Compl., ECF 1, PageID.10 at ¶ 54. KPS is the primary school district in which L.G. and G.G. reside. *Id.* at ¶ 52.

Kent ISD is an intermediate school district which services KPS and provides special education services directly to students through its Special Education Center Programs. *Id.* at PageID.10-11 at ¶¶ 53, 55-57. Kent ISD was responsible for providing a FAPE to G.G. under the IDEA. *Id.* at PageID.10 at ¶ 54. Under M.C.L. 380.1711, ISDs are responsible for developing, establishing, and continually evaluating and modifying a plan for the delivery of special education

services for all students under the age of 26 who are residents of constituent districts and who have not graduated from high school. *Id.* at PageID.27 at ¶ 183; M.C.L. 380.1711(1)(a), (f). M.C.L. 380.1711 does not limit an ISD's obligation only to those students that are currently enrolled in one of the ISD programs or classrooms. *Id.* at ¶ 184.

KPS and Kent ISD failed to meet G.G.'s educational needs during the 2022-2023 and 2023-2024 school years. First Amended Due Process Compl., ECF 43-1, PageID.2175-2196 at ¶¶ 1-105. As outlined in detail in the Complaint, KPS and Kent ISD, among other things, failed to address L.G.'s concerns about the inadequacy of G.G.'s IEPs, failing to ensure G.G.'s IEPs for the 2022-2023 and 2023-2024 school years were appropriate, and unilaterally denying G.G.'s placement at Pine Grove Learning Center, operated by Kent ISD. *Id.* at PageID.2196-2197 at ¶¶ 1-8. Therefore, on January 11, 2024, L.G. filed an Amended Due Process Complaint ("DPC") against both KPS and Kent ISD. Compl., ECF 1, PageID.24 at ¶ 169. On January 22, 2024, Kent ISD filed a Motion to Dismiss the DPC. *Id.* at ¶ 170. Kent ISD argued that it was not responsible for the identification, placement, or provision of FAPE to G.G. because it was not a LEA. *Id.* at ¶ 171. In support of its Motion, Kent ISD attached five opinions attached by MOAHR administrative law judges ("ALJs") serving as special education due process Hearing Officers, all of which wrongly concluded that ISDs are not LEAs and therefore are not responsible for providing FAPE to students on IEPS. *Id.* at PageID.24-25 at ¶ 174.

On February 7, 2024, the Hearing Officer issued an order (the February 7 order) erroneously dismissing Kent ISD as a party to the due process hearing based on incorrect legal arguments and wrongly decided prior caselaw cited by Kent ISD in its Motion to Dismiss. *Id.* at PageID.26 at ¶ 176. The February 7 order wrongly held that the responsibility of providing a FAPE resides solely with local school districts, that an ISD may only be responsible for the provision of

3

FAPE if it has taken on direct responsibility for the education of a disabled student, which is contrary to Michigan law that contemplates a shared responsibility between local school districts and ISDs. *Id.* at PageID.26-27 at ¶¶ 176-187. The due process hearing took place in March 2024 regarding Plaintiff's claims against KPS only. *Id.* at PageID.28 at ¶ 188. On May 15, 2024, the Hearing Officer issued a final decision and order (the May 15 order) finding that KPS had committed procedural violations of IDEA, but only one substantive violation denying G.G. FAPE. *Id.* at PageID.30 at ¶ 202. As a result, the May 15 order granted G.G. only a paltry 15 hours of compensatory speech therapy services via a speech generating device. *Id.* at ¶ 204. G.G. timely filed this appeal of that final order.

## STANDARD OF REVIEW

Summary judgment should be granted if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) (citing Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment "in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ARGUMENT

### I.  Plaintiff's appeal against Kent ISD was timely.

Defendant asserts that Plaintiff's appeal challenging the administrative decision on Plaintiff's IDEA claim against Kent ISD is untimely and therefore should be dismissed under Fed.

