UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L.G. o/b/o G.G.,

    Plaintiff,

v.

KELLOGGSVILLE PUBLIC
SCHOOLS, et al.,

    Defendants.
_____/

CASE NO. 1:24-cv-833

HON. ROBERT J. JONKER

## OPINION AND ORDER

### INTRODUCTION

Plaintiff claims that Kelloggsville Public Schools (KPS) failed to provide her six-year-old son with educational services suitable to fit his special needs, and that Kent Intermediate School District (Kent ISD) and the Michigan Department of Education share responsibility. Plaintiff has since settled with the local school district. And in a separate Opinion and Order, the Court granted the Michigan Department of Education's motion to dismiss. (ECF No. 26). The federal law claims against Kent ISD remain. Both sides move for summary judgment in their favor on these claims. (ECF Nos. 61, 62). For the reasons that follow, the Court concludes that Plaintiff is not entitled to the relief she seeks, and that Kent ISD is entitled to summary judgment in its favor.

### FACTUAL AND PROCEDURAL BACKGROUND

In the fall of 2022, Plaintiff enrolled her six-year-old son, G.G., as a student at KPS. G.G. requires special assistance in the classroom setting due to several documented disabilities, including Autism Spectrum Disorder. Throughout the academic year, Plaintiff sought to ensure

that KPS would be up to the task of providing that assistance and that the school district was meeting its statutory requirements to provide her son with a free and appropriate public education (FAPE).  As the year came to a close, Plaintiff believed KPS had fallen short of meeting those obligations.  So when KPS held a meeting to go over G.G.'s IEP for the next year, Plaintiff had her doubts about the school's plan for G.G. to attend a special autism classroom in the coming year that was not yet off the ground and would admittedly be one to "test[ ] the waters."  She proposed, instead, that G.G. attend Pine Grove—an established learning center run by Kent Intermediate School District ("Kent ISD").  But KPS representatives pushed back, and they insisted that Pine Grove would not be a good fit for her son.  Plaintiff says that this meeting, combined with her other experiences with KPS, led to her decision to make alternative educational arrangements for her son for the 2023-2024 school year at a private school.

Plaintiff then pursued administrative remedies based on KPS's alleged failure to provide adequate special education services to G.G.  On November 30, 2023, Plaintiff filed a due-process complaint and request for hearing.  She initially named KPS as a defendant, and on December 11, 2023, KPS filed a response.  On January 11, 2024, Plaintiff filed an amended complaint and request for due process hearing that added Kent ISD as a defendant.  Kent ISD subsequently filed a motion to dismiss the amended complaint on the basis that it was an improper party because it was not responsible for providing G.G. with a FAPE.  The ALJ granted Kent ISD's motion to dismiss over Plaintiff's opposition on February 7, 2024.  Administrative proceedings continued against KPS only, and a due process hearing was held in March 2024.  Pertinent for present purposes, Plaintiff alleges that it came out during those proceedings that KPS and Kent ISD had, without her input, made the decision that G.G. would not attend Pine Grove

On May 15, 2024, the ALJ issued an order that rejected most of Plaintiff's arguments, including her contention that KPS failed to provide G.G. a FAPE for the 2023-2024 school year when it denied G.G. a placement at Pine Grove. The ALJ did find that KPS had failed to provide adequate educational services as it pertained to an operating platform on G.G.'s augmented communications device, and the ALJ ordered fifteen hours of compensatory education as a remedy for that shortcoming. The decision found other procedural, technical violations of the IDEA, but found that none of these violations amounted to substantive violations.

On August 12, 2024, Plaintiff filed this case against KPS, Kent ISD, and the Michigan Department of Education. (ECF No. 1). The Complaint raised a total of six counts—claiming violations of the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Title II of the Americans with Disabilities Act (ADA); and Michigan's Persons With Disabilities Civil Rights Act (PWDCRA). At the January 28, 2025, Rule 16 scheduling conference, the Court declined the exercise of supplemental jurisdiction over the state law claims and granted a motion to dismiss filed by the Michigan Department of Education. (ECF No. 26). The remainder of the case proceeded to discovery. Plaintiff and KPS subsequently reached a settlement agreement following facilitative mediation. (ECF No. 71).