R. Civ. P. 56 due to no genuine issue of material fact. Def. KISD's Motion for Summary Judgment and Brief in Support, ECF No. 61, PageID.2806. Plaintiff filed a due process complaint ("DPC") against Kelloggsville Public Schools (KPS) and Kent ISD on January 11, 2024. Compl., ECF 1, PageID.24 at ¶ 169. On January 22, 2024, Kent ISD filed a Motion to Dismiss the DPC. *Id.* at ¶ 170. The Hearing Officer issued a decision granting Kent ISD's motion to dismiss on February 7, 2024. *Id.* at PageID.26 at ¶ 176. The ALJ issued a final opinion as to Plaintiff's remaining claims against KPS on May 15, 2024. *Id.* at PageID.30 at ¶ 202. Prior to the Hearing Officer's final opinion, Plaintiff had not yet satisfied the IDEA's exhaustion requirement, and thus the statutory deadline to appeal had not yet begun to run. 20 U.S.C. § 1415(i)(2)(A), (B). Pursuant to 34 C.F.R. § 300.516:

> **(a) General.** Any party aggrieved by the findings and decision made under §§ 300.507 through 300.513 or §§ 300.530 through 300.534 who does not have the right to an appeal under § 300.514(b), and any party aggrieved by the findings and decision under § 300.514(b), has the right to bring a civil action with respect to the due process complaint notice requesting a due process hearing under § 300.507 or §§ 300.530 through 300.532. The action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.
>
> **(b) Time limitation.** The party bringing the action shall have 90 days from the date of the decision of the hearing officer or, if applicable, the decision of the State review official, to file a civil action, or, if the State has an explicit time limitation for bringing civil actions under Part B of the Act, in the time allowed by that State law.

The Hearing Officer's final decision was issued on May 15, 2024. Compl., ECF No. 1 at ¶ 75. The Appeal was filed on June 20, 2025. *See* Compl., ECF No. 1, PageID.30 at ¶ 202. Thus, the instant civil action was timely filed as to Plaintiff's IDEA claims against Kent ISD. Plaintiff's DPC against Kent ISD and KPS (filed as a single complaint) involved overlapping and joint action

5

taken by both entities with respect to their failure to provide a FAPE to G.G. First Amended Due Process Compl., ECF No. 43-1, PageID.2175-2197. Accordingly, Plaintiff waited until the completion of the administrative process as to both entities before filing suit to avoid dismissal based on failure to exhaust and ripeness challenges. 20 U.S.C. § 1415(i)(2)(A).

Like in their Motion to Dismiss, Defendant again makes much of the ALJ's docketing of Plaintiff's claims. *Compare* ECF No. 13, PageID. [3], [5] *to* ECF No. 61, PageID.2812-2815. Although the proceedings against KPS and KISD were given two separate docket numbers, the allegations were based on the same underlying facts and harms and were alleged in a single complaint filed by Plaintiff. First Amended Due Process Compl., ECF No. 43-1, PageID.2175-2197. As noted in Plaintiff's Opposition to Defendant KISD's Motion to Dismiss, in *Fry v. Napoleon Community Schools*, 197 L.Ed.2d 46, 137 S.Ct. 74 (2015), the "Supreme Court held that, when seeking relief in federal court, plaintiffs must first exhaust the administrative procedure when the 'gravamen' of their complaint alleges a violation of FAPE." Plaintiff's Opp. to Def. KISD's Mot. to Dismiss, ECF No. 20, PageID.577 (citing *Fry* at 755).

Contrary to Defendant's claims, Plaintiff's due process complaint was not "two separate actions," nor was there only "one party" in the complaint against the ISD. Def. KISD Mot. for Summary Judgment, ECF No. 61, PageID.2815. Rather, this was a single action against two parties, alleging that Defendant Kent ISD and KPS had denied G.G. FAPE. Thus, as noted in Plaintiff's Opposition to Defendant KISD's Motion to Dismiss, the ALJ's dismissal of KISD as a party to that due process complaint "did not address the question of G.G. had been denied FAPE." ECF No. 20, PageID.577. Had Plaintiff's claims against Defendant KISD proceeded, given the overlapping facts and joint action taken by Defendant KISD and KPS, there would have been only one due process hearing and one decision issued following that hearing. Therefore, Plaintiff was