The matter is now before the Court on the respective motions for summary judgment filed by Kent ISD and Plaintiff on the remaining federal claims. (ECF Nos. 61, 62).

## LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. In deciding a motion for summary judgment, the court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

When cross motions for summary judgment are filed, the court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)). "[I]f the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (quoting *Moore's Federal Practice*).

## DISCUSSION

### 1. *Plaintiff's IDEA Claim*

The focus in the briefing is on Plaintiff's IDEA claim in Count I. Kent ISD seeks summary judgment on the basis that Plaintiff was too late in bringing this federal claim but that even if there is a basis to excuse what it says is a tardy filing, Plaintiff cannot pursue an IDEA claim against it. As to the latter argument, Kent ISD's reasoning is that it was KPS as the local educational agency—and not the intermediate school district—that was responsible for providing G.G. with a

4

FAPE and thus the ALJ correctly determined that it was an improper party.  Dismissal for the same reasons, the ISD says, should follow here because Plaintiff cannot tag it with liability based on a theory of supervisory liability.  Plaintiff resists all this and separately moves for an order that would send this matter back to the ALJ for a new due-process hearing that includes the ISD.  This is because, according to Plaintiff, Kent ISD had "a statutory affirmative duty to step in, correct any noncompliance by KPS, and ensure G.G. received [a] FAPE."  (ECF No. 62-1, PageID.2972).  For the reasons set out below, the Court concludes remand is not appropriate, and that Kent ISD is entitled to the relief it seeks.

      A.  *Timing*

The IDEA narrowly concerns the "core guarantee of a 'free appropriate public education' to children in public schools with certain physical or intellectual disabilities." *A. J. T. by & through A. T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 339–40 (2025) (first citing 20 U.S.C. § 1400 *et seq.*; and then quoting *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 169 (2017)). In exchange for funding under the act, educational agencies agree to identify, locate, and evaluate children with disabilities who may require special education, and to provide those students with an individualized education program. § 1412(a)(1),(3)–(5). And state educational agencies specifically agree to supervise educational programs run by other state and local agencies. § 1412(a)(11). They also agree to establish certain procedural safeguards for children with disabilities and their parents to ensure the provision of a FAPE. § 1412(a)(6)(A); § 1415. These procedures are sometimes referred to as the "IDEA grievance procedure" and include three steps: (1) a state complaint, (2) an opportunity for mediation, and (3) a due process hearing. § 1415(b), (e)-(f). A party may "present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public

5

education to such child." § 1415(b)(6)(A).  If a party pursues a due process hearing and is ultimately aggrieved by the findings and conclusion thereof, they may file suit in federal court in accordance with § 1415(i). Subsection 1415(i) is home to the sole cause of action expressly created by the IDEA

Under the IDEA, the aggrieved party generally has ninety days from the date of the administrative hearing officer's decision within which to commence a federal civil action.  *See Northport Pub. Sch. v. Woods,* No. 1:11-CV-982, 2013 WL 435962, at *2 (W.D. Mich. Feb. 4, 2013) (discussing 20 U.S.C. §§ 1415(i)(2)(A), (B)).  The parties in this case have a dispute about whether Plaintiff's IDEA claim against Kent ISD was brought within ninety days of the ALJ's decision.  And even if Plaintiff's claim was brought more than ninety days after the ALJ's decision, the parties disagree whether that should preclude Plaintiff from proceeding any further here.

The timing dispute arises from how one reads the course of the ALJ's rulings.  As Kent ISD sees it, once Plaintiff filed an amended due process complaint that added Kent ISD, the ALJ bifurcated the proceedings against KPS and Kent ISD, assigned each case a separate docket number, and set each case on a separate track.  The proceedings against Kent ISD then reached a conclusion on February 7, 2024, when the ALJ granted Kent ISD's motion to dismiss.  Counting from this date, 187 days elapsed before Plaintiff filed her federal complaint.  Because this is plainly more than ninety days from when Plaintiff filed the instant complaint, Kent ISD says Plaintiff's claim against it is tardy.  Plaintiff starts the count from a different date, May 15, 2024, which is the date the ALJ issued an order that concluded matters against KPS and made the final determination of whether G.G. had received a FAPE.  It was at this point, she says, that her IDEA claim against Kent ISD became exhausted.