6

correct in waiting until the ALJ's final order on May 15, 2025 before preparing and filing her appeal against both Defendant KISD and KPS, as IDEA's exhaustion requirement had not been met. *See* 20 U.S.C. § 1415(i)(2)(A), (B). Further, as Chief Judge Jarbou recently found on this issue:

> For over twenty years, the Supreme Court has encouraged lower federal courts to refrain from the "less than meticulous" labeling of time prescriptions and other preconditions to suit as limits on the courts' subject-matter jurisdiction….
>
> What sets jurisdictional rules apart is that they determine the very authority of a court to adjudicate a dispute. "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" Labeling a statutory condition on the invocation of a claim as jurisdictional can therefore have "harsh consequences," not least of which is foreclosing waiver of the condition if equity so demands. Consequently, the Court has prescribed that rules "not involving the timebound transfer of adjudicatory authority from one Article III court to another" be interpreted as limits on jurisdiction only if they "clearly state[]" so.
>
> Interpreting section 1415(i)(2)(B) using the "traditional tools of statutory construction makes mincemeat of the suggestion that Congress intended to "imbue[]" the provision "with jurisdictional consequences." The word "jurisdiction" appears nowhere in subsection (i)(2)(B). The provision simply directs a party "aggrieved by the findings and decision" in a due process hearing, 20 U.S.C. § 1415(i)(2)(A), to "bring[] the action" raising those grievances no later than ninety days "from the date of the decision of the hearing officer," id. § 1415(i)(2)(B). This "mundane" language "says only what every time bar, by definition, must: that after a certain time a claim is barred." Wilkins, 598 U.S. at 159 (cleaned up). That subsection (i)(2)(B) bears the heading "Limitation," the sort of label one would expect to encounter affixed to a normal time bar, reinforces the provision's ordinary meaning. Confirmation that subsection (i)(2)(B) is nonjurisdictional is supplied by the fact that a neighboring provision, titled "Jurisdiction of district courts," explicitly confers subject-matter jurisdiction without "condition[ing] the jurisdictional grant on the limitations period" or "otherwise link[ing] those separate provisions."
>
> The text and immediate context of subsection (i)(2)(B) make it more than plausible that it imposes a "run-of-the-mill filing deadline." It

7

> follows that subsection (i)(2)(B) does not clearly impose a jurisdictional restriction. Consequently, subsection (i)(2)(B)'s time bar is an ordinary claim-processing rule, and its transgression does not oust a court of jurisdiction over an IDEA action.

*Henke v. East Lansing Public Schools et al.*, No. 1:25-cv-680 at *4-6 (W.D. Mich. Dec. 17, 2025) (internal citations omitted).  Thus, even if this Court finds that the appeal was untimely, the Chief Judge found just two days ago that this is an ordinary claim-processing issue, and this Court should not refuse jurisdiction of this issue as a result.

Even if this Court were to determine Plaintiff's appeal against Defendant KISD is untimely, facts *do* exist to apply equitable tolling and allow Plaintiff's claims to proceed. As explained at length in Plaintiff's Opposition to Defendant KISD's Motion to Dismiss, "because Michigan law—not Congress—establishes the applicable deadline for parties to file an action in federal court under the IDEA, the deadline cannot be considered jurisdictional." ECF No. 20, PageID.579; *see also id.* at 577-579. As such, Plaintiff is entitled to equitable tolling if she can show "(1) that she has diligently pursued her rights and (2) some extraordinary circumstances prevented timely filing." *Id.* at 580 (citing *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010)). As noted by Defendant KISD, courts examine five factors when considering whether or not to apply equitable tolling, "(1) plaintiff's lack of notice of the filing requirement; (2) plaintiff's lack of constructive knowledge of the filing requirement; (3) plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) plaintiff's reasonableness in remaining ignorant of the particular legal requirement." ECF No. 65, PageID.2818 (citing *Holden v. Miller-Smith*, 28 F. Supp. 3d 729, 738 (W.D. Mich. 2014)). Plaintiff does not need to prove all five factors for the Court to apply equitable tolling. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000). "Rather, '[t]he propriety of equitable tolling must necessarily be determined on a case-by-case basis.'" *Id.* at 561 (citing *Truitt v. County of Wayne*, 148 F.3d 644,

648 (6th Cir. 1998)).