The evidentiary record supports Kent ISD's timing argument. The IDEA permits separate proceedings. *See* 20 U.S.C. § 1415(o). And that is precisely what happened here. The ALJ plainly did bifurcate proceedings and proceed separately with Kent ISD and KPS. In a January 25, 2024, Order, for example, the ALJ remarked:

> On January 11, 2024, Petitioner filed a First Amended Complaint and Request for Special Education Due Process Hearing (Amended Complaint). The portion of the Amended Complaint against Kent Intermediate School District (ISD) was assigned to Docket No. 24-001329.

(ECF No. 46-1, PageID.2494). The ALJ proceeded to set separate deadlines in the proceedings against Kent ISD. (ECF No. 46-1, PageID.2579) (Order Regarding Timelines in case against Kent ISD). Kent ISD then filed a motion to dismiss that referenced the new docket number only. (ECF No. 46-1, PageID.2503). Plaintiff's response in opposition to the motion appears to have been submitted in both proceedings, or at least with that intention, because it contains two captions with the two docket numbers. (ECF No. 42-1, PageID.2067). But the ALJ's decision granting the ISD's motion had only the one docket number pertaining to the ISD proceedings. (ECF No. 46-1, PageID.2358). Matters in the KPS proceedings continued, and further submissions contained only the docket number pertaining to KPS. (*See, e.g.*, ECF No. 42-1, PageID.2006, 2009, 2055).

This much appears to be beyond genuine dispute. But Plaintiff says the bifurcated proceedings shouldn't add much to the mix. What is more compelling, and indeed dispositive, she says, is her common claim that KPS and Kent ISD together denied a FAPE to G.G. and what she says was the only decision on the merits regarding that contention—the ALJ's May 15, 2024, decision. Before that point, she says, any claim that Kent ISD denied a FAPE to G.G. would have been unexhausted. The Court is not persuaded. On this record, the ALJ's order dismissing Kent ISD was more than an interlocutory order issued along the way to a final decision regarding a

7

FAPE. It was the ALJ's final decision in a separate proceeding regarding Plaintiff's contention that Kent ISD was responsible for providing a FAPE to G.G. and failed to do so. True, Plaintiff was claiming Kent ISD had colluded with KPS to deny G.G. placement at Pine Grove, and Pine Grove was still at issue in the case when the ALJ made her decision in the bifurcated case involving KPS. But the ALJ made the decision on KPS and Pine Grove on grounds that did not require consideration of any possible role by Kent ISD. Accordingly, there was no determination in the later KPS case that Kent ISD had, or had not, denied G.G. a FAPE. Proceedings as to that contention concluded with the ALJ's February 7, 2024, decision in the bifurcated proceedings against Kent ISD. At that point Plaintiff's claims against the ISD were exhausted, and the ninety-day clock began running. Counting from February 7, 2024, there can be no dispute that the instant lawsuit was brought more than 90 days later, outside the clock in Section 1415.

Earlier in this case, Kent ISD argued that this determination should end the matter because Section 1415(i)(2)(B) operates as a jurisdictional bar to untimely claims. But even though Plaintiff may have waited too long to bring the IDEA claim, the Court is satisfied that the exhaustion requirement is not a categorical jurisdictional perquisite to an IDEA claim. At the Rule 16 scheduling conference the Court pointed out case law suggesting that subsection (i)(2)(B) is best construed as a claim-processing rule, rather than a jurisdictional limitation. *See Li v. Revere Loc. Sch. Dist.,* No. 21-3422, 2023 WL 3302062, at *10 (6th Cir. May 8, 2023) (noting the Sixth Circuit Court of Appeals has "implied" that administrative exhaustion under the IDEA is not a jurisdictional requirement); *see also K.I. v. Durham Pub. Schs. Bd. of Educ.,* 54 F.4th 779, 790-92 (4th Cir. 2022) (holding that IDEA's exhaustion requirement is not a jurisdictional requirement but a claims-processing rule). At least one court in this district is in accord. *See Henke v. East Lansing Public Schools*, No. 1:25-cv-680, ECF No. 23 (W.D. Mich. Dec. 17, 2025) (Jarbou, C.J.).