Plaintiff's arguments from her Opposition to Defendant KISD's Motion to Dismiss remain applicable here, demonstrating Plaintiff's diligence in pursuing her rights:

> Plaintiff diligently pursued her IDEA claims against Kent ISD and waited to file the instant civil complaint until her claims against both Kent ISD and KPS were fully exhausted in order to comply with the IDEA's exhaustion requirement. As discussed at length above, Plaintiff filed a single due process complaint alleging denial of FAPE by the joint action of Kent ISD and KPS, thus, as a result of the ALJ's apparent bifurcation of the claims against Kent ISD and KPS, Plaintiff was prevented from filing a civil action until the ALJ's second ruling on her remaining claims against KPS. In this case, mechanical application of the 90-day limit to the ALJ's first ruling on Kent ISD's motion to dismiss would contravene the IDEA's exhaustion requirement and would improperly penalize Plaintiff for diligently seeking to comply with this statutory requirement. Thus, were the court to interpret the 90-day deadline as non-jurisdictional and were Defendant to later raise an affirmative defense asserting that Plaintiff's civil action was untimely filed as to her IDEA claims, Plaintiff would be entitled to equitable estoppel.

*Id.* at 580. The ALJ's case management decision to give Plaintiff's claims multiple docket numbers is of little significance as the gravamen of the complaint was the same– whether the joint actions of Defendant Kent ISD and KPS denied G.G. FAPE. As such, Plaintiff was prevented from filing any appeals prior to the ALJ's final May 15 order.

Plaintiff's attorney was not negligent in waiting to appeal the ALJ's dismissal of Kent ISD as a party to the due process proceedings. Rather, the decision to wait until the final May 15 order was a reasonable interpretation of the legal requirement. As noted in Plaintiff's Opposition to Defendant KISD's Motion to Dismiss, had Plaintiff filed her appeal sooner, recent court decisions clearly indicated that her appeal would have been dismissed based on failure to exhaust and ripeness challenges. ECF No. 20, PageID.576. In *Mcqueen v. Colorado Springs Sch. Dist. No. 11*, the Tenth Circuit found the plaintiffs' IDEA claim not yet exhausted where the plaintiffs had

9

attempted to appeal a decision by the ALJ on a bifurcated issue. 488 F.3d 868, 874 (10th Cir. 2007). More recently, in August 2024, the Federal District Court of Western Michigan dismissed an appeal against MDE, determining the claim was not ripe as the appeal against the LEA was still proceeding. *See T.M. v. Michigan Dep't. of Educ.*, No. 1:23-cv-762 (W.D. Mich. Aug. 20, 2024). Likewise, in the instant case, the ALJ's preliminary order granting Kent ISD's motion to dismiss for lack of subject matter jurisdiction did not resolve the overriding issue of whether G.G. had been provided a FAPE, so an appeal regarding G.G.'s provision of FAPE would similarly have been dismissed due to ripeness challenges.

For these reasons, Plaintiff's appeal is timely and should be allowed to proceed, and Defendant KISD's Motion for Summary Judgment should be denied.

**II.      Defendant KISD is a Local Educational Agency responsible for providing G.G. FAPE and an appropriate party to the due process complaint.**