8

In fact, Kent ISD's Rule 56 motion recognizes this authority, and does not quibble with it. (ECF No. 61, PageID.2815-2816). The Court agrees with the well-reasoned analysis of these decisions, and concludes that the IDEA's exhaustion requirement is not a jurisdictional prerequisite under the IDEA.

The question then turns to whether the determination that IDEA's exhaustion requirement is a claims processing rule makes any difference in this case. Kent ISD says it does not. The difference between a jurisdictional limitation and a claims-processing rule, it observes, generally comes down to issues of waiver or forfeiture and the availability of equitable reasons to excuse a late filing. Through its motion, Kent ISD says it has not waived or forfeited the timeliness issue, and it further says there are no equitable reasons to excuse the untimely filing. Plaintiff maintains that her IDEA claim is timely but, in the alternative, she contends equitable tolling is appropriate. Both sides cite to the five factors for equitable tolling discussed in *Holden v. Miller-Smith*, 28 F. Supp. 3d 729, 739 (W.D. Mich. 2014). Namely,

> To determine whether equitable tolling is available to a plaintiff, a court considers five factors: (1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

*Id.* (citing *Jackson v. United States,* 751 F.3d 712, 719–20 (6th Cir.2014).

The parties' tolling arguments center around Plaintiff's argument that her counsel reasonably interpreted the IDEA to conclude Plaintiff's claims against Kent ISD would not be ripe until after the ALJ had made a decision on whether G.G. had been provided a FAPE. Plaintiff likens this case to *McQueen ex rel. McQueen v. Colorado Springs Sch. Dist. No. 11*, 488 F.3d 868, 870 (10th Cir. 2007), which found the plaintiff had failed to exhaust IDEA claims by filing suit in

9

a bifurcated proceeding before resolution of both proceedings. The first round of proceedings in *McQueen* involved a question of law of whether the state system at issue facially violated the IDEA. The second round focused on whether the individual student participating in that system had been denied a FAPE, an issue not addressed in the first round. Plaintiff in *McQueen* filed suit after losing the first round and without waiting for completion of the second round. The Tenth Circuit Court of Appeals concluded that the plaintiffs had failed to exhaust their claims. Plaintiff concludes, therefore, that had she filed a case against Kent ISD before the ALJ issued a decision as to whether G.G. received a FAPE, the lawsuit would have been dismissed for lack of exhaustion. Kent ISD says *McQueen* is factually distinguishable. (ECF No. 24, PageID.634-635). In particular, *McQueen* bifurcated issues, not parties. Moreover, Kent ISD says Plaintiff's argument amounts, at most, one of excusable attorney neglect which is not enough to satisfy equitable tolling principles.

      The Court agrees with Kent ISD. *McQueen* is not on all fours with this case because it did not involve a bifurcated proceeding where a named party was peeled off into that proceeding. In this case, the ALJ separated the issues into two distinct proceedings, only one of which named Kent ISD as a party. The ALJ resolved that case against Kent ISD in its entirety with entry of the order dismissing Kent ISD. The later order resolving the claims against KPS did not include rulings necessary to support dismissal of Kent ISD. Moreover, the Court agrees with Kent ISD that Plaintiff's contentions do not reflect the type of diligence that would justify equitable relief. "[G]arden variety" neglect will not suffice. *Pilling v. Hegseth*, No. 1:24-CV-1293, 2025 WL 1322662, at *6 (W.D. Mich. May 7, 2025) (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)). As the Court observed in *Irwin*, courts typically extend "equitable relief only sparingly." *Irwin*, 498 U.S. at 96.

Accordingly, the Court believes that even though the IDEA's timeliness requirement is a claims-processing rule rather than a jurisdictional limitation, Plaintiff waited too long to bring the IDEA claim against Kent ISD, and equitable tolling does not apply based on the facts of this case.