Defendant KISD argues that, based on the Sixth Circuit's recent decision in *Y.A. by Alzandani v. Hamtramck Pub. Sch.*, 137 F.4th 862 (6th Cir. 2025), they cannot be held liable for IDEA violations because they are also a supervisory entity like the Michigan Department of Education (MDE). However, Defendant's argument and reliance on both *Y.A.* and *D.L., et al v. Michigan Department of Education*, No. 1:22-cv-00838 (W.D. Mich., Sept. 24, 2025), is misplaced. As Defendant acknowledges, both of those cases looked specifically at MDE's role as the state educational agency, responsible for overseeing special education throughout the state. ECF No. 61, PageID.2820-2822. In contrast, while the ISD has some supervisory responsibilities, MDE has clearly stated its position that ISDs are considered LEAs in Michigan. *See* Pet.'s Resp. to KISD's Mot. to Dismiss, ECF 46-1, PageID.2383-2386.  Further, as Judge Jarbou recently wrote, "The Sixth Circuit has suggested its agreement with the view that 'either or both' a state educational agency and a local educational agency 'may be held liable for the failure to provide a

10

free appropriate public education.' If both a state and a local educational agency can be proper defendants in the same IDEA lawsuit, then the same may hold true for educational service agencies…." *Henke*, No. 1:25-cv-680 at *10.

Unlike the Michigan Department of Education's passive supervisory role, under both federal and state law, ISDs have a much more active role in providing and ensuring FAPE to students within the constituent districts.

The IDEA is clear that its provisions apply to ISDs:

> **Applicability of this part to State and local agencies.**
>
> (a) **States.** This part applies to each State that receives payments under Part B of the Act, as defined in § 300.4.
>
> (b) **Public agencies within the State.** The provisions of this part—
>
>> (1) Apply to all political subdivisions of the State that are involved in the education of children with disabilities, including:
>>
>>> (i) The State educational agency (SEA).
>>> (ii) Local educational agencies (LEAs), *educational service agencies (ESAs)*, and public charter schools that are not otherwise included as LEAs or ESAs and are not a school of an LEA or ESA.
>>>
>>> (iii) Other State agencies and schools (such as Departments of Mental Health and Welfare and State schools for children with deafness or children with blindness).
>>>
>>> (iv) State and local juvenile and adult correctional facilities; and
>>
>> (2) Are binding on each public agency in the State that provides special education and related services to children with disabilities, regardless of whether that agency is receiving funds under Part B of the Act.

34 C.F.R. § 300.2 (emphasis added). Michigan has promulgated several legal provisions that "exceed the federal basic floor of meaningful, educational opportunity." Pursuant to 34 C.F.R. § 300.705(a), 815, Michigan Administrative Rules for Special Education ("MARSE") Part 7 requires that each ISD in Michigan submit a plan ("ISD Plan") for special education, which must be approved by the district's superintendent, which corresponds to the assurances that each LEA must provide to receive federal funding. MARSE R. 340.1831. The same part prescribes that:

> (1) The department shall establish monitoring procedures, criteria, and evaluation activities to ensure that minimum standards are being achieved by all public agencies.
>
> (2) Each intermediate school district shall implement monitoring procedures and evaluation methods developed by the department to ensure that the standards and criteria established are being achieved by the intermediate school district, their constituent local school districts, and their public school academies.

MARSE R. 340.1839. Through these additional obligations concerning monitoring and evaluation procedures, the State of Michigan demonstrates that it views the ISD, in this case IISD, as an integral part of ensuring that state educational standards are met and thus ensuring that the requirements of IDEA are met.

In Michigan, the special education state complaint process requires an ISD's active involvement. The ISD must assist in monitoring and "[t]he public agency shall submit proof of compliance to the department and the intermediate school district documenting that the violation is corrected within the time line specified in the corrective action." MARSE R. 340.1854(3). Further, MARSE provides for reimbursement for special education programs and services in compliance with the MARSE and the ISD Plan approved by the Michigan Department of Education ("MDE"). MARSE R. 340.1809. As a result, IDEA, state law, the corresponding implementing regulations, and practice have created a system where an ISD, such as IISD, is

12

responsible for ensuring a FAPE. Among an ISD's responsibilities are "investigating complaints made about the special education program and services provided by constituent districts" and "maintaining a record of all students who are eligible for special education programs and services within the boundaries of one of its constituent districts." Def. KISD's Mot. to Dismiss, ECF No. 46-1, PageID.2507 (citing M.C.L. 380.1711). ISDs are also responsible for maintaining a "record of…the special education programs or services in which the student with a disability is participating…," M.C.L. 380.1711(1)(f), "[h]ave the authority to place in appropriate special education programs or services a student with a disability for whom a constituent district is required to provide special education programs or services…," M.C.L. 380.1711(1)(g), and operating "the special education programs or services or contract for the delivery of special education programs or services by local school district boards, in accordance with section 1702, as if a local school district under section 1751," M.C.L. 380.1711(1)(i).