B. *Merits*

Even if the Court is wrong about the timing issues, the Court concludes Plaintiff's IDEA claim against Kent ISD fails on the merits. Plaintiff appears to contend that Kent ISD may be liable under the IDEA whenever KPS fails to provide a FAPE, as she puts it, to "step in, correct any noncompliance by KPS, and ensure G.G. received [a] FAPE." (ECF No. 62-1, PageID.2972). But as this Court has previously explained, Section 1415(i) is not so broad as to encompass this type of claim. In a case involving a claim against the Michigan Department of Education, this Court observed that a plaintiff must allege something more than IDEA noncompliance on the part of the local education agency. Otherwise, that would impose exactly the kind of *respondeat superior* liability on the State that the Sixth Circuit was keen to avoid in *Y.A. by Alzandani v. Hamtramck Public Schools*, 137 F.4th 862, 865 (6th Cir. 2025). *D.L. v. Michigan Dep't of Educ.*, No. 1:22-CV-838, 2025 WL 3300226, at *8 (W.D. Mich. Sept. 24, 2025); *see also Hamtramck*, 137 F.4th at 872 ("oversight alone does not transform a local school into a state school.").

Still, Plaintiff maintains that ISDs play a much more active role than the Michigan Department of Education in the provision of special education services in Michigan, and she contends that the "IDEA, state law, the corresponding implementing regulations and practice have created a system where an ISD . . . is responsible for ensuring a FAPE." (ECF No. 62-1, PageID.2979). But none of the authority Plaintiff cites leads to this conclusion. To the contrary, it simply sets out the ISD's role in the three-tier educational system in Michigan that reflects the ISD does not, in the usual course, directly provide special education services. Under Michigan

11

law, it is the local school district—here KPS—that is responsible for "provid[ing] special education programs and services designed to meet the individual needs of each student with a disability in its district." Mich. Comp. Laws § 380.1751. The school district can either operate the special education program or service, or it may contract with an ISD to deliver those programs or services. *Id.* at § 380.1751(a), (b).

The ISD has the statutory responsibility to "develop, establish, and continually evaluate and modify in cooperation with its constituent districts, a plan for special education that provides for the delivery of special education programs and services designed to meet the individual needs of each student with a disability." *Id.* at § 370.1711(1)(a). But the local school districts are the entities that actually implement this plan and actually provide special education services, either on their own or under contract with an ISD. *Id* at §§ 380.1711(i); 1751(b). It is within this context that the cooperative agreement referenced by Plaintiff arises. Nothing here, however, requires an ISD to provide special education services to an individual student.

The statutory framework means that Kent ISD is best understood for purposes of the IDEA as an Educational Service Agency (ESA)—a "regional public multiservice agency" that is "authorized . . . to develop, manage and provide services or programs to local educational agencies." 20 U.S.C. § 1401(a)(5)(A). To be sure, the definition also includes any agency that has "administrative control and direction over a public elementary school or secondary school." *Id.* at § 1401(a)(5)(B), which is broad enough to cover an ISD in some situations. But that is not how ISDs operate in Michigan, where the local school district has a wide breadth of independence. *See Hamtramck*, 137 F.4th at 870. What this means for establishing liability is that a plaintiff must demonstrate the entity named as a defendant had the responsibility to actually provide the special education services to the student and failed to do so, constituting the denial of a FAPE. *C.f. Gadsby*

*by Gadsby v. Grasmick*, 109 F.3d 940, 955 (4th Cir. 1997) ("One relevant factor to be considered by the district court in fashioning relief is the relative responsibility of each agency for the ultimate failure to provide a child with a free appropriate public education.").

It is at this point that Plaintiff comes up short of showing that Kent ISD took on the responsibility to provide special education services to G.G.  And absent that showing, there is no basis for remand or to find Kent ISD liable under the IDEA.  Apart from contending that Kent ISD failed to step in and correct KPS's alleged failures—a supervisory oversight claim that is not enough under Section 1415(i)—Plaintiff's briefing largely depends on the allegations in her federal and administrative complaints that make conclusory allusions to the administrative hearing transcript.  It is difficult, then, to trace the evidentiary path of Plaintiff's contentions regarding Kent ISD and Pine Grove.  The only reference the Court sees is to a phone call between Kimberlee Fountaine, KPS's Director of Student Services and Pine Grove's principal that Plaintiff says was related to a potential placement of G.G. in its classroom.  This call happened sometime before the May 22, 2023, IEP meeting at KPS to review G.G.'s plans for the 2023-2024 school year.