In addition to the testimony cited in the Complaint, MDE has issued guidance demonstrating its position that ISDs are LEAs in Michigan:

> MDE provides IDEA Part B subgrants to each eligible Intermediate School District (ISDs). <u>IDEA Part B Local Education Agency (LEA) eligibility requirements apply to ISDs or Education Service Agencies as the LEA (subrecipient) receiving the IDEA Part B grant and responsible for ensuring that the requirements of this part are met.</u> A condition of eligibility for an IDEA Part B subgrant, is that in providing for the education of children with disabilities within its jurisdiction, the ISD must have in effect policies, procedures, and programs that are consistent with the State policies and procedures established as required in IDEA §1412(a).

MICH. DEP'T OF EDUC., MICHIGAN DEPARTMENT OF EDUCATION (MDE) AND INTERMEDIATE SCHOOL DISTRICT (ISD) GENERAL SUPERVISION RESPONSIBILITIES at 2 (Mar. 2003), https://training.catamaran.partners/wp-content/uploads/2025/04/Michigan-Department-ofEducation-MDE-and-Intermediate-School-District-ISD-General-Supervision-Roles.pdf

(emphasis added). Through the structure of ISDs, Michigan has explicitly placed the burden of IDEA compliance upon both individual school districts and ISDs.

Finally, as explained at length in Plaintiff's Response to Defendant KISD's Motion to Dismiss during the due process proceeding, Defendant KISD is directly here for the provision of FAPE to G.G. due to its operation of Pine Grove, which Plaintiff had specifically requested as a placement for G.G. and which Defendants had unilaterally improperly denied outside of the IEP process. ECF No. 46-1, PageID.2375-2393. As in *Henke*,

> Because [the] []ISD was in some respect responsible for providing [the student] with a free appropriate public education, [the] []ISD's alleged shortcomings in providing that education are reviewable by this Court. The Court need not reach the question whether intermediate school districts, solely by virtue of their supervisory functions, are proper parties to actions challenging the treatment of a single student.

No. 1:25-cv-680 at *9.

For these reasons, Defendant KISD is not just a "supervisory entity," but is a local educational agency responsible for the provision of FAPE to G.G. and a proper party to a due process complaint. As such, Defendant KISD's Motion for Summary Judgment should be denied.

### III. Defendant KISD acted with deliberate indifference and Plaintiff stated a claim for relief under Section 504 of the Rehabilitation Act and the ADA

As Defendant KISD acknowledges, discrimination can be alleged under two theories: intentional discrimination or a failure to accommodate. ECF No. 61, PageID.2823 (citing *Knox Cnty., TN v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023)). Under the failure-to-accommodate theory, a plaintiff must "establish both that his preferred accommodation was reasonable, and that the accommodation provided to him was unreasonable." *Knox Cnty., TN*, 62 F.4th at 1000. Here, Plaintiff can both establish a *prima facie* case and demonstrate Defendant KISD acted with deliberate indifference.