Plaintiff jumps to the conclusion that it was during this call that KPS and Kent ISD unilaterally made a decision that G.G. should not attend Pine Grove.  But the record provides no support for that leap.   Plaintiff does not allege that G.G. ever was enrolled as a student at Pine Grove, or that she ever directly communicated with Pine Grove about potentially enrolling G.G. as a student on that campus. Nor does Plaintiff dispute that the ISD did not attend the IEP meeting itself.  In fact, the ISD was not even invited to the meeting, as contemplated by the Cooperative Agreement.  *See* ECF No. 61-2, PageID.2832.  Moreover, the testimony from the administrative hearing undermines Plaintiff's claim that there was an individualized predetermination that G.G. would not attend Pine Grove.  Ms. Fountaine testified that she believed the local school district

13

would be able to meet G.G.'s needs, and that the district had an obligation to try to do so before referring G.G. to Pine Grove, which operated a more restrictive program. (ECF No. 30-1, PageID.862). To better inform her own thinking, she made a call to Pine Grove. But she denied that her conversation with Pine Grove concerned G.G. specifically. Rather, it was a generic conversation about someone with G.G.'s skillsets; she did not disclose any specific individual. (*Id.* at PageID.862-863).

This record does not support Plaintiff's assertion of a conspiratorial scheme to deprive G.G. of a placement at Pine Grove. Based on this record, there is no genuine question of material fact about whether Kent ISD departed from the default statutory scheme and decided to directly provide special education services to G.G. It did not do so.

Accordingly, for all these reasons, Plaintiff's IDEA claim fails.

### 2. *Plaintiff's Americans with Disability Act and Section 504 of the Rehabilitation Act Claims*

Because Plaintiff's contention, under the IDEA, that Kent ISD denied a FAPE to G.G. lacks merit, Plaintiff's remaining claims under the Americans with Disability Act and Section 504 of the Rehabilitation Act claims, which are no different from her IDEA claim, must be dismissed. *Bradley v. Jefferson Cnty. Pub. Schs.*, 88 F.4th 1190, 1198 (6th Cir. 2023) ("[A] claim under the Americans with Disabilities Act or Rehabilitation Act will not gain traction if it turns solely on an alleged denial of a free appropriate public education.").

Plaintiff contends her claims do not completely overlap and that she can advance under a failure to accommodate theory. She also claims she can show Kent ISD acted with deliberate indifference, that is, that Kent ISD disregarded a strong likelihood that denying G.G.'s placement at Pine Grove would result in a violation of federally protected rights. *A. J. T. by & through A. T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 345 (2025).

To advance a failure to accommodate claim, "a plaintiff must show (a) the defendant reasonably could have accommodated his disability but refused to do so; (b) this failure to accommodate impeded the plaintiff's ability to participate in, or benefit from, the subject program; (c) the requested accommodation was reasonable; and (d) the provided accommodation was unreasonable." *Johnson on behalf of X.M. v. Mount Pleasant Pub. Schs.*, 745 F. Supp. 3d 479, 515 (E.D. Mich. 2024), *rev'd and remanded on other grounds, Johnson v. Russell*, 155 F.4th 759 (6th Cir. 2025). While Plaintiff wraps her claim under a different statutory draping here, it ultimately suffers from the same fate as her IDEA contentions. The administrative record demonstrates that KPS did not bring Kent ISD into the established process for consideration of a placement at Pine Grove. Kimberlee Fountaine had only a generic conversation with Pine Grove's principal about whether Pine Grove would be a suitable setting for a nonspecific individual with needs parallelling those of G.G. This was to satisfy Ms. Fountaine's own opinion about whether KPS's own services would be suitable for G.G. This testimony is not enough to demonstrate that Kent ISD refused to accommodate G.G.'s disability or that it acted with deliberate indifference. And for this reason, Plaintiff's claims fail.

## CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that Defendant Kent ISD's Motion for Summary Judgment (ECF No. 61) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 62) is **DENIED.**

**IT IS FURTHER ORDERED** that this case is **CLOSED.**

Dated:  March 16, 2026                    /s/ Robert J. Jonker
                                                             ROBERT J. JONKER
                                                             UNITED STATES DISTRICT JUDGE