During the May 22, 2023 IEP meeting regarding the 2023-2024 school year, Plaintiff discussed with KPS personnel KPS's recommended placement of G.G. in "the elementary autism classroom housed at Southeast Kelloggsville." ECF No. 1, PageID.19 at ¶ 130, PageID.21 at ¶ 151. Plaintiff alternatively suggested placement of G.G. at the Pine Grove Learning Center, a program overseen by Kent ISD. *Id.* at PageID.22 at ¶ 157. Plaintiff has adequately alleged that unlike the Southeast Kelloggsville classroom, Pine Grove would reasonably accommodate G.G.'s disabilities. *Id.* at ¶ 159. Pine Grove, "serves students with special needs who have moderate to severe cognitive impairments, are severely multiply impaired, or have autism from Kindergarten through age 26." *Id.* at ¶ 157. Further, Pine Grove, "educate[s] students with complex needs by providing specialized instruction specific to the communication, academic, adaptive behavior, mobility, and adult living skills required to develop independence." *Id.* at ¶ 158. At the meeting, KPS did not seriously consider Plaintiff's request to place G.G. in Pine Grove, interrupting her and talking over her. *Id.* at PageID.22-23 at ¶ 160. Later, Plaintiff learned that without her knowledge, KPS and Kent ISD personnel (Pine Grove's principal) had already discussed the appropriateness of placing G.G. in Pine Grove, together determining that it was not appropriate. *Id.* at PageID.28 at ¶¶ 190-191, 194-197, PageID.30 at ¶ 201. Contrary to Defendant KISD's claim that they had no notice of the Pine Grove request, KPS' Director of Student Services, Kimberlee Fountaine, expressly testified that she had communicated with Defendant KISD regarding Pine Grove as a potential placement for G.G. *Id.* at PageID.28 at ¶ 190. Thus, Defendant Kent ISD's failure to recommend placement of G.G. at Pine Grove amounted to discrimination by failing to reasonably accommodate his disabilities. *Id.* at PageID.51-52 at ¶ 268, PageID.54-55 at ¶ 279.

Defendant Kent ISD's failure to recommend placement of G.G. at Pine Grove and to make this determination outside of the IEP process also rises to the level of deliberate indifference. As

15

noted by Defendant KISD, "the deliberate indifference standard requires that a 'defendant disregarded a strong likelihood that the challenged action would result in a violation of federally protected rights.'" ECF No. 61, PageID.2825 (citing *A.J.T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 345 (2025)). Here, as noted above, due to repeated guidance and trainings from MDE, Defendant Kent ISD was aware of its status as a local educational agency responsible for providing FAPE to G.G. ECF No. 46-1, PageID.2383-2386. Further, as responsible for ensuring FAPE to its constituent students, Defendant KISD would have been aware of IDEA's mandate that placement decisions be "made by a *group of persons, including the parents*" and "based on the child's IEP." 34 CFR § 300.116(a)(1), (b)(2). Yet, as demonstrated by Fountaine's testimony that she spoke with Defendant KISD regarding G.G.'s potential placement Pine Grove outside of the IEP process (ECF No. 1, PageID.28 at ¶ 190), Defendant KISD acted with deliberate indifference when it knowingly and voluntarily denied G.G.'s placement at Pine Grove or otherwise failed to recommend KPS convene an IEP meeting to consider G.G.'s placement at Pine Grove as required by IDEA.

Thus, Plaintiff has established a *prima facie* case that Defendant KISD acted with deliberate indifference in failing to accommodate G.G.'s disability and Defendant KISD's Motion for Summary Judgment on Counts III and IV should be denied.

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, Plaintiff requests that this Court issue an order denying Defendant Kent ISD summary judgment under Federal Rule of Civil Procedure 56, remanding this case for a Due Process Hearing against Defendant Kent ISD, and granting Plaintiff such further relief as the Court deems just and appropriate.

Dated: December 19, 2025

Respectfully submitted,
ABDNOUR WEIKER LLP

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour (P78203)
Coriann Gastol (P74904)
Jacquelyn Kmetz (P83575)
325 E. Grand River Ave., Ste. 250
East Lansing, MI 48823
(517) 994-1776
liz@education-rights.com
coriann@education-rights.com
jacquelyn@education-rights.com

*Attorneys for Plaintiff*

### CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief complies with the limits set forth in LCivR 7.2(b)(i). Further, based on the Word Count function of Microsoft Word for Mac word processing software, applied to include all include headings, footnotes, citations and quotations, but not to include the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits, I certify that this Brief contains 5027 words.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour

### CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2025, I filed this document by use of this Court's ECF system, which will serve copies to the Clerk of Courts and all counsel of record.

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